UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE MURPHY, MONIQUE PAYAN, DAMIEN UHL, and those similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>ROBLOX CORPORATION, a Delaware corporation,<br><br>                              Defendant. | Case No.: 23-CV-1940 TWR (BLM)<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>(ECF No. 35) |

      Presently before the Court is Defendant Roblox Corporation's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Mot.," ECF No. 35), as well as Plaintiffs Katherine Murphy, Monique Payan, and Damien Uhl's Response in Opposition to ("Opp'n," ECF No. 36), Defendant's Reply in Support of ("Reply," ECF No. 37) the Motion, Plaintiffs' Supplemental Brief ("Pls.' Supp. Br.," ECF No. 39), and Defendant's Supplemental Brief ("Def.'s Supp. Br.," ECF No. 40).  Defendant has also filed a Request for Judicial Notice ("Def.'s RJN," ECF No. 35-1), which Plaintiffs oppose.  (*See* ECF No. 36-2 ("RJN Opp'n").)  The Court held a hearing on June 13, 2024.  (*See* ECF No. 41; *see also* ECF No. 42 ("Tr.").)  Having carefully considered the Parties' arguments, Plaintiffs' Second Amended Class Action Complaint for Damages ("SACAC," ECF No. 14), and the

applicable law, the Court **DENIES** Defendant's Request for Judicial Notice, **GRANTS IN PART** Defendant's Motion, and **DISMISSES WITHOUT PREJUDICE** the causes of action asserted in Plaintiffs' Second Amended Class Action Complaint.

## BACKGROUND

### I. Plaintiffs' Allegations[1]

#### A. *Defendant and Its Product*

##### 1. *Roblox and Robux*

Roblox, which was developed by Defendant in 2004, is a gaming platform designed to bring users together in a virtual universe, or "metaverse," that "is entirely user generated." (*See* SACAC ¶¶ 2, 23.) Roblox consists of two "layers": the Roblox Client and the Roblox Studio. (*See id.* ¶ 25.) "Roblox Studio is a toolkit developers and creators use to build, publish, and operate 3D experiences and content for the Roblox Client . . . , which they sell in a user-to-user marketplace known as the Avatar Shop." (*Id.*) "Most experiences on Roblox are created by developer users," (*id.*), of which there are approximately seven million. (*See id.* ¶ 23.)

"The Roblox Client allows users to explore 3D digital worlds through the eyes of an avatar, which each user customizes with clothing, gear, animations, simulated gestures, emotes, or other objects." (*Id.* ¶ 25.) An average of 36.2 million people from around the world, more than half of which are under the age of 13, use Roblox daily, averaging 2.6 hours per day. (*See id.* ¶ 23.) "Gameplay interactions, user hubs, direct messaging and voice chat, and wearable cosmetic items all promote social interactions between users." (*Id.* ¶ 24.)

"Defendant earns money, in part, by 'tokenizing' a platform-exclusive currency called 'Robux' that must be purchased using real-world currency before exchanging

---

[1] For purposes of Defendant's Motion, the facts alleged in Plaintiffs' Second Amended Class Action Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

'Robux' for digital content in the digital universe's closed economy." (*Id.* ¶ 26.) "'Robux' may be purchased in a single transaction, or a user may subscribe to receive 'Robux' on a recurring basis for a monthly premium that is automatically deducted from a linked payment account with a credit card or electronic check." (*Id.*; *see also id.* ¶ 61.) "When users purchase Robux, they cannot convert those Robux back into real-world currency." (*See id.* ¶ 60 (emphasis omitted).) "Roblox also makes money on the sale of digital content for 'Robux[.']" (*Id.* ¶ 27.) "The company takes a 30% commission from user-to-user exchanges of user generated content for 'Robux[,'] as well as by offering its own proprietary content for purchase with the in-game currency in the Avatar Shop." (*Id.*; *see also id.* ¶ 59.)

"It is extremely easy to sign up for a user account on the Roblox platform and Defendant Roblox makes the platform available through a variety of methods including mobile app stores and direct downloads from their website." (*Id.* ¶ 28.) "To create an account, users need not verify their account with an associated email address." (*Id.* ¶ 30.) "Although the Roblox Terms of Use state that children must have permission of their parents before signing up for an account, nothing prevents children from creating their own accounts on the platform." (*Id.* ¶ 31.)

"After signing up, a child can play in any of hundreds of thousands of 'experiences' on the product, which are much like other video games." (*Id.* ¶ 33.) "Friends can quickly join each other's unique 'experiences[,'] chat over voice and text, and trade items." (*Id.* ¶ 34.) "A user can add any other user as a 'friend,' regardless of age." (*Id.* ¶ 37.) "Once friends, users can message each other directly and invite each other to private servers or other experiences on the platform." (*Id.*) "And after entering an experience, users can chat to any other user in the experience, whether or not they are friends." (*Id.*)

/ / /
/ / /
/ / /
/ / /

## 2. Defendant's Alleged Misrepresentations[2]

"Roblox advertises its product as 'family friendly' despite rampant inappropriate and predatory conduct," (SACAC ¶ 42 (quoting Kerry Breen, *Experts, users warn about explicit content on popular gaming platform Roblox*, Today.com (Oct. 20, 2021) https://www.today.com/parents/roblox-experts-users-warn-about-inappropriate-content-t235027)), and "avers in their Community Guidelines that 'Roblox is a safe space for meeting online friends, chatting, and collaborating on creative projects.'" (*Id.* ¶ 43 (quoting Roblox Support: Legal Documents, Roblox Corporation, Community Standards (updated June 20, 2023) https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards).) "Specifically, Roblox tells parents: 'If your child is under 13, we make it extremely difficult for strangers on Roblox to contact them.'" (*Id.* ¶ 44 (quoting Roblox Support: Safety, Roblox Corporation, Age Appropriate Design Code FAQs, https://en.help.roblox.com/hc/en-us/articles/4406238486676-Age-Appropriate-Design-Code-FAQs).) Almost all safeguards to prevent strangers from contacting and grooming children on Roblox are disabled by default[,]" however, "[a]nd once they are friends with or in the same 'experience' as a child, predators can easily contact them." (*See id.* ¶ 45.)

"Roblox also says that '[a]n automated detection feature ensures that all players are wearing appropriate attire within the avatar editor and avatar thumbnails' and that it uses

---

[2] In their Second Amended Class Action Complaint, Plaintiffs explicitly identify the following five misrepresentations as the basis of their claims for intentional misrepresentation, (*id.* ¶ 104); negligent misrepresentation, (*id.* ¶ 116); violation of California's Unfair Competition Law, (SACAC ¶ 140); violation of California's False Advertising Law, (SACAC ¶ 154); and violation of California's Consumer Legal Remedies Act, (SACAC ¶ 164):

    a. It was extremely difficult for children under 13 to be contacted by strangers on the Roblox platform;
    b. Technological safeguards on the Roblox platform prevent inappropriate (including sexually explicit) attire on Roblox avatars;
    c. Technological safeguards on the Roblox platform prevent inappropriate content from being visible to users;
    d. The Roblox platform was at all times "family friendly";
    e. The Roblox platform was at all times a "safe space for meeting online friends, chatting, and collaborating on creative projects."

'state-of-the-art' technology to 'prevent inappropriate content . . . from being visible on the platform,'" (*id.* ¶ 46 (alterations in original)), but "the program's systems allegedly designed to monitor lewd behavior often fail." (*See id.* ¶ 48.) "For instance, Roblox is infamous for 'condo games' showing nude avatars engaging in forms of intercourse and using profane language." (*Id.* ¶ 49.) "These 'condo games' also enable online predators to groom children." (*Id.* ¶ 50.) "For example, adult players have tried to start separate, private conversations with underage players to solicit sexualized photos." (*Id.*)

"Roblox knows that this inappropriate and often illegal activity on its site threatens profitability and survival[,]" (*id.* ¶ 52), and "that what few measures it has put in place to discourage children from engaging with inappropriate content are easily circumvented." (*See id.* ¶ 54.) "Still, the company misleads parents about the safety of its product and the effectiveness of its safety features because Roblox knows that maximizing the number of young users is its key to profitability." (*Id.* ¶ 53.)

### B.  *Plaintiffs and Their Children*

"Plaintiff Katherine Murphy, a California resident, was introduced to Roblox while setting up her 7-year-old son's account in January of 2021." (SACAC ¶ 71.) "Ms. Murphy has witnessed multiple users send her child abusive and profane messages directly through the Roblox messaging service." (*Id.* ¶ 72.) "One user asked her son to perform virtual oral sex on his avatar in the game." (*Id.*) "Another user asked her son to show them his genitals, and yet another called him 'the N-word[.']" (*Id.*) Although "Ms. Murphy has spent over $4,000 on Roblox with the belief that the platform was a safe environment for her child to learn, play, and develop his expressive creativity for 30 minutes per day, on average," she "would not have spent any amount of money on the Roblox platform if she had known it was an unsafe environment for her child to learn and play." (*See id.* ¶ 73.)

"Plaintiff Monique Payan, a California resident, was introduced to Roblox by her 9-year-old daughter who has been playing the game since 2019." (*Id.* ¶ 74.) By "monitoring her daughter's account by linking it to her own[,] Ms. Payan encountered links sent directly to her daughter's account from multiple other users that redirected to external pornography

websites." (*See id.* ¶ 75.) Although "Ms. Payan has spent over $500 on Roblox with the belief that the platform was a safe environment for her child to learn, play, and develop her expressive creativity for 30 minutes per day, on average," she "would not have spent any amount of money on the Roblox platform if she had known it was an unsafe environment for her child to learn and play." (*See id.* ¶ 76.)

"Plaintiff Damien Uhl, a California resident, was introduced to Roblox by his 12-year-old daughter[,] who has been playing the game since 2017[,]" and "allowed all three of his children to continue playing the game." (*See id.* ¶ 77.) His daughter later informed him that, starting in the spring of 2021, she had "formed an online relationship with another Roblox user that held themself out to be the same age as Mr. Uhl's daughter." (*See id.* ¶ 78.) "In reality, his daughter's online friend was a senior woman posing as both a child and the fictitious child's parent." (*Id.*) "Upon learning the true nature of his daughter's Roblox 'friend' in or around June 2022, Mr. Uhl searched their Roblox chat history and discovered that the woman was attempting to groom his daughter and persuade her into believing she was of a particular sexual orientation, along with other messages of a sexual nature." (*Id.*) Although "Mr. Uhl has spent $3,000 to $5,000 or more on Roblox with the belief that the platform was a safe environment for his children to learn, play, and develop their expressive creativity for 1–2 hours per day, on average[,]" he "would not have spent any amount of money on the Roblox platform if he had known it was an unsafe environment for his children to learn and play." (*See id.* ¶ 79.)

## II. Relevant Procedural History

Plaintiffs Ms. Murphy and Ms. Payan filed their initial Class Action Complaint for Damages in the Superior Court of the State of California, County of San Diego, on August 7, 2023, alleging seven causes of action for (1) intentional misrepresentation; (2) negligent misrepresentation; (3) unjust enrichment; (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210; (5) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–17606; (6) violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784; and

(7) violations of the consumer protection laws of California, Connecticut, Illinois, Maryland, and Missouri. (*See generally* ECF No. 1-4.) On October 2, 2023, Plaintiffs Ms. Murphy, Ms. Payan, and Mr. Uhl filed a First Amended Class Action Complaint for Damages, alleging the same seven causes of action. (*See generally* ECF No. 1-2.)

Defendant removed to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–1715, on October 20, 2023. (*See generally* ECF No. 1.) On October 31, 2023, the Court ordered Plaintiffs to show cause why this action should not be remanded to the Superior Court of the State of California, County of San Diego, under the "local controversy," 28 U.S.C. § 1332(d)(4)(A); mandatory "home state," 28 U.S.C. § 1332(d)(4)(B); or discretionary "home state," 28 U.S.C. § 1332(d)(3), exceptions to CAFA. (*See generally* ECF No. 10 at 2–5.) In response, Plaintiffs filed the operative Second Amended Class Action Complaint, in which they dropped their claims on behalf of a putative Nationwide Class, (*see generally* ECF Nos. 14, 24 (redlined SACAC)), and moved to remand under 28 U.S.C. § 1332(d)(3). (*See generally* ECF No. 20.) After the motion was fully briefed, (*see* ECF Nos. 22, 23), and the Court held a hearing, the Court issued an oral ruling denying Plaintiffs' motion to remand on February 8, 2024. (*See* ECF No. 31.)

The instant Motion followed on March 11, 2024. (*See generally* ECF No. 35.) After briefing had closed but before oral argument, the Ninth Circuit issued a decision in *Calise v. Meta Platforms, Inc.*, No. 22-15910, ___ F.4th ___, 2024 WL 2826231 (9th Cir. June 4, 2024), which "clarif[ied]" the "scope of § 230(c)(1) immunity" under the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230 ("Section 230"). The Court therefore provided both Plaintiffs and Defendant the opportunity to submit supplemental briefing. (*See* ECF No. 38.)

## REQUEST FOR JUDICIAL NOTICE

Before turning to the merits of Defendant's Motion, the Court should address Defendant's Request for Judicial Notice, through which Defendant seeks judicial notice of and/or incorporation by reference of the following exhibits:

- Exhibit A: Defendant's Terms of Use that were "in effect at the time of the filing of the original complaint," (Def.'s RJN at 1);
- Exhibit B: Defendant's Age-Appropriate Design Code FAQ;
- Exhibit C: Defendant's Settings Page for Under-13 accounts found when a Roblox user logs into their account from Defendant's homepage;
- Exhibit D: Defendant's Safety Features: Chat, Privacy & Filtering;
- Exhibit E: Defendant's Community Standards that were "in effect at the time of the filing of the complaint," (Def.'s RJN at 2);
- Exhibit F: Defendant's FAQ;
- Exhibit G: Defendant's For Parents page;
- Exhibit H: an article by Kerry Green entitled "Experts, users warn about explicit content on popular gaming platform Roblox" published on Today.com.

(*See* Def.'s RJN at 1–2.)  Specifically, Defendant asks the Court to take judicial notice of Exhibits A through H and to incorporate by reference exhibits A, B, E, F, G, and H.  (*See id.* at 1.)

I.    **Judicial Notice**

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'"  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).  "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)).  "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'"  *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (alteration in original)).  "But a court cannot take judicial notice of disputed facts contained in such public records."  *Id.* (quoting *Lee*, 250 F.3d at 689).

///

Defendant requests the Court take judicial notice of Exhibits A through H, the first seven of which are archived links from Defendant's website and the last of which is an online article, on the grounds that they are "publicly available . . . such that their accuracy cannot be reasonably questioned." (*See* Def.'s RJN at 4–5.) Plaintiffs oppose on the grounds that the content of the pages is in dispute and it is unclear whether the versions of the websites provided have any relevance to this case. (*See generally* RJN Opp'n at 10–12.) The Court agrees with Plaintiffs—given that the Court cannot resolve on the current record whether the exhibits Defendant seeks judicial notice of accurately reflect the archived webpages as of the relevant date, which would be when Plaintiffs allegedly viewed and relied on them, judicial notice would be inappropriate. The Court therefore declines to take judicial notice of Defendant's Exhibits A through H.

## II. Incorporation by Reference

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)).

"[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Id.* (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* (first

citing *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995–96 (S.D. Cal. 2005); then citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006)).

Defendant alternatively requests that the Court incorporate by reference Exhibits A, B, E, F, G, and H.  (*See* Def.'s RJN at 3–4.)  Again, because it is not clear that the versions of these documents that Defendant seeks to incorporate by reference are the same versions referenced in Plaintiffs' Second Amended Class Action Complaint, the Court **DENIES** Defendant's request.[3]

## MOTION TO DISMISS

### I.  Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading

---

[3]  Without formally requesting judicial notice or incorporation by reference, Plaintiffs also attach several documents to their Opposition:

- Defendant's Terms of Use as of April 6, 2022;
- Defendant's creator guide as of March 26, 2024; and
- An article entitled "Safety and Civility" written by Defendant's Chief Systems Officer and Head of Safety Product, Policy, and Operations published on Defendant's website on May 17, 2023.

(*See generally* ECF Nos. 36-1, 36-3.)  For the same reason the Court denies Defendant's Request for Judicial Notice, the Court also declines to consider Plaintiffs' exhibits.

standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*

*Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## II. Analysis

Through the instant Motion, Defendant seeks to dismiss Plaintiffs' Second Amended Class Action Complaint on several grounds.[4] Because the Court concludes that Rule 9(b) is dispositive, the Court need not address Defendant's remaining arguments at this time.[5]

Under Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). "In other words, 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). Essentially, "[t]he allegations of fraud 'must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged.'" *Becerra v. Dr Pepper/Seven Up, Inc.*,

---

[4] Specifically, Defendant argues that (1) Plaintiffs' claims are barred by Section 230, (*see* Mot. at 11–15); (2) Plaintiffs' claims are barred by the First Amendment, (*see* Mot. at 15–16); (3) Plaintiffs' claims fail to comply with Rule 9(b), (*see* Mot. at 16–17); (4) Plaintiffs fail to allege actionable misrepresentations and omissions, (*see id.* at 17–23); (5) Plaintiffs fail to allege reasonable reliance, (*see id.* at 24–25); (6) Plaintiffs fails to allege intent to defraud or induce reliance, (*see id.* at 25); (7) Plaintiffs lack standing to bring claims under the consumer protection laws of Connecticut, Illinois, Maryland, Missouri, or New York, (*see id.* at 26–27); (8) Plaintiffs fail to allege equitable claims because they do not allege that there is an inadequate remedy at law, (*see id.* at 27–28); (9) Plaintiffs fail to state a claim under the "unfair prong" of California's Unfair Competition Law, (*see* Mot. at 28); and (10) Plaintiffs fail to allege a cause of action under California's Consumer Legal Remedies Act because they cannot allege a "good" or "service," (*see* Mot. at 28–29).

[5] Although the Court recognizes that Section 230 immunity is intended to prevent those entitled to its protection "from having to fight costly and protracted legal battles," *see Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008); (*see also* Tr. at 39:1–2 ("Section 230 . . . is a threshold immunity.")), and that, "like other forms of immunity, [it] is generally accorded effect at the first logical point in the litigation process," *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009), the Court believes that the claim-by-claim analysis required under *Calise* will be better informed by a more robust articulation of Plaintiffs' causes of action.

945 F.3d 1225, 1228 (9th Cir. 2019) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Rule 9(b) applies to Plaintiffs' state law causes of action, *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003), including their cause of action for unjust enrichment. *See Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *10 n.4 (C.D. Cal. Nov. 23, 2020) ("When an unjust enrichment claim is rooted in the same misrepresentations as other fraud-based claims, it 'also sounds in fraud and is subject to Rule 9(b)'s heightened pleading requirements.'" (quoting *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018))).

Defendants urge that Plaintiffs fail to meet this standard because they fail to "specify which of the purported misrepresentations they saw," "where they saw two of the purported misrepresentations," or "*when* they saw any of the alleged misrepresentations." (*See* Mot. at 17 (emphasis in original).) Plaintiffs respond that they meet the requirements of Rule 9(b) because they identify the place of Defendant's misrepresentations as its "website pages and advertisements," the time of seeing the misrepresentations as "when Plaintiffs' children's accounts were created or when Plaintiffs learned of their children's accounts," and "the falsity of Roblox's representations." (*See* Opp'n at 9.) As Defendant notes on reply, Plaintiffs' argument that they allege seeing the misrepresentations when they learned of their children's accounts "leaves open the possibility that Plaintiffs saw the statements ***long after*** their children created their accounts and encountered the third-party content Plaintiffs complain of." (*See* Reply at 5 (emphasis in original).)

Although "Rule 9(b) does not require plaintiffs to identify 'the precise web pages viewed and the precise date [they] viewed the representation[,]'" *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 898–99 (N.D. Cal.) (first alteration in original) (quoting *Ehret v. Uber Techs.*, 68 F. Supp. 3d 1121, 1127, 1129 (N.D. Cal. 2014)) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009)), *appeal dismissed*, No. 23-15717, 2023 WL 5125075 (9th Cir. July 20, 2023), Plaintiffs can—and must—do better to clear Rule 9(b)'s hurdle. Specifically, they must allege "which specific advertisements [they] actually

saw and relied upon in deciding" to allow their children to sign up for Roblox or purchase Robux. *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) (dismissing consumer protection claims under Rule 9(b) based on allegedly false "100% clean" advertisements from restaurant chain that sold baked goods containing residue of glyphosates because the plaintiff failed to "plead which specific advertisements she saw, believed, and relied upon"); *see also, e.g.*, *Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 878 (N.D. Cal. 2023) (rejecting consumer protection claims under Rule 9(b) where the plaintiffs alleged they relied on misrepresentation that appeared on the defendant's website but failed to "identify when *they saw* the website" (emphasis in original)); *Shu*, 669 F. Supp. 3d at 898 (dismissing consumer protection claims under Rule 9(b) where the plaintiffs "generally identif[ied] the sources of the misrepresentations as the websites and brochures" but failed to "identify the specific advertisements and promotional materials that they relied on, and when they saw them").

Such allegations are missing here. For example, Plaintiff Murphy alleges that she "was introduced to Roblox while setting up her 7-year-old son's account in January of 2021[,]" and, "[a]t the time of creating the account, Ms. Murphy believed the representations Roblox made about the safety of the platform after reading Roblox's Community Guidelines, and Roblox advertisements." (*See* SACAC ¶ 71.) One of the "advertisements" Plaintiffs identify is an article published October 20, 2021—after Ms. Murphy set up her son's account. (*See id.* ¶ 42 & n.22.) Plaintiffs also cite to Roblox's Community Guidelines effective June 20, 2023, (*see id.* ¶ 43 & n.23), and Roblox Support: Safety, Roblox Corporation, Age Appropriate Design Code FAQs as of July 7, 2023, (*see id.* ¶ 44 & n.24), on which Plaintiffs clearly could not have relied given that Plaintiffs' children signed up for accounts between 2017 and January 2021. (*See id.* ¶¶ 18–20.) Other statements attributed to Defendant are utterly unsourced and undated. (*See, e.g., id.* ¶¶ 46, 48.) These allegations clearly do not provide Defendant with sufficient notice to respond—indeed, Plaintiffs challenge Defendant's preliminary attempt to identify the sources of the

1 alleged misrepresentations on the grounds that the versions Defendant provided were not
2 from "the relevant time period for this action where Plaintiffs allege periods of purchases
3 on the site beginning in 2017, 2019, and 2021 respectively."  (*See* RJN Opp'n at 3 (citing
4 SACAC ¶¶ 71, 74, 77).)  Accordingly, the Court concludes that Plaintiffs' claims fail to
5 satisfy Rule 9(b)'s heightened pleading standard.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Request for Judicial Notice (ECF No. 35-1), **GRANTS IN PART** Defendant's Motion to Dismiss (ECF No. 35), and **DISMISSES WITHOUT PREJUDICE** the causes of action in Plaintiffs' Second Amended Class Action Complaint for failing to satisfy Rule 9(b)'s heightened pleading standard.  Plaintiffs **MAY FILE** an amended complaint curing the deficiencies identified above within twenty-one (21) days of the electronic docketing of this Order.  *Failure timely to file an amended complaint will result in the dismissal without prejudice of this action.*

**IT IS SO ORDERED.**

Dated:  July 10, 2024

_____
Honorable Todd W. Robinson
United States District Judge