COOLEY LLP
TIANA DEMAS (admitted *pro hac vice*)
(tdemas@cooley.com)
LAURA ELLIOTT (286702)
(lelliott@cooley.com)
KEVIN T. CARLSON (admitted *pro hac vice*)
(ktcarlson@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598

KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

ARIANA E. BUSTOS (345918)
(abustos@cooley.com)
355 South Grand Avenue, Suite 900
Los Angeles, California 90071-1560
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KATHERINE MURPHY, DAMIEN UHL, and those similarly situated,

Plaintiffs,

v.

ROBLOX CORPORATION, a Delaware corporation

Defendant.

Case No. 23-cv-01940-TWR-BLM

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS TO ARBITRATION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Declaration of Ronita Camarena and (Proposed) Order filed concurrently herewith*

Date: October 17, 2024
Time: 2 p.m.
Courtroom: 14A
Judge: Hon. Todd W. Robinson

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 17, 2024 at 2 p.m., or as soon thereafter as this Motion may be heard in the above-titled Court, located at James M. Carter and Judith N. Keep U.S. Courthouse, 333 West Broadway, San Diego, California, Defendant Roblox Corporation ("Roblox" or "Defendant") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling Plaintiffs Katherine Murphy and Damien Uhl ("Plaintiffs") to arbitrate their claims in the Fourth Amended Class Action Complaint ("4AC") (ECF No. 53) against Defendant and staying this case. This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations of Ronita Camarena ("Camarena Decl.") and Laura Elliott ("Elliott Decl.") and the exhibits attached thereto, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

## TABLE OF CONTENTS

Page


I. Introduction ........ 1

II. Relevant Facts ........ 2

- A. Plaintiffs Agreed to Roblox's Terms, including the Arbitration Agreement, by Purchasing Robux for Their Children. ........ 2
- B. Plaintiff Murphy Also Agreed to Roblox's Terms Through the Creation and Continued Use of Roblox Accounts. ........ 5
- C. Roblox's Terms Require Arbitration of Plaintiffs' Claims. ........ 7
  1. The Arbitration Agreement Gives Users Clear Notice of their Obligation to Arbitrate their Claims. ........ 8
  2. The Arbitration Agreement is Expansive in Scope. ........ 8
  3. The Arbitration Agreement Delegates Various Issues to the Arbitrator. ........ 8
  4. The Arbitration Agreement Requires Individual Arbitration. ........ 9
  5. The Arbitration Agreement Includes an Opt-Out Provision. ........ 9
- D. Roblox's Arbitration Agreement is Consumer Friendly and Cost Effective. ........ 9
- E. Plaintiffs Sued Without First Commencing Arbitration. ........ 10

III. Legal Standards. ........ 11

IV. Argument ........ 12

- A. Plaintiffs Assented to Roblox's Terms, Including Roblox's Updates, Through Continued Use. ........ 12
  1. Robux Purchases ........ 12
  2. Account Creation & Continued Use (Murphy) ........ 13
  3. The Federal Arbitration Act Governs This Motion. ........ 15
- B. Plaintiffs Agreed to Arbitrate the Gateway Issues of Enforceability and Arbitrability. ........ 15
- C. The Parties' Agreement to Delegate Arbitrability is Valid and Enforceable. ........ 17
- D. Plaintiffs Cannot Meet Their Burden to Prove Roblox Has Waived its Right to Arbitration. ........ 19
  1. Plaintiffs Cannot Meet Their Burden to Show that Roblox Acted Inconsistently with Its Right to Arbitrate. ........ 20
  2. Plaintiffs Cannot Show that Roblox Had Knowledge of Its Right to Compel Arbitration. ........ 21
- E. The Court Should Stay Plaintiffs' Claims. ........ 22

V. Conclusion ........ 22

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Armstrong v. Michaels Stores, Inc.*,
59 F.4th 1011 (9th Cir. 2023) .......... 19, 20

*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
2014 WL 3371842 (N.D. Cal. July 9, 2014) .......... 12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 12, 13

*Bernsley v. Barclays Bank Delaware*,
657 F. Supp. 3d 1327 (C.D. Cal. 2023) .......... 14

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 15, 17, 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 15

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) (*per curiam*) .......... 15

*Colores v. Ray Moles Farms, Inc.*,
2023 WL 2752379 (E.D. Cal. Mar. 31, 2023) .......... 21

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) .......... 18

*Dickey v. Ticketmaster LLC*,
2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .......... 13, 18

*Doe v. Steele*,
2021 WL 927363 (S.D. Cal. Mar. 11, 2021) .......... 18

*In re Facebook Biometric Information Privacy Litigation*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 14

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
461 F. App'x 630 (9th Cir. 2011) .......... 17

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .......... 11

**TABLE OF AUTHORITIES**
**(continued)**


**Page(s)**

*Fox v. Experian Info. Sols., Inc.*,
2024 WL 755804 (E.D. Cal. Feb. 23, 2024) .......... 20, 21

*Franklin v. HealthSource Global Staffing, Inc.*,
2024 WL 1055966 (S.D. Cal. Mar. 11, 2024) .......... 11

*Genasys Inc. v. Vector Acoustics, LLC*,
2023 WL 4414222 (S.D. Cal. Jul. 7, 2023) (Robinson, J.) .......... 12

*Hansber v. Ulta Beauty Cosmetics, LLC*,
640 F. Supp. 3d 947 (E.D. Cal. 2022) .......... 21

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) .......... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 16, 18

*Ingle v. Cir. City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) .......... 11

*Keebaugh v. Warner Bros. Entm't*,
2024 WL 1819651 (9th Cir. Apr. 26, 2024) .......... 19

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 18, 19

*LG Philips LCD Co., Ltd. v. Tatung Co. of Am.*,
2005 WL 8157807 (C.D. Cal. Feb. 28, 2005) .......... 21

*Lovette v. CCFI Companies LLC*,
2023 WL 8813525 (N.D. Cal. Dec. 20, 2023) .......... 16, 17

*Macias v. Excel Bldg. Servs. LLC*,
767 F. Supp. 2d 1002 (N.D. Cal. 2011) .......... 12

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......... 14

*Mitchell v. Ecolab, Inc.*,
2023 WL 2666391 (E.D. Cal. Mar. 28, 2023) .......... 11

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 16, 17

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) .......... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 11, 20

*Moyer v. Chegg, Inc.*,
2023 WL 4771181 (N.D. Cal. July 25, 2023) .......... 19

*Nevarez v. Forty Niners Football Co.*,
2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 12

*Perry v. Thomas*,
482 U.S. 483 (1987) .......... 11

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 16, 18

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .......... 15

*Shansby v. Edrington, USA, Inc.*,
2023 WL 2456789 (N.D. Cal. Mar. 9, 2023) .......... 17

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) .......... 22

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 22

*Stafford v. BAART Behav. Health Servs., Inc.*,
2015 WL 13764217 (C.D. Cal. July 20, 2015) .......... 21

*Sywula v. Teleport Mobility, Inc.*,
2023 WL 4630620 (S.D. Cal. July 18, 2023) .......... 21

*United Specialty Ins. Co. v. Clean & Sober Media LLC*,
2021 WL 3623300 (C.D. Cal. Apr. 16, 2021) .......... 20, 21

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*United States v. Jackson*,
851 F. App'x 35 (9th Cir. 2021) .......... 15

*Wheeler v. LG Elecs. USA, Inc.*,
2024 WL 51353 (E.D. Cal. Jan. 4, 2024) .......... 20

**Statutes**

9 U.S.C.
§ 2 .......... 15
§ 4 .......... 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Nearly one year ago, Roblox asked Plaintiffs to provide their Roblox usernames so Roblox could investigate whether Plaintiffs had agreed to arbitrate their claims. Plaintiffs refused to do this, and they maintained their position until a few days ago, when they finally provided the usernames. Now that Roblox has this information, it is clear that Plaintiffs had notice of and agreed Roblox's Terms of Use (the "Terms") in effect as of August 1, 2023. Those Terms (and prior versions Plaintiffs also agreed to) contain a mandatory arbitration clause. Plaintiffs repeatedly agreed to the Terms each time they "spent money on Robux on the Roblox platform." 4AC ¶¶ 18-19.[1] When Plaintiffs bought Robux, they were presented with an uncluttered screen that clearly and conspicuously informed them: "By purchasing Robux, you agree to our Terms of Use and Privacy Policy, including the arbitration clause and revocation policy." The account history for the usernames Plaintiffs provided reveals they repeatedly purchased Robux throughout 2023 and 2024, and as recently as last month. Roblox further has no records that any account associated with Plaintiffs opted out of the arbitration provision as Roblox's Terms permit. Furthermore, Plaintiff Murphy concedes she set up her child's Roblox account. In doing so, she received clear notice of, and was required to agree to, the Terms.

Plaintiffs thus agreed many times to arbitrate any claims involving Roblox and to delegate to the arbitrator any questions concerning "the interpretation, applicability, enforceability, or formation" of the arbitration agreement. Binding Ninth Circuit law confirms that this language is enforceable and mandates arbitration even as to the scope of arbitrability. The Court should therefore compel Plaintiffs to arbitrate their claims and stay this case.

[1] Citations to 4AC refer to Plaintiffs' Fourth Amended Complaint. Dkt. 53.

## II. Relevant Facts

### A. Plaintiffs Agreed to Roblox's Terms, including the Arbitration Agreement, by Purchasing Robux for Their Children.

Plaintiffs Katherine Murphy ("Murphy") and Damien Uhl ("Uhl") are parents of two minor Roblox users whose accounts were created in 2017 and 2020. *Id.* ¶¶ 74, 78. Both Plaintiffs allegedly purchased Robux for their children through the Roblox platform. *Id.* ¶¶ 18, 19. Since creating her child's account in December 2020,[2] Plaintiff Murphy has "spent over $4,000 on Roblox." *Id.* ¶ 77. Plaintiff Uhl alleges that, since June 2017, he "spent money on the Roblox platform on at least a monthly basis to pay for Robux for his children's benefit." *Id.* ¶¶ 19.

The account history for the Roblox usernames Plaintiffs recently provided confirms that they repeatedly purchased Robux and agreed to the Terms (which has contained a mandatory arbitration provision at all relevant times) through the purchase process.[3] Plaintiff Murphy made frequent Robux purchases through the Apple AppStore via a mobile app. Camarena Decl. ¶ 17. For example, she made purchases in this manner on July 30, 2024; June 28, 2024; March 28, 2024; February 19, 2024; February 7, 2024; and December 13, 2023. *Id.* Plaintiff Uhl purchased Robux through the Apple AppStore via a mobile app on July 12, 2024 and September 8, 2023. *Id.* ¶ 18. Plaintiff Uhl also made four purchases using a credit card associated with his personal email address on December 10, 2023; December 3, 2023; November 20, 2023; and August 3, 2023. *Id.* ¶ 19; Elliot Decl. Ex. B.

From at least late 2022 to the present, when purchasing Robux through an app on a mobile device—as both Plaintiffs Murphy and Uhl did (Camarena Decl. ¶¶ 17-18)—Roblox users were immediately presented with a conspicuous disclosure in easily readable font at the top of the screen informing them that, "[b]y purchasing Robux, you agree to our Terms of Use and Privacy Policy, **including the arbitration**

[2] Roblox's records show that the statement in the 4AC that the account creation occurred in July of 2019 is incorrect. Camarena Decl. ¶ 6.

[3] Plaintiffs have both purported to identify user names for Roblox accounts that have been utilized by their children. Elliott Decl. ¶ 5.

**clause** and revocation policy." *Id.* ¶ 14 (emphasis added). This disclosure includes a bolded, underlined hyperlink linked to the then-current Roblox Terms:




*Id*. To complete their purchase of Robux through the mobile app, users were required to provide affirmative consent for the charge by double clicking the side button to pay through either Apple Pay or Google Pay. *Id.* ¶ 15.




*Apple*




*Android*

Similarly, from January 2023 to the present, for credit/debit card purchases made on a web browser, upon selection of the desired package, the user is shown a Payment Method selection page on which the user was presented with several prominent disclosures prior to inputting his/her billing information, including a disclosure stating, "By submitting payment information you acknowledge that you are at least 18 years old, and that you agree to Roblox Terms and Privacy Policy, **including the arbitration clause** and revocation policy." *Id.* ¶¶ 11, 13 (emphasis added). As shown in the image below, this disclosure is in readily legible font and contains a bolded hyperlink (further offset from the rest of the text in bright blue) to Roblox's Terms:




*Id.* ¶ 13.

**B. Plaintiff Murphy Also Agreed to Roblox's Terms Through the Creation and Continued Use of Roblox Accounts.**

Plaintiff Murphy alleges she set up her child's account on Roblox in July 2019.[4] 4AC ¶ 74. Plaintiff Murphy's email address is linked to three other Roblox accounts, created on January 5, 2021, January 16, 2022, and March 19, 2023 respectively. Camarena Decl. ¶ 20. To create accounts, Plaintiff Murphy needed to enter a birth date, username, and password and click a "Sign Up" button. *Id.* ¶ 22. Immediately above the "Sign Up" button was the following text, prominently featured in a contrasting colors from the background: "By clicking Sign Up, you are

[4] Roblox's records show that the account at issue was created in December 2020, not July 2019. Camarena Decl. ¶ 6.

agreeing to the Terms of Use including the arbitration clause . . ." *Id.* ¶ 25. The blue, underlined words, "Terms of Use," linked to the terms then in effect. *Id.* ¶ 26.[5]




*Id.* ¶ 27.

In creating the March 2023 account, Plaintiff Murphy agreed to Section 1 of the March 19, 2023 Terms ("2023 Terms") (*id.* ¶¶ 20, 22-26, 37; *id.* Ex. E) which states that "[b]y permitting a Minor User to use the Services, the Guardian of the Minor User becomes subject to these User Terms and any other applicable Roblox Terms and agrees to be responsible for the Minor User's activities on the Services. If User (or a Minor User's Guardian . . . doesn't agree to these User Terms or any other Roblox Terms, User may not use the Services." *Id.* Ex. E § 1. Section 1 further states that "Roblox will provide User with reasonable advance notice of any material updates or modifications to these User Terms . . . by any reasonable means of notification, including by email or via posting on the Roblox website. […] If User uses the Services after Roblox has posted updates to these User Terms or any other

[5] The sign-up flow has remained substantially the same throughout the creation of the four Murphy Roblox accounts Camarena Decl. ¶ 23.

Roblox Terms, User is agreeing to the updated User Terms[.]" *Id*. Roblox's August 1, 2023 Terms ("August 2023 Terms") contained identical language with respect to parental supervision. *See id.* Ex. E.

Pursuant to the March 2023 Terms, Roblox provided notice to users of its August 2023 Terms via blocking interstitial requiring affirmative acceptance as well as an on-platform message sent to every user's "Messages" page within their personal accounts one month prior to the effective date. *Id*. ¶ 29. This message expressly stated that "[i]f you do not agree, you can close your Roblox account(s) before these updates go into effect." *Id*. ¶ 31. Roblox's records show that following this notice, none of the multiple accounts linked to Plaintiff Murphy's email were closed. *Id*. ¶ 32. After the July 2023 notice, three of these accounts were accessed on at least 52 separate occasions and actively used, including for on-platform purchases of Robux and premium subscriptions. *Id*. ¶ 33.

### C. Roblox's Terms Require Arbitration of Plaintiffs' Claims.

The introduction to Roblox's August 2023 Terms clearly alerts users of the importance of reading the Terms and that it contains a mandatory arbitration clause. The first all-caps section of the introduction reads: **"**PLEASE READ THE ROBLOX TERMS CAREFULLY BEFORE BEGINNING TO USE THE SERVICES, AS THEY SET FORTH A LEGALLY BINDING AGREEMENT BETWEEN YOU AND ROBLOX.**"** *Id*., Ex. A, "Introduction" (emphasis in original). The next all-caps section (which is also bolded) informs users of the arbitration provision:

> **For U.S. Users**, Roblox's Arbitration Agreement (Section 11), which outlines how disputes between you and Roblox will be resolved. Specifically, these Roblox Terms contain **A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER. THIS MEANS THAT YOU GIVE UP THE RIGHT TO BRING AN ACTION IN COURT, INDIVIDUALLY OR AS PART OF A CLASS ACTION.**

*Id*. (emphasis in original).

Section 11 of the Terms (the "Arbitration Agreement") includes provisions

that give notice of the agreement to arbitrate, describe its expansive scope, delegate certain issues to the arbitrator, require individual arbitration, and permit users to opt out. *Id.*, Ex. A § 11.

**1. The Arbitration Agreement Gives Users Clear Notice of their Obligation to Arbitrate their Claims.**

The Arbitration Agreement's opening paragraphs inform users in bolded, capitalized letters that they are agreeing to arbitrate any dispute with Roblox:

> **YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR ANY DISPUTES SUBJECT TO THE ARBITRATION PROVISION BELOW.**

*Id*. § 11.

**2. The Arbitration Agreement is Expansive in Scope.**

The Arbitration Agreement applies to "any dispute, claim, or controversy [the user] ha[s] with Roblox arising under or relating in any way to the Roblox Terms or the Services ('Dispute')." *Id.* Roblox "Services" are broadly defined to include "the Roblox website . . . and its related platform . . . and various other features and services, including websites, applications, forums, content, functionality, products, and services . . . ." *Id.* at 1. Plaintiffs allege that Robux can "only be used on the Roblox platform," and they describe the sale of Robux as a "service." 4AC ¶¶ 2, 165. The Arbitration Agreement also makes clear that it compasses "all Disputes—regardless of (a) the legal theories involved in the Dispute, (b) when the Dispute arose, and (c) whether the Dispute is with Roblox [or affiliated parties]." Camarena Decl. Ex. [X] § 11(b)(i). As such, Plaintiffs' claims are necessarily encompassed by the Arbitration Agreement.

**3. The Arbitration Agreement Delegates Various Issues to the Arbitrator.**

The Arbitration Agreement delegates exclusive authority to the arbitrator to

decide "all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms. . . ." *Id.* § 11(b)(vii).

**4. The Arbitration Agreement Requires Individual Arbitration.**

The substantive portion of the Arbitration Agreement again notifies users about the importance of reading it and highlights that they are agreeing to individual arbitration and waiving their right to class actions:

> **Please read this section carefully; it's important.**
>
> **i. ARBITRATION AGREEMENT AND CLASS ACTION WAIVER. EXCEPT AS OTHERWISE PROVIDED IN THE ROBLOX TERMS, USER AND ROBLOX AGREE THAT ANY DISPUTE THAT CANNOT BE RESOLVED THROUGH MIDR WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AS SET FORTH HEREIN, RATHER THAN IN COURT. USER AND ROBLOX THEREBY AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL AND AGREE THAT USER AND ROBLOX MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR CLASS ARBITRATION.**

*Id.* § 11(b)(i).

**5. The Arbitration Agreement Includes an Opt-Out Provision.**

The Arbitration Agreement gives users the right to opt out:

> Opting Out. You may opt-out of the Arbitration Agreement entirely and litigate any Dispute with us by sending written notice to Roblox within 30 days of signing up for the Services for the first time. Thereafter, you may only opt-out of material changes to the Arbitration Agreement by sending written notice within 30 days after Roblox provides notice of those changes (unless a longer period is required by applicable law). In either case, to opt-out, a User must send a written notice … and include (a) the User's full name, Roblox username, and email address, (b) a clear statement that the User wants to opt-out of the Arbitration Agreement, or wants to opt-out of a material change to the Arbitration Agreement, as applicable, and (c) the User's signature (or the signature of the User's guardian, if the User is a Minor).

*Id.* § 11(b)(ix).

**D. Roblox's Arbitration Agreement is Consumer Friendly and Cost Effective.**

The Arbitration Agreement gives Roblox users a simple, efficient means of

resolving disputes through the following provisions:

- **Small claims court option**: Either party may take an individual dispute to small claims court in the user's county of residence. *Id.* § 11(b)(x).
- **Flexible consumer procedures**: Arbitration will be administered by FedArb, and hearings may be conducted through videoconferencing or, if in person, in the county or parish where the user resides. *Id.* § 11(b)(iv).
- **Costs**: Roblox will pay for all arbitration fees and expenses except for the first $50 and will even cover that if FedArb determines the user cannot afford it (unless the arbitrator determines the claims are frivolous). *Id.* § 11(b)(vi).

### E. Plaintiffs Sued Without First Commencing Arbitration.

Despite agreeing to arbitrate this dispute, Plaintiffs filed their class action in state court on August 7, 2023, alleging that Roblox misled them about the safety of its platform, inducing Plaintiffs to purchase Robux. 4AC ¶¶ 77, 83.

Shortly after being served with the initial complaint, Roblox asked Plaintiffs to provide their Roblox usernames. Elliott Decl. ¶ 2. Without this information, Roblox had no way to identify the Plaintiffs' accounts or confirm that they had agreed to arbitrate their claims. *Id.* Plaintiffs refused to provide the usernames until August 16, 2024, nearly one year later. *Id.* ¶ 5.

Because Plaintiffs filed in state court, the basis for federal jurisdiction was clear from the face of the complaint, and Roblox did not have sufficient information to move to compel arbitration, Roblox removed the initial complaint to federal court. ECF No. 1. Plaintiffs sought to avoid removal by filing a Second Amended Complaint in November 2023 and then moved to remand the case back to state court. ECF Nos. 14, 20. This process delayed Roblox's response to the initial complaint until March 2024. ECF No. 35. At Plaintiffs' request, the parties delayed the hearing on Roblox's motion to dismiss by two months. ECF No. 33.

As described in Roblox's concurrently filed Motion to Dismiss Plaintiffs' Fourth Amended Complaint, there is no merit to Plaintiffs' allegations. Mot. But the

Court need not reach the merits because Plaintiffs agreed to arbitrate their claims, depriving the Court of subject-matter jurisdiction.

## III. LEGAL STANDARDS.

The Federal Arbitration Act ("FAA") reflects a "congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Perry v. Thomas*, 482 U.S. 483, 489 (1987).[6] A motion to compel arbitration pursuant to the FAA is intended to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).

The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement. *Mitchell v. Ecolab, Inc.*, 2023 WL 2666391, at *3 (E.D. Cal. Mar. 28, 2023). In determining whether an arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Once the moving party carries its burden of production on the existence of a valid arbitration agreement, the non-moving party must produce evidence to support its defense. *Mitchell*, 2023 WL 2666391 at *4; *Franklin v. HealthSource Global Staffing, Inc.*, 2024 WL 1055966, at *7 (S.D. Cal. Mar. 11, 2024); *Genasys Inc. v. Vector Acoustics, LLC*, 2023 WL 4414222 at *6 (S.D. Cal. Jul. 7, 2023) (Robinson, J.). The Court may decide the motion based on "the pleadings, documents of

[6] All emphasis is added and all citations and internal quotation marks are omitted unless otherwise noted.

uncontested validity, and affidavits submitted by either party." *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014); *see also Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011).

## IV. ARGUMENT

### A. Plaintiffs Assented to Roblox's Terms, Including Roblox's Updates, Through Continued Use.

Under California law, to form a contract, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). Roblox has readily met its burden to show Plaintiffs agreed to arbitrate.

#### 1. Robux Purchases

"[A]n enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505, 515 (9th Cir. 2023).

Notice is "reasonably conspicuous" where it is displayed "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* (citing *Berman*, 30 F.4th at 856). Further, "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857.

Plaintiffs' purchases of Robux and premium subscriptions all occurred through checkout flows requiring assent to conspicuous text stating they agreed to Roblox's then-applicable Terms and explicitly emphasizing the arbitration clause. Camarena Decl. ¶¶ 8-19. The notice included in Roblox's checkout flows bore all the hallmarks

of reasonable conspicuousness. The notice appeared above the "Pay" button, the text of the links to the relevant Terms was a standard, contrasting blue color, and the checkout flow as a whole was clear and uncluttered. *Id.* ¶ 13; *see id.* ¶¶ 14-15; *see, e.g.*, *Dickey v. Ticketmaster LLC*, 2019 WL 9096443 at *7 (C.D. Cal. Mar. 12, 2019); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110 at *8 (N.D. Cal. Aug. 15, 2017). Further, the notice expressly advised users that their act of paying would constitute assent to the Terms, meeting the second prong of the *Berman* test. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). And although Roblox's August 2023 Terms permit users to opt out of the arbitration agreement, Roblox has no record showing that either Plaintiff did so. Camarena Decl. ¶ 32.

**2. Account Creation & Continued Use (Murphy)**

The sign-up flow Plaintiff Murphy interacted with to create the Roblox accounts further establishes her assent to Terms that contained an arbitration provision. The flow, which has remained substantially the same throughout the creation of the four different Murphy Roblox accounts, provide clear and conspicuous notice of the Roblox Terms, including the arbitration provision. Camarena Decl. ¶ 23. Indeed, the sign-in flow bears a strong resemblance to the checkout flow discussed above, where notice was appeared above "Sign Up" button, hyperlinks were in blue text, the flow was clear and uncluttered, and notice contained explicit advisement of the act that would manifest assent. *Compare, e.g.*, *id.* ¶ 13 *with id.* ¶ 27. As such, for the same reasons that the checkout flow manifested consent to the Roblox Terms, so too does the account creation process. In creating multiple Roblox accounts, Plaintiff Murphy agreed to the Roblox Terms then in effect. *See, e.g.*, *Dickey*, 2019 WL 9096443 at *7; *Nevarez*, 2017 WL 3492110 at *8; *Nguyen*, 763 F.3d at 1177.

In assenting to the March 2023 Terms, Plaintiff Murphy agreed (1) that by granting her minor child permission to use Roblox, she would be responsible for her child's activities on the Services and (2) that, following notice of material updates,

including via posting on the Roblox website and sent notice, continued use of Roblox's services would constitute agreement to the updated terms. Camarena Decl., Ex. D § 1. Given this agreement, she cannot deny that when Roblox notified its users of its August 2023 Terms in exactly the manner it suggested it would—via both on-platform blocker cards requiring affirmative acceptance and a message posted to all users on the Roblox website—such notice was somehow ineffective. *Id.* ¶¶ 28-30; *see Bernsley v. Barclays Bank Del.*, 657 F. Supp. 3d 1327, 1335 (C.D. Cal. 2023).

Further, the message was delivered one month prior to becoming effective and its delivery was emphasized with a jewel notification on users' personal "Messages" pages. *Id.* ¶ 30. The message even reminded users that, during this prolonged opt-out period, they could reject the updated terms by simply closing their accounts. *Id.* ¶ 31.

Plaintiff Murphy did not close any of the accounts at issue. *Id.* ¶ 32. Roblox's records demonstrate that the accounts remained active, including at least 52 instances of account activity and purchases totaling over $700 for Robux and premium subscriptions, following the effective date of the August 2023 Terms. *Id.* ¶ 33. It does not matter if Plaintiff Murphy or her child used these accounts. In assenting to the March 2023 Terms, Plaintiff Murphy agreed that she would be responsible for her child's activities on Roblox. *Id.*, Ex. E § 1. Therefore, in addition to being bound to the versions of Roblox's Terms in effect at each point of purchase, and during each account creation, Plaintiff Murphy is specifically bound to the August 2023 Terms based on her extensive continued use following Roblox's properly noticed update of its Terms. *See, e.g.*, *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155, 1162-64 (N.D. Cal. 2016) (notice via messages sent directly to users and jewel notifications combined "with a user's continued use is enough for notice and consent"); *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (terms stating that users who did not agree to posted modifications "should discontinue [] use" bound continuing users to updated terms upon posting); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (agreeing

with other courts that messages "followed by continued use [are] sufficient to establish assent").

### 3. The Federal Arbitration Act Governs This Motion.

The Arbitration Agreement specifies that the FAA "governs . . . [its] interpretation and enforcement." Terms § 11(b)(ii). Under the FAA, an arbitration agreement in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA governs this Motion under the express terms of the Arbitration Agreement and because claims relate to Plaintiffs' purchases of Robux and their use of Roblox, which affect commerce.[7]

## B. Plaintiffs Agreed to Arbitrate the Gateway Issues of Enforceability and Arbitrability.

In determining whether to compel arbitration, a court generally need address only two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The parties, however, can also expressly delegate these gateway questions to the arbitrator when the agreement "*clearly and unmistakably* provide[s] otherwise." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (emphasis in original). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) ("[C]ourts must enforce the parties' 'agreement to arbitrate threshold issues'

[7] Roblox is an internet platform accessible across the United States. 4AC ¶ 21; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (*per curiam*) ("[The Supreme Court] has interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'"); *United States v. Jackson*, 851 F. App'x 35, 36 (9th Cir. 2021) (holding that the "Internet is an instrument of, and intimately related to, interstate commerce").

regarding the arbitrability of their dispute, and may do so by staying federal litigation under section 3 of the FAA or compelling arbitration under section 4.") (quoting *Rent-A-Center*, 561 U.S. at 69-70); *see also Lovette v. CCFI Companies LLC,* No. 3:23-CV-03755-JSC, 2023 WL 8813525, at *3 (N.D. Cal. Dec. 20, 2023) (enforcing a delegation clause that assigned all gateway or threshold issues to the arbitrator aside from those explicitly exempted in the clause). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "a court possesses no power to decide the arbitrability issue" even if they consider the moving party's motion to be "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Provisions granting arbitrators the authority to decide issues relating to the "interpretation or application of" an arbitration agreement "clearly and unmistakably" reflects the parties' "intent for the arbitrators to decide the threshold question of arbitrability." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016) (holding arbitrator must determine arbitrability pursuant to the delegation clause); *see also Momot*, 652 F.3d at 987-88 (clause delegating to arbitrator the authority to determine "the validity or application of any of the provisions of the arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement" (quoting *Rent-A-Center*, 561 U.S. at 68) (internal quotations omitted)).

Roblox's Arbitration Agreement readily meets the Ninth Circuit's standard. It expressly delegates to the arbitrator all "disputes arising out of or relating to the interpretation, application, enforceability, or formation of the Roblox Terms." Camarena Decl., Ex. 1, § 11(b)(vii) (the "Delegation Provision"). As in *Mohamed*, Roblox's Delegation Provision authorizes the arbitrator to decide the "interpretation or application of" the Arbitration Agreement, which establishes the Parties' Intent to delegate all questions of arbitrability to the arbitrator. *See Mohamed*, 848 F.3d at 1208-09; *see also Lovette*, 2023 WL 8813525, at *3 (finding the parties had

unmistakably agreed to delegate all gateway issues to an arbitrator when delegation clause applied to the agreement's "validity, scope, and enforceability").

In addition to delegating to the arbitrator the authority to decide questions of interpretation and application, the Arbitration Agreement incorporates FedArb rules. *See* Camerena Decl., Ex. A, § 11(b)(iv). These rules explicitly empower arbitrators to decide the question of arbitrability. *See id.* Ex. A, § 11(b)(iv-v); FedArb Rules, Rule 5.02 ("The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration clause …. [including] with respect to both the subject matter of the dispute and the parties to the arbitration."). The express incorporation of arbitration rules granting the arbitrator "the power to rule on his or her own jurisdiction" is "unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130; *see also Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011) ("[T]he language of the arbitration clause shows a clear and unmistakable intent to delegate questions of scope to the arbitrator . . . . [where] [t]he clause incorporates the AAA's Commercial Arbitration Rules, which provide that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction[.]'"); *Shansby v. Edrington, USA, Inc.,* No. 22-CV-06907-JSC, 2023 WL 2456789, at *2 (N.D. Cal. Mar. 9, 2023) (holding that arbitration agreement delegated the issue of arbitrability to the arbitrator "because it incorporates the JAMS rules of arbitration and those rules empower the arbitrator to decide arbitrability").

Both the express terms of the Arbitration Agreement and the incorporation of FedArb Rules show that the threshold question of arbitrability has been delegated to the arbitrator.

### C. The Parties' Agreement to Delegate Arbitrability is Valid and Enforceable.

Where, as here, the parties have delegated the question of arbitrability to the

arbitrator, the only remaining question is whether the delegation provision is valid and enforceable. *Brennan*, 796 F.3d at 1132 (emphasis in original); *see also Henry Schein.*, 586 U.S. at 68 (holding that where the parties' contract delegates the arbitrability question to an arbitrator, "a court possesses no power to decide" the issue, "even if the court thinks the argument that the arbitration agreement applies to a particular dispute is wholly groundless"); *Rent-A-Center*, 561 U.S. at 68-69, 72 (explaining that parties can delegate "gateway" questions of arbitrability to an arbitrator, including whether the agreement covers a particular controversy).

California law[8] unambiguously requires enforcement of the Delegation Provision. Under California law, an agreement exists where "outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (user validly assented to terms under California law by clicking "DONE" to move past the page that displayed the notice "you agree to the Terms & Conditions and Privacy Policy"). In *Ticketmaster*, a website explicitly informed the user that "By clicking 'Place Order,' you agree to our Terms of Use" and hyperlinked the terms. 817 F. App'x at 395. The Ninth Circuit held that the website's description of the significance of clicking "Place Order," along with a link to the terms, was sufficient to bind a user who had clicked the button to an arbitration clause. *Id.*

Here, there is no genuine dispute that Plaintiffs accepted Roblox's Terms and agreed to arbitrate their claims. Plaintiffs allege—and their account information confirms—that they repeatedly purchased Robux on the Roblox platform. 4AC ¶¶ 18-19, 77, 83. Plaintiffs had to consent to Roblox's Terms through this process.

---

[8] The Terms contain a California choice of law clause, Ex. 1 § 12(a), and California law would apply even in the absence of this provision because Plaintiffs are California residents, Roblox has its principal place of business in California, and there is no indication that the Parties entered into the Arbitration Agreement anywhere other than California. *Doe v. Steele*, 2021 WL 927363, at *4 (S.D. Cal. Mar. 11, 2021).

Before purchasing Robux, Plaintiffs were presented with a conspicuous hyperlink to Roblox's Terms on an uncluttered screen. Camarena Decl. ¶¶ 13-15. *Keebaugh v. Warner Bros. Entm't*, 2024 WL 1819651, at *10 (9th Cir. Apr. 26, 2024) (reversing denial of a motion to compel based on a "sign-in wrap" noting that "the sign-in screen here lacks clutter and…[t]he design elements use 'a contrasting font color' making the notice legible on the dark background"). Plaintiffs also were clearly and unambiguously informed that the Terms contained an arbitration clause and that by purchasing Robux, they were assenting to the Terms. Camarena Decl. ¶¶ 13-14. By pressing the "Pay" button or clicking assent to payment on the mobile app after viewing such notice, Plaintiffs manifested their assent to Roblox's Arbitration Agreement. *Ticketmaster*, 817 F. App'x at 395; *Keebaugh*, 2024 WL 1819651 at *10 (notice was "clear" and users were informed that pressing "Play" manifested consent); *Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023) (granting motion to compel where "users are notified of the existence of the website's terms of use and advises a user that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service").

**D. Plaintiffs Cannot Meet Their Burden to Prove Roblox Has Waived its Right to Arbitration.**

In past briefs, Plaintiffs have wrongly suggested that Roblox waived its right to enforce the Arbitration Agreement. Not so.

As the party opposing arbitration, Plaintiffs bear the burden of showing waiver. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023). To avoid enforcement of their agreements to arbitrate, Plaintiffs must demonstrate (1) "intentional acts inconsistent with [an] existing right to compel arbitration and (2) knowledge of [that] existing right." *Id.* at 1015. Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is . . . waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiffs cannot carry their burden as to either prong, and Roblox has not waived its right to arbitrate.

### 1. Plaintiffs Cannot Meet Their Burden to Show that Roblox Acted Inconsistently with Its Right to Arbitrate.

In determining whether a defendant has acted inconsistently with its right to arbitration, the Court must assess whether "the totality of the parties' actions," *Armstrong*, 59 F.4th at 1015, presents "a clear narrative of . . . strategic choice to engage the judiciary for resolution of the [] claims." *Fox v. Experian Info. Sols., Inc.*, 2024 WL 755804, at *4-*5 (E.D. Cal. Feb. 23, 2024). Plaintiffs cannot make this showing where, as here, Roblox has not yet answered the complaint. The only actions Roblox has taken were to remove this case from state court, where it was improperly filed, and to file a single motion to dismiss in which it expressly reserved its right to move to compel should it later learn that Plaintiffs are, in fact, subject to an agreement to arbitrate.[9]

"The Ninth Circuit has ***never*** held that a single motion to dismiss on the merits conclusively demonstrates acts inconsistent with the right to compel arbitration." *United Specialty Ins. Co. v. Clean & Sober Media LLC*, 2021 WL 3623300, at *4 (C.D. Cal. Apr. 16, 2021) (finding no waiver after defendant filed a motion to dismiss on the merits before seeking to compel arbitration); *see Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353, at *5 (E.D. Cal. Jan. 4, 2024) (finding a motion to dismiss is, "without more . . . not enough to constitute waiver of the right to compel arbitration"). To the contrary, "[t]he Ninth Circuit has indicated that . . . the filing of substantive motions weighs in favor of a finding of waiver" ***only*** "in combination with" other factors, such as "litigating in federal court for ***well over*** a year." *Fox*, 2024 WL 755804, at *4; *United Specialty Ins. Co.*, 2021 WL 3623300, at *4 ("[T]he Ninth Circuit has found waiver where a motion to dismiss was coupled with prolonged

[9] Roblox has also concurrently filed a motion to dismiss the 4AC for expediency and to conserve judicial resources. The Court should reach the Motion to Compel first. If the Court grants Roblox's Motion to Compel, the concurrently filed Motion to Dismiss will be moot.

delays ranging from nine to eighteen months and significant additional litigation activity."). Indeed, courts commonly consider motions to dismiss alongside motions to compel arbitration without finding waiver. *See, e.g.*, *LG Philips LCD Co., Ltd. v. Tatung Co. of Am.*, 2005 WL 8157807, at *2 (C.D. Cal. Feb. 28, 2005) (collecting cases); *see also Stafford v. BAART Behav. Health Servs., Inc.*, 2015 WL 13764217, at *2 (C.D. Cal. July 20, 2015).

Courts also recognize that seeking dismissal evinces a "purpose . . . to 'avoid or frustrate the litigation rather than a strategic decision to actively litigate.'" *Colores v. Ray Moles Farms, Inc.*, 2023 WL 2752379, at *4 (E.D. Cal. Mar. 31, 2023) (finding no waiver despite defendant's answer, counterclaim, and motion for judgment on the pleadings or partial summary judgment arguing for dismissal for failure to state a claim); *see also Hansber v. Ulta Beauty Cosmetics, LLC*, 640 F. Supp. 3d 947, 956 (E.D. Cal. 2022) (finding defendant's removal, filing several motions, and engaging in discovery "reflected only a 'determination to avoid or frustrate the litigation'"); *Sywula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *10 (S.D. Cal. July 18, 2023) (finding a motion to transfer venue, three motions to dismiss, and discovery requests merely "exhibited a determination to avoid litigation"). Here, Roblox's actions have all been directed toward avoiding litigation of Plaintiffs' claims and do not demonstrate any intent to litigate them in court.

### 2. Plaintiffs Cannot Show that Roblox Had Knowledge of Its Right to Compel Arbitration.

Plaintiffs also cannot show that Roblox had knowledge of its right to compel arbitration, given their refusal to provide their usernames. As Roblox informed Plaintiffs at the outset of this case, the company cannot identify accounts through first and last names, which was the only identifying information on the initial complaint. Roblox repeatedly asked Plaintiffs for their usernames in September 2023 so it could evaluate whether they had agreed to the Terms. Plaintiffs refused to provide this information. They only recently provided their usernames on August 16,

2024. Elliott Decl. ¶ 5. And as Plaintiffs have noted, Roblox's Terms have changed over time. *See* ECF No. 36-2. There are also many ways to purchase Robux, and this process also has changed over time. Without knowing how or when Plaintiffs had purchased Robux, it was impossible for Roblox to know which screens Plaintiffs encountered or what language appeared on those screens. Roblox therefore required additional factual information, specifically Plaintiffs' usernames, to determine which version of Roblox's Terms (and Arbitration Agreement) Plaintiffs had agreed to. Plaintiffs cannot seriously contend that Roblox knew that it could compel arbitration when Plaintiffs refused to provide the basic information needed to investigate this very question.

### E. The Court Should Stay Plaintiffs' Claims.

Under the FAA, "a court must stay its proceedings if it is satisfied that an issue before it is arbitrable[.]" *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Here, there are no issues for the Court to resolve after completion of the arbitration process. The Court should therefore stay Plaintiff's claims pending resolution of the arbitration.

## V. CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to arbitrate their claims and stay this action.

Dated: August 28, 2024

COOLEY LLP

By: /s/ *Kyle C. Wong*
Kyle C. Wong

Attorney for Defendant
ROBLOX CORPORATION