COOLEY LLP
TIANA DEMAS (admitted *pro hac vice*)
(tdemas@cooley.com)
LAURA ELLIOTT (286702)
(lelliott@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone:  +1 312 881 6500
Facsimile:   +1 312 881 6598

KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

ARIANA E. BUSTOS (345918)
(abustos@cooley.com)
355 South Grand Avenue, Suite 900
Los Angeles, California 90071-1560
Telephone:  +1 213 561 3250
Facsimile:   +1 213 561 3244

Attorneys for Defendant
ROBLOX CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN UHL, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, a Delaware corporation<br><br>Defendant. | Case No. 23-cv-01940-TWR-BLM<br><br>**DEFENDANT'S RENEWED NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF TO ARBITRATION, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Declaration of Ronita Jit and (Proposed) Order filed concurrently herewith*<br><br>Date:      May 29, 2025<br>Time:      1:30 p.m.<br>Courtroom:      14A<br>Judge:     Hon. Todd W. Robinson |

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION............III

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.    INTRODUCTION................................................................................1

II.   RELEVANT FACTS ..........................................................................2

   A.   PLAINTIFF AGREED TO ROBLOX'S TERMS, INCLUDING THE ARBITRATION AGREEMENT, BY PERMITTING HIS CHILD TO USE ROBLOX AND BY REPEATEDLY PURCHASING ROBUX. ...............................................................2

   B.   ROBLOX'S TERMS REQUIRE ARBITRATION.............................6

      1.  THE ARBITRATION AGREEMENT GIVES USERS CLEAR NOTICE OF THEIR OBLIGATION TO INDIVIDUALLY ARBITRATE THEIR CLAIMS.................6

      2.  THE ARBITRATION AGREEMENT IS EXPANSIVE IN SCOPE.................................................................6

      3.  THE ARBITRATION AGREEMENT REQUIRES ARBITRATION OVERSEEN BY AAA. ...............................7

      4.  THE ARBITRATION AGREEMENT INCLUDES AN OPT-OUT PROVISION. ..............................................7

   C.   ROBLOX'S ARBITRATION AGREEMENT IS CONSUMER FRIENDLY AND COST EFFECTIVE..................................8

   D.   PLAINTIFF SUED WITHOUT FIRST ENGAGING IN INFORMAL DISPUTE RESOLUTION OR COMMENCING ARBITRATION. .............................................................8

III.  LEGAL STANDARDS..........................................................................10

IV.  ARGUMENT .......................................................................................11

   A.   PLAINTIFF REPEATEDLY AGREED TO ARBITRATE HIS CLAIMS.........................................................................11

      1.  PLAINTIFF ASSENTED TO THE ROBLOX TERMS EACH TIME HE PURCHASED ROBUX. ......................11

      2.  THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE...............................................15

      3.  PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT. ......................17

   B.   PLAINTIFF CANNOT MEET HIS BURDEN TO PROVE ROBLOX HAS WAIVED ITS RIGHT TO ARBITRATION. .........18

      1.  PLAINTIFF CANNOT MEET HIS BURDEN TO SHOW THAT ROBLOX ACTED INCONSISTENTLY WITH ITS RIGHT TO ARBITRATE. ......................................19

      2.  PLAINTIFF CANNOT SHOW THAT ROBLOX HAD KNOWLEDGE OF ITS RIGHT TO COMPEL ARBITRATION. ...............................................20

## TABLE OF CONTENTS
(continued)

**Page**

    C.     THE COURT SHOULD STAY PLAINTIFF'S CLAIMS.................21

V.    CONCLUSION ...........................................................................21

## NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2025 at 1:30 p.m., or as soon thereafter as this Motion may be heard in the above-titled Court, located at James M. Carter and Judith N. Keep U.S. Courthouse, 333 West Broadway, San Diego, California, Defendant Roblox Corporation ("Roblox" or "Defendant") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling Plaintiff Damien Uhl ("Plaintiff") to arbitrate his claims in the Fourth Amended Class Action Complaint ("4AC") (ECF No. 53) against Defendant and staying this case.  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations of Ronita Jit ("Jit Decl."), Laura Elliott ("Elliott Decl."), Jamie Robertson ("Robertson Decl."), and the exhibits attached thereto (including the declaration and supplemental declaration of Plaintiff Damien Uhl (the "Uhl Decl." and "Suppl. Uhl Decl.," respectively)), all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

iii

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
    59 F.4th 1011 (9th Cir. 2023)....................................................................18, 19

*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
    No. 5:13-CV-02664-EJD, 2014 WL 3371842 (N.D. Cal. July 9,
    2014)....................................................................................................................11

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022).........................................................................12, 13

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
    647 F.3d 914 (9th Cir. 2011)...............................................................................17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000).............................................................................11

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019)................................................................13

*Colores v. Ray Moles Farms, Inc.*,
    2023 WL 2752379 (E.D. Cal. Mar. 31, 2023) ....................................................20

*Dickey v. Ticketmaster LLC*,
    2019 WL 9096443 (C.D. Cal. -- Mar. 12, 2019)...........................................13, 14

*Ferguson v. Corinthian Colls., Inc.*,
    733 F.3d 928 (9th Cir. 2013)...............................................................................10

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................11

*Fox v. Experian Info. Sols., Inc.*,
    718 F.Supp.3d 1231 (E.D. Cal. 2024).................................................................19

*Franklin v. HealthSource Global Staffing, Inc.*,
    2024 WL 1055996 (S.D. Cal. Mar. 11, 2024)....................................................11

*Genasys Inc. v. Vector Acoustics, LLC*,
    2023 WL 4414222 (S.D. Cal. Jul. 7, 2023) (Robinson, J.) ................................11

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

iv

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

*Ghazizadeh v. Coursera, Inc.*,
  737 F. Supp. 3d 911 (N.D. Cal. 2024)................................................................. 19

*Golden v. Dameron Hosp. Ass'n*,
  2012 WL 4208779 (E.D. Cal. Sept. 19, 2012) ................................................... 17

*Hansber v. Ulta Beauty Cosmetics, LLC*,
  640 F. Supp. 3d 947 (E.D. Cal. 2022) ................................................................ 20

*Hansen v. LMB Mortg. Servs., Inc.*,
  1 F.4th 667 (9th Cir. 2021) ................................................................................. 10

*Hill v. Xerox Bus. Servs., LLC*,
  59 F.4th 457 (9th Cir. 2023) ............................................................................... 21

*Ingle v. Cir. City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ............................................................................ 11

*Installit, Inc. v. Carpenters 46 N. Cal. Cntys. Conf. Bd.*,
  214 F.Supp.3d 855 (N.D. Cal. 2016) .................................................................. 18

*Kaplan v. Ath. Media Co.*,
  705 F.Supp.3d 992 (N.D. Cal. 2023) .................................................................. 16

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F. 4th 1005 (9th Cir. 2024) ............................................................. 12, 13, 14

*Lee v. DoNotPay, Inc.*,
  683 F.Supp.3d 1062 (C.D. Cal. 2023) ................................................................ 16

*LG Philips LCD Co., Ltd. v. Tatung Co. of Am.*,
  2005 WL 8157807 (C.D. Cal. Feb. 28, 2005) .................................................... 20

*Macias v. Excel Bldg. Servs. LLC*,
  767 F. Supp. 2d 1002 (N.D. Cal. 2011) .............................................................. 11

*Matera v. Google Inc.*,
  2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................................... 15

*Meyer v. Uber Technologies, Inc.*,
  868 F.3d 66 (2d Cir. 2017) ................................................................................. 14

*Mitchell v. Ecolab, Inc.*,
  2023 WL 2666391 (E.D. Cal. Mar. 28, 2023) .............................................. 10, 11

Cooley LLP
Attorneys at Law
Chicago

v

Defendant's Renewed Motion to
Compel Arbitration
Case No. 23-cv-01940-TWR-BLM

*Mohamed v. Uber Technologies, Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .................................................................. 15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ......................................................................................... 10, 18

*Moyer v. Chegg, Inc.*,
  2023 WL 4771181 (N.D. Cal. July 25, 2023) ................................................ 13

*Nevarez v. Forty Niners Football Co.*,
  2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......................................... 13, 14

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ........................................................................ 13

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ...................................................................... 11, 12

*Perry v. Thomas*,
  482 U.S. 483 (1987) ........................................................................................ 10

*Peter v. DoorDash, Inc.*,
  445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................................................ 14

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.(US), LLC*,
  55 Cal. 4th 223 (Cal. 2012) ............................................................................ 15

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ........................................................................ 17

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ........................................................................................ 21

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. Jul. 28, 2021) ............................................ 12, 14

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ........................................................................................ 21

*Stafford v. BAART Behav. Health Servs., Inc.*,
  2015 WL 13764217 (C.D. Cal. July 20, 2015) ............................................... 20

*Sywula v. Teleport Mobility, Inc.*,
  2023 WL 4630620 (S.D. Cal. July 18, 2023) .................................................. 20

COOLEY LLP
ATTORNEYS AT LAW
CHICAGO

vi

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ................................................................. 17

*United Specialty Ins. Co. v. Clean & Sober Media LLC*,
   2021 WL 3623300 (C.D. Cal. Apr. 16, 2021) ....................................... 19

*Wheeler v. LG Elecs. USA, Inc.*,
   2024 WL 51353 (E.D. Cal. Jan. 4, 2024) ............................................... 19

Cooley LLP
Attorneys at Law
Chicago

vii

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.    INTRODUCTION**

3      Discovery conclusively establishes that Plaintiff Damien Uhl received clear

4  notice of and repeatedly agreed to Roblox's Terms of Use ("Terms"), which have

5  contained a mandatory arbitration clause at all relevant times.  Uhl admits he read the

6  2017 version of the Terms before permitting his child to create a Roblox account.

7  Uhl then repeatedly purchased Robux starting in 2018.  Before each purchase, he was

8  presented with clear and conspicuous notice informing him that, by purchasing, he

9  was agreeing to Roblox's Terms, including the arbitration clause.  Uhl does not and

10  cannot dispute these facts.  As such, this Court should enforce the arbitration

11  agreement and compel Uhl to arbitrate his claims.

12      Uhl cannot avoid arbitration by arguing, as he has in the past, that Roblox

13  somehow waived its right to compel arbitration by removing the case to federal court

14  and filing a single motion to dismiss (which the Court granted).  In September 2023,

15  Roblox asked Plaintiff to provide all relevant Roblox usernames so Roblox could

16  investigate whether Plaintiff had agreed to arbitrate his claims.  Plaintiff refused to

17  do this and maintained his position until mid-August 2024, a few days before

18  Roblox's deadline to respond to the Fourth Amended Complaint ("4AC").  Soon after

19  Plaintiff provided the username, Roblox moved to compel arbitration.  Plaintiff

20  cannot leverage his own delay tactics to evade his agreement to arbitrate.  And no

21  court in this Circuit has found that filing a single motion to dismiss waives the right

22  to arbitrate.

23      The arbitration agreement is an enforceable contract.  It is neither procedurally

24  nor substantively unconscionable.  It permits Plaintiff to opt out of arbitration or to

25  bring his claims in small claims court, and it includes terms that are, at minimum,

26  bilateral, if not more favorable to Plaintiff.  Additionally, Plaintiff's claims fall

27  squarely within the arbitration agreement's scope, which encompasses all claims

28  "arising under or relating to" the Roblox Terms (including the User Terms and

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

1

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

Roblox Community Standards) and Services (including Roblox's websites and applications). Each of Plaintiff's claims derive from purported misrepresentations in Roblox's User Terms and on its website. The claims therefore necessarily relate to the Roblox Terms and Services.

The Court should compel Plaintiff to arbitrate his claims and stay this case.

## II.  RELEVANT FACTS

### A.  Plaintiff Agreed to Roblox's Terms, including the Arbitration Agreement, by Permitting his Child to Use Roblox and by Repeatedly Purchasing Robux.

Plaintiff is the parent of a minor Roblox user whose account was created in 2017.[1]  4AC ¶ 78. Plaintiff allegedly "read[] the 2017 version[] of Roblox's Terms of Use," which included an arbitration agreement, before permitting his child to use Roblox. *Id.* That version of Roblox's terms provided that "[i]n order to agree to these Terms, you need to . . . be 18 or older, or have your parent or guardian's consent to agree to the Terms." Jit Decl., Ex. 2; Robertson Decl., Ex. A ("Uhl Decl.") ¶ 2 ("At the time my child's account was created, it was done so with my permission . . . ."). Plaintiff's child used Roblox for five years with Plaintiff's knowledge and permission before Plaintiff purportedly revoked his permission in June 2022. Uhl Decl. ¶¶ 6, 12.

During those five years, Plaintiff repeatedly purchased Robux for his child through the Roblox platform. 4AC ¶ 19. Plaintiff alleges that, since June 2017, he "spent money on the Roblox platform on at least a monthly basis to pay for Robux for his children's benefit." *Id.* The account history for the sole Roblox username provided by Plaintiff shows multiple Robux purchases starting in December 2018 and continuing through July 2024. These Robux purchases were made on the Roblox platform using various payment methods including Apple Pay, Google Pay, and

---

[1]  Roblox's records show that the account Plaintiff identified as belonging to his daughter was created in November 2018. Jit Decl. ¶ 6. The version of the Terms in effect as of that date are attached as Exhibit 3 to the Jit Declaration.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

2

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

credit cards.[2]  Jit Decl. ¶ 8.  Before making each purchase, Plaintiff was required to agree to the Terms (which has contained a mandatory arbitration provision at all relevant times).[3]  *Id*. ¶¶ 10-15.  Although Plaintiff disclaims knowledge of Robux purchases from his child's account after June 14, 2022, or that he permitted his child to make these later purchases, Uhl Decl. ¶ 19, Plaintiff admits *he* made all pre-June 14, 2022 Robux purchases, with a single exception on January 18, 2022.  Robertson Decl., Ex. B ("Suppl. Uhl Decl.") ¶¶ 4, 7; Jit Decl., Ex. 1.

From May 2, 2018 through January 2023, users who purchased Robux through the Roblox website were presented with an uncluttered screen containing a conspicuous disclosure stating that, "[b]y submitting payment information you acknowledge that you . . . have read, understood and agree to be bound by . . . **Roblox Terms** including the arbitration clause . . . ."  Jit Decl. ¶ 10.  "Roblox Terms" appeared in underlined blue font on a white background and was hyperlinked to the then-current version of the Roblox Terms.  *Id*. ¶¶ 11-12.  To complete the Robux purchase, users were required to enter their payment information and submit it by clicking a button labeled "Pay now."  *Id*.  Plaintiff purchased Robux in this manner on multiple occasions, including April 14, 2022.  *Id*. ¶ 8, Ex. 1.

---

[2] Purchases made by Plaintiff through the Apple App Store and Google Play Store were made using Apple Pay and Google Pay.  Jit Decl. ¶ 8.

[3] Plaintiff has identified the username for the Roblox account that has been utilized by his child.  ECF No. 59-7 ("Elliott Decl.") ¶ 5.

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

3

Defendant's Renewed Motion to
Compel Arbitration
Case No. 23-cv-01940-TWR-BLM

*Id.* ¶ 12.

Additionally, from February 24, 2021 to October 16, 2022, when purchasing Robux through an app on a mobile device—as Plaintiff did on June 14, 2022 and many prior occasions (*see* Jit Decl., Ex. 1)—Roblox users were immediately presented with a conspicuous disclosure in easily readable font at the top of the screen informing them that, "[b]y purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**." *Id.* ¶ 14. This disclosure appeared in the same layout as the below screenshot:[4]

---

[4] The screenshot below shows the correct layout—including placement, font size, bolding, and underlining—as the disclosure presented to mobile app users between February 24, 2021 and October 16, 2022, which includes June 14, 2022. Jit Decl. ¶ 14. As noted above, the text of the disclosure during this time period was different:

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM



*Id.* To complete their purchase of Robux through the mobile app, users were required to provide affirmative consent for the charge by double clicking the side button to pay through Apple Pay or clicking 1-tap buy on Google Pay. *Id.* ¶ 16.



*Apple*                                              *Android*

---

"By purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**." On October 17, 2022, the language of the disclosure was updated to what is reflected in the above screenshot. Jit Decl. ¶ 15 Roblox has included the above screenshot to aid the Court's analysis of the disclosure Plaintiff received, including the visual elements.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

5

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-cv-01940-TWR-BLM

**B.    Roblox's Terms Require Arbitration.**

Plaintiff concedes he purchased Robux through Roblox.com on April 14, 2022.  Suppl. Uhl  Decl. ¶ 3.  Plaintiff also admits he purchased Robux through the Roblox mobile application using Apple Pay on June 14, 2022.  At the time of these purchases, the operative Roblox terms were the same, with a "last updated" date of April 6, 2022 ("Terms").[5]  Section 16 of the Terms (the "Arbitration Agreement") includes provisions that give notice of the agreement to arbitrate, describe its expansive scope, require individual arbitration, and permit users to opt out. Jit Decl., Ex. 4 § 16.

**1.    The Arbitration Agreement Gives Users Clear Notice of their Obligation to Individually Arbitrate their Claims.**

The Arbitration Agreement informs users in all-caps that they are agreeing to individually arbitrate any dispute with Roblox:

> USER AGREES THAT USER IS GIVING UP THE RIGHT TO FILE A  LAWSUIT  IN  COURT  BEFORE  A  JUDGE  OR  JURY, INCLUDING  IN  A  CLASS  ACTION,  FOR  DISPUTES  THAT  ARE SUBJECT TO ARBITRATION.

*Id.*

**2.    The Arbitration Agreement is Expansive in Scope.**

The Arbitration Agreement applies to "any dispute arising under or relating to the Roblox Terms or the Services ('Dispute')."  *Id.*  "Roblox Terms" are defined as "the User Terms, the Creator Terms, the DevEx Terms, the Roblox Community Standards, the DMCA Guidelines and Policies and the Roblox TM Guidelines."  Jit Decl., Ex. 5.Roblox "Services" are broadly defined as the Roblox "Platform," and

---

[5] Unless otherwise noted, "Terms" refers to the Roblox Terms last updated on April 6, 2022, as these were the Terms in effect on June 14, 2022—the last date on which Plaintiff admits to personally purchasing Robux.  However, as described below in Section IV(A), Plaintiff also agreed to earlier versions of the Terms in effect from at least December 2018 (the date of his first Robux purchase) through April 5, 2022, and those terms also included a broad arbitration agreement requiring arbitration of Plaintiff's claims.

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

6

Defendant's Renewed Motion to
Compel Arbitration
Case No. 23-cv-01940-TWR-BLM

"various features and services, like websites, applications [and] forums …, to allow users to play, create and connect." *Id*. The Arbitration Agreement also makes clear that it "applies regardless of the legal theories involved in the Dispute and regardless of whether the Dispute is with Roblox, its subsidiaries, affiliates or parent company, or any suppliers or service providers involved with the Services, or their officers, directors, employees, agents, or successors." Jit Decl., Ex. 4 § 16(a).

### 3. The Arbitration Agreement Requires Arbitration Overseen by AAA.

The Arbitration Agreement states that "Roblox and any User who is a United States resident agree that any Dispute . . . will be subject only to binding arbitration by a neutral arbitrator and may not be litigated." *Id*. § 16(d). The "Arbitration will be overseen by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules ('AAA Rules')." *Id.*

### 4. The Arbitration Agreement Includes an Opt-Out Provision.

The Arbitration Agreement gives users the right to opt out:

> Opting Out of Arbitration Terms. User may opt out of the Arbitration Terms within 30 days of using the Services for the first time, and User may opt out of any material changes to the Arbitration Terms within 30 days after Roblox gives notice of those changes (unless a longer period is required by applicable law). To opt out of the Arbitration Terms or changes thereto, User must send a notice titled "Arbitration Opt-Out Notice" to Roblox Corporation, Legal Department, 970 Park Place, Suite 100, San Mateo, CA 94403 by certified U.S. Mail or by Federal Express (or international equivalent). The Arbitration Opt-Out Notice must include: (a) the full legal name of the User, (b) the username of the User's Roblox account, and (c) the User's email address. An opt-out notice does not revoke or otherwise affect any previous agreement to the Arbitration Terms. By opting out of a change to the Arbitration Terms, User agrees to arbitrate any Dispute in accordance with the language of the last Arbitration Terms that User accepted.

*Id*. § 16(d)(xiv).

C.   **Roblox's Arbitration Agreement is Consumer Friendly and Cost Effective.**

The Arbitration Agreement gives Roblox users a simple, efficient means of resolving disputes through the following provisions:

- **Flexible consumer procedures**: The arbitration hearing will take place in San Mateo County, California or, if that is not a reasonably convenient location for the User, "in the county or parish where the User resides." *Id.* § 16(d)(vi). Arbitration will be administered by AAA and depending on the amount of a claim, AAA Rules may permit or require the arbitration to be conducted: (1) only by documents submitted to the arbitrator; or (2) by telephone hearing. *Id.*

- **Costs**: If User's total claims are for less than $10,000, Roblox will reimburse User the cost of User's filing fee, unless the arbitrator determines that the substance of User's claims or remedy sought were frivolous or brought for an improper purpose as described in the AAA. *Id.* § 16(d)(v).

- **Exceptions**:  Users are permitted to assert non-class claims in small claims court. *Id.* § 16(d)(xiii).  Users are also permitted to bring claims seeking "only injunctive relief and no award of attorneys' fees or costs" in court without adhering to either the Informal Dispute Resolution Requirements or Arbitration Agreement. *Id.* § 16(d)(xii).

D.   **Plaintiff Sued Without First Engaging in Informal Dispute Resolution or Commencing Arbitration.**

Despite agreeing to arbitrate this dispute, Plaintiff filed his class action in state court on August 7, 2023, alleging that Roblox misrepresented the safety of its platform, inducing Plaintiff to purchase Robux.  4AC ¶ 83.  Plaintiff did not follow any of the Informal Dispute Resolution Requirements described in Section 16(c) of the Terms prior to filing suit.

Shortly after being served with the initial complaint in August 2023, Roblox asked Plaintiff to provide the Roblox username associated with his child's account.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

8

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

Elliott Decl. ¶ 2.  Without this information, Roblox could not identify the relevant Roblox account or confirm when and whether Plaintiff had agreed to arbitrate his claims.  *Id*.  Plaintiff refused to provide the username until August 16, 2024, nearly one year later.  *Id*. ¶ 5.

Because the basis for federal jurisdiction was clear from the face of the initial complaint, and Roblox did not have sufficient information to move to compel arbitration, Roblox removed to federal court.  ECF No. 1.  Plaintiff sought to avoid removal by filing a Second Amended Complaint in November 2023 and then moved to remand the case back to state court.  ECF Nos. 14, 20.  This process delayed Roblox's response to the initial complaint until March 2024. ECF No. 35. At Plaintiff's request, the parties further delayed the hearing on Roblox's motion to dismiss by two months, until June 13, 2024.  ECF No. 33.  The Court issued its order granting the motion to dismiss, without prejudice, on July 10, 2024.  ECF No. 47. Plaintiff filed the 4AC on August 14, 2024.

Eight days after receiving the Roblox username from Plaintiff, Roblox filed its initial Motion to Compel Arbitration on August 28, 2024.  ECF No. 59 ("Motion"). This Motion sought to enforce the version of Roblox's Terms in effect as of August 2023 given the many purchases made in connection with Plaintiff's child's Roblox account during and after that month.  In response to the Motion, Plaintiff informed Roblox for the first time that he lacked knowledge of purchases made during or after August 2023, even though many of them were associated with his own email address. ECF No. 64 ("Opp.") at 9-10.  In light of this new information and Roblox's need for further details about Plaintiff's assent to its Terms, the parties agreed to conduct targeted discovery on the issues of (1) Plaintiff's notice of and assent to Roblox's Terms of Use and (2) the specific version(s) of the Terms of Use to which Plaintiff assented. ECF No. 66.   Roblox also agreed to withdraw its pending Motion and to file a renewed motion to compel on an agreed-upon schedule after completing discovery.  *Id*.  Consistent with their agreement, the parties conducted limited

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

9

Defendant's Renewed Motion to
Compel Arbitration
Case No. 23-cv-01940-TWR-BLM

arbitration-related discovery. Roblox produced multiple documents concerning Robux purchases by the Roblox account Plaintiff identified as his child's. Plaintiff provided two declarations describing his knowledge of and involvement in the creation of his minor child's Roblox account, his Robux purchases, and his redemption of Robux gift cards. The information contained in these declarations was necessary to determine whether Plaintiff assented to Roblox's Terms, when Plaintiff assented, and which version(s) of the Terms Plaintiff assented to.

## III.  LEGAL STANDARDS.

The Federal Arbitration Act ("FAA") reflects a "congressional declaration of a liberal federal policy favoring arbitration agreements[.]"[6] *Perry v. Thomas*, 482 U.S. 483, 489 (1987).[7]  A motion to compel arbitration pursuant to the FAA is intended to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).

The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement. *Mitchell v. Ecolab, Inc.*, 2023 WL 2666391, at *3 (E.D. Cal. Mar. 28, 2023).  In determining whether an arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of

---

[6] The Arbitration Agreement specifies that the FAA "governs . . . [its] interpretation and enforcement."  Terms § 11(b)(ii).  Under the FAA, an arbitration agreement in any "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA governs this Motion under the express terms of the Arbitration Agreement and because claims relate to Plaintiff's purchases of Robux and their use of Roblox, which affect commerce.
[7] All emphasis is added and all citations and internal quotation marks are omitted unless otherwise noted.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

10

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

contracts.'" *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Once the moving party carries its burden of production on the existence of a valid arbitration agreement, the non-moving party must produce evidence to support its defense. *Mitchell*, 2023 WL 2666391 at *4; *Franklin v. HealthSource Global Staffing, Inc.*, 2024 WL 1055996, at *7 (S.D. Cal. Mar. 11, 2024); *Genasys Inc. v. Vector Acoustics, LLC*, 2023 WL 4414222 at *6 (S.D. Cal. Jul. 7, 2023) (Robinson, J.). The Court may decide the motion based on "the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014); *see also Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011).

## IV.  ARGUMENT

### A.    Plaintiff Repeatedly Agreed to Arbitrate his Claims.

In determining whether to compel arbitration, a court generally need address only two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The evidence here clearly shows a valid arbitration agreement that covers Plaintiff's claims.

#### 1.    Plaintiff Assented to the Roblox Terms Each Time He Purchased Robux.

There is no genuine dispute that Plaintiff accepted Roblox's Terms and agreed to arbitrate his claims every time he purchased Robux. "[A]n enforceable agreement may be found where (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)

Cooley LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

11

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

(setting out the aforementioned two-pronged test for determining whether a contract is enforceable based on an inquiry notice theory).   Notice is "reasonably conspicuous" where it is displayed "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  *Id.* at 516(citing *Berman*, 30 F.4th at 856). For example, courts repeatedly have found that a reasonably prudent user would know that "the use of a contrasting font color (typically blue) … provides a clickable pathway to another webpage." *Id.* (citing *Berman*, 30 F.4th at 857.  Further, "[a] user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857.  A user can also assent to terms by taking an action, like making a purchase, or clicking "play," after being informed that such action constitutes assent.  *See, e.g., Keebaugh v. Warner Bros. Ent. Inc.*, 100 F. 4th 1005, 1020-21 (9th Cir. 2024) (reversing denial of motion to compel arbitration where app users were informed "by tapping 'Play' I agree to the Terms of Service," and hyperlinked terms appeared beneath the "Play" button); *Silver v. Stripe Inc.*, 2021 WL 3191752 at *4 (N.D. Cal. Jul. 28, 2021) (enforcing a "sign-in wrap" agreement where plaintiff placed an Instacart order after being notified that placing an order constituted assent to privacy policy).

Here, Plaintiff's Robux purchases all occurred through checkout flows that: (1) clearly informed Plaintiff that he was agreeing to Roblox's hyperlinked Terms, including the arbitration clause; and (2) required him to take an affirmative action— purchasing Robux—to reflect his assent to the Terms. Jit Decl. ¶¶ 10-15.

When Plaintiff purchased Robux using a credit or debit card on the Roblox website, he received a conspicuous notice stating that "[b]y submitting payment information you acknowledge . . . that you have read and agree to be bound by . . . **Roblox Terms** including the arbitration clause."  *Id*. ¶ 10.  This notice appeared above the "Pay now" button and below the form where Plaintiff needed to enter his

payment information.  *Id.* ¶ 11.  "Roblox Terms" appeared in a contrasting blue underlined font in a clear and uncluttered checkout flow, and it hyperlinked to the Terms.  *Id.* ¶ ¶ 12. The placement and design of the notice was such that a reasonable internet user would have seen it. *See, e.g.*, *Keebaugh*, 100 F. 4th at 1021 (reversing denial of a motion to compel based on a "sign-in wrap" noting that "the sign-in screen here lacks clutter and…[t]he design elements use 'a contrasting font color' making the notice legible on the dark background")[8]; *Dickey v. Ticketmaster LLC*, 2019 WL 9096443 at *7 (C.D. Cal. -- Mar. 12, 2019) (enforcing arbitration agreement where terms were "hyperlinked," in a different color to contrast with the background, and "well-placed" next to the "sign-up" button); *Nevarez v. Forty Niners Football Co.*, 2017 WL 3492110 at *8 (N.D. Cal. Aug. 15, 2017) (enforcing arbitration agreement where terms were "always hyperlinked and available for review," user was required to click "accept and continue" button after providing information to create account, and user was informed that "by continuing past this page, you agree to our terms of use"); *compare Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) (hyperlink not conspicuous enough to provide notice where it was "wholly indistinguishable from the surrounding text").  Further, the notice expressly advised Plaintiff that submitting payment information would constitute assent to the Terms, meeting the second prong of the *Berman* test.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Keebaugh*, 2024 WL 1819651, at *10 (notice was "clear" and users were informed that pressing "Play" manifested consent); *Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023) (granting motion to compel where "users are notified of the existence of the website's terms of use and advises a user that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service").

---

[8]  In *Keebaugh*, the notice did not state that the Terms included an arbitration agreement. *Keebaugh*, 100 F. 4th at 1010–1011. Roblox's notices call out the existence of an arbitration agreement. Jit Decl. ¶¶ 10, 13.

Similarly, when Plaintiff purchased Robux through the mobile application, he received a disclosure stating that "[b]y purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**."  Jit Decl. ¶ 13. Again, the notice contained all the hallmarks of conspicuousness, including bolded and underlined hyperlinked Terms presented in a clear and uncluttered checkout flow.  *Id.*; *Keebaugh*, 2024 WL 1819651, at *10; *Dickey*, 2019 WL 9096443, at *7; *Nevarez*, 2017 WL 3492110, at *8. Once Plaintiff selected the Robux package he wanted to purchase, a pop-up window appeared at the bottom of the screen containing the disclosure, which allowed him to pay with either Apple Pay or Google Pay, depending on the device used.  *Id.*  By completing his Robux purchase, Plaintiff confirmed he agreed to the Terms.  *See Keebaugh,* 100 F.4th at 1020 (finding that users were put on notice that they are agreeing to be bound by terms when "users would understand that their use of an app that allows for in-app purchases would be governed by some terms of use."); *Silver*, 2021 WL 3191752, at *4; *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 594-87 (N.D. Cal. 2020) (signing up for an account with notice that doing so constituted agreement to terms was sufficient to bind plaintiff to those terms); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 76-80 (2d Cir. 2017) (registration for an account after being informed that registration resulted in assent to terms was sufficient to bind plaintiff) (collecting cases).

And although Roblox's June 2022 Terms permit users to opt out of the arbitration agreement, Roblox has no record showing that Plaintiff did so.  Jit Decl. ¶ 9.

Plaintiff may argue, as he has before, that Roblox did not provide sufficiently conspicuous notice of the Terms.  Opp. at 19-20.  Not only is this argument wrong for the reasons described above, but it fails to acknowledge that Plaintiff had actual notice of Roblox's 2017 Terms, which also contained an arbitration agreement and expressly bound persons who "us[e] or visit[] any of [Roblox's] websites" or "products."  4AC ¶ 78; Jit Decl. Ex. 2.  Plaintiff cannot disclaim notice of the

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

14

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

Arbitration Agreement when he read the 2017 Terms before purchasing Robux and was aware that his use of Roblox would bind him to those terms and any updates.[9] *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (terms stating that users who did not agree to posted modifications "should discontinue [] use" bound continuing users to updated terms upon posting). Furthermore, Plaintiff's declarations strongly suggest that he created his child's Roblox account. ECF No. 64-1 ¶¶ 1-2; Suppl. Uhl Decl. ¶¶ 1-2. Plaintiff describes himself as "a parent of a child who has registered an account on the Roblox platform," and admits that the account was created with his "permission" and his email address, which "was linked to my child's account." Suppl. Uhl Decl. ¶¶ 1-2. Furthermore, Plaintiff's child would have been only five or six years old at the time the account was created. 4AC ¶¶ 78 (alleging that Uhl's daughter was 12 years old as of August 14, 2024, which would have made her five years old in 2017 and six years old in 2018). Roblox clearly and conspicuously notifies users that they are agreeing to the Terms when they create an account. *See* ECF No. 59-1 ¶¶ 24-27.

## 2. The Arbitration Agreement is Valid and Enforceable.

Plaintiff cannot meet his burden to show that the Arbitration Agreement is procedurally and substantively unconscionable. *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (noting that "both procedural *and* substantive unconscionability must be present in order for an agreement to be unenforceable")(emphasis added); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.(US), LLC*, 55 Cal. 4th 223, 236 (Cal. 2012) (the party opposing arbitration "bears the burden of proving any defense, such as unconscionability"). Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power," while substantive unconscionability focuses on "overly harsh or one-sided

---

[9] The 2017 Terms expressly informed Plaintiff that Roblox "reserve[d] the right to update or modify the Terms at any time without prior notice" and that his "use of the Service following any such change constitutes [his] agreement to be bound by the modified Terms." Jit Decl. Ex. 2. The 2017 Terms instructed Plaintiff to "review these Terms frequently to stay informed of the latest modifications." *Id.*

results." *Mohamed*, 848 F.3d at 1210.

***Not Procedurally Unconscionable.*** The Arbitration Agreement provides a meaningful opportunity to opt out and is therefore not unconscionable. "An arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1210-11 (reversing due to failure to adhere to Ninth Circuit precedent and holding that "the existence of a meaningful right to opt out" of arbitration renders the arbitration agreement "procedurally conscionable as a matter of law"); *Lee v. DoNotPay, Inc*., 683 F.Supp.3d 1062, 1077 (C.D. Cal. 2023) (finding 30-day opt-out window sufficient and not unconscionable).  Opting out of the Arbitration Agreement is easy: mail the user's identifying information and a clear opt-out statement within 30 days.  Jit Decl., Ex. 4 § 16 (d)(xiv).  The Ninth Circuit has held that far more exacting opt-out procedures are meaningful and make an arbitration agreement conscionable as a matter of law. *Mohamed*, 848 F.3d at 1210-11 (finding opt out that required notice "*in person* at Uber's San Francisco offices or by *overnight delivery service*" sufficient to establish conscionability as a matter of law)(emphasis added).[10]

Plaintiff also received notice of the Arbitration Agreement at the time of assent.  The Robux purchase webpages on Roblox.com and the mobile application explicitly state that the user agrees to the Roblox Terms "including the arbitration clause," Jit Decl. ¶¶ 12, 14, and the hyperlinked Terms alert the user to the Arbitration Agreement in bold, capital letters.  Jit Decl. Ex. 4 § 16.  These conspicuous notices combined with a 30-day mail opt-out procedure suffice to establish procedural conscionability.  *See, e.g.*, *DoNotPay*, 683 F.Supp.3d at 1077 (finding arbitration agreement procedurally conscionable in part because it was "clearly labeled in the Terms of Service and Privacy Policy with bold text and an isolated title"); *Kaplan v. Ath. Media Co.*, 705 F.Supp.3d 992, 1005 (N.D. Cal. 2023) (finding arbitration

---

[10] Roblox users need not even send an opt-out notice to file in small claims court or to bring a claim for injunctive relief.  Jit Decl., Ex. 4 § 16 (d)(xii).

CooLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

16

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE No. 23-CV-01940-TWR-BLM

agreement procedurally consciable because it permitted users "to opt out by mailing written notice within 30 days").

*Not Substantively Unconscionable.* The Arbitration Agreement provides at minimum, uniform bilateral terms, if not unilaterally more favorable terms to non-Roblox parties, placing it far below the high bar for substantive unconscionability. To be substantively unconscionable, an arbitration agreement must "shock the conscience" or tip the scales to an "unreasonably favorable" degree. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (finding adhesive employment agreement's arbitration provision consciable despite incorporating, yet not providing, arbitration body rules). Here, the Arbitration Agreement provides that arbitration hearings may be conducted within the user's county if the default location is not convenient, and parties can bring actions seeking only injunctive relief in court. Jit Decl., Ex. 4 § 16(d)(vi), (xii). Courts have enforced agreements with similar or even less favorable terms. *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025 (9th Cir. 2016) (finding agreement substantively consciable despite imposing bilateral attorney fee-shifting, bilateral arbitration fee-shifting, a forum selection of San Francisco, and a one-year limitations period).

### 3. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

Plaintiff's claims fall within the scope of the parties' Arbitration Agreement, which broadly requires arbitration of "any dispute arising under or relating to the Roblox Terms or the Services"—"regardless of the legal theories involved in the Dispute." Jit Decl. Ex. 4 § 16 (a). . It is well-settled that such language is given the broadest possible interpretation. *Golden v. Dameron Hosp. Ass'n*, 2012 WL 4208779, at *3 (E.D. Cal. Sept. 19, 2012); *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement"). Moreover, courts have interpreted this language to encompass both statutory and

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

17

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

common law claims.  *Installt, Inc. v. Carpenters 46 N. Cal. Cntys. Conf. Bd.*, 214 F.Supp.3d 855, 861–62 (N.D. Cal. 2016) (noting that "statutory claims may be the subject of arbitration agreements even where those agreements do not contain 'a clear, explicit statement' to that effect" and an arbitration clause reaching "any dispute concerning any application or interpretations of this Agreement" applied to statutory claims).

Here, Plaintiff's claims are clearly encompassed by the parties' broad Arbitration Agreement.  Each of Plaintiff's claims are based on alleged misrepresentations on Roblox's websites, including in its Community Standards and User Terms.  4AC ¶¶ 41-52, 78-81.  These claims therefore "relat[e] to" the Roblox Terms (defined to include the User Terms and Roblox Community Standards) and Services (defined to encompass "all of the various features and services, like websites, applications and forums and the Platform").  Additionally, Plaintiff's purchase of Robux—"the official currency of the [Roblox] Platform"—necessarily "relat[es] to" the Roblox Platform.  Jit Decl., Ex. 5.

### B.   Plaintiff Cannot Meet His Burden to Prove Roblox Has Waived its Right to Arbitration.

In past briefs, Plaintiff has wrongly suggested that Roblox waived its right to enforce the Arbitration Agreement.  Not so.  As the party opposing arbitration, Plaintiff bears the burden of showing waiver.  *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023).  To avoid enforcement of his agreements to arbitrate, Plaintiff must demonstrate both (1) "intentional acts inconsistent with [an] existing right to compel arbitration and (2) knowledge of [that] existing right." *Id*. at 1014.  Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is . . . waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Plaintiff cannot carry his burden as to either prong. Roblox has not waived its right to arbitrate.

Cooley LLP
Attorneys at Law
Los Angeles (Downtown)

18

Defendant's Renewed Motion to
Compel Arbitration
Case No. 23-cv-01940-TWR-BLM

### 1.    Plaintiff Cannot Meet His Burden to Show that Roblox Acted Inconsistently with Its Right to Arbitrate.

In determining whether a defendant has acted inconsistently with its right to arbitration, the Court must assess whether "the totality of the parties' actions," *Armstrong*, 59 F.4th at 1015, presents "a clear narrative of . . . strategic choice to engage the judiciary for resolution of the [] claims," *Fox v. Experian Info. Sols., Inc.*, 718 F.Supp.3d 1231, 1239 (E.D. Cal. 2024).  Plaintiff cannot make this showing where, as here, Roblox has not yet answered the complaint.  The only actions Roblox has taken were to remove this case from state court, where it was improperly filed, and to file a single motion to dismiss in which it expressly reserved its right to move to compel arbitration should it later learn that Plaintiff was subject to an agreement to arbitrate.[11]

"The Ninth Circuit has *never* held that a single motion to dismiss on the merits conclusively demonstrates acts inconsistent with the right to compel arbitration." *United Specialty Ins. Co. v. Clean & Sober Media LLC*, 2021 WL 3623300, at *4 (C.D. Cal. Apr. 16, 2021) (finding no waiver after defendant filed a motion to dismiss on the merits before seeking to compel arbitration); *see Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353, at *5 (E.D. Cal. Jan. 4, 2024) (filing a motion to dismiss is, "without more . . . not enough to constitute waiver of the right to compel arbitration"). To the contrary, "[t]he Ninth Circuit has indicated that . . . the filing of substantive motions weighs in favor of a finding of waiver" *only* "in combination with" other factors, such as "litigating in federal court for *well over* a year." *Fox*, 718 F.Supp.3d at 1240 ("[T]he Ninth Circuit has found waiver where a motion to dismiss was coupled with prolonged delays ranging from nine to eighteen months and significant additional litigation activity."); *Ghazizadeh v. Coursera, Inc*., 737 F. Supp. 3d 911,

---

[11] Roblox concurrently filed a motion to dismiss the 4AC with its initial Motion to Compel Plaintiffs to Arbitration for expediency and to conserve judicial resources. The Court stayed briefing on the motion to dismiss pending resolution of Roblox's Motion to Compel.  (ECF No. 62.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

19

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

921 (N.D. Cal. 2024) (finding no waiver where defendant sought judicial resolution of the merits through a motion to dismiss and litigated for roughly six months). Indeed, courts commonly consider motions to dismiss alongside motions to compel arbitration without finding waiver. *See, e.g.*, *LG Philips LCD Co., Ltd. v. Tatung Co. of Am.*, 2005 WL 8157807, at *2 (C.D. Cal. Feb. 28, 2005) (collecting cases); *see also Stafford v. BAART Behav. Health Servs., Inc.*, 2015 WL 13764217, at *2 (C.D. Cal. July 20, 2015).

Courts also recognize that seeking dismissal evinces a "purpose . . . to 'avoid or frustrate the litigation rather than a strategic decision to actively litigate[.]'" *Colores v. Ray Moles Farms, Inc.*, 2023 WL 2752379, at *4 (E.D. Cal. Mar. 31, 2023) (finding no waiver despite defendant's answer, counterclaim, and motion for judgment on the pleadings or partial summary judgment arguing for dismissal for failure to state a claim); *see also Hansber v. Ulta Beauty Cosmetics, LLC*, 640 F. Supp. 3d 947, 956 (E.D. Cal. 2022) (finding defendant's removal, filing several motions, and engaging in discovery "reflected only a 'determination to avoid or frustrate the litigation'"); *Sywula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *10 (S.D. Cal. July 18, 2023) (finding a motion to transfer venue, three motions to dismiss, and discovery requests merely "exhibited a determination to avoid litigation"). Here, Roblox has consistently acted to avoid litigating Plaintiff's claims.

### 2. Plaintiff Cannot Show that Roblox Had Knowledge of Its Right to Compel Arbitration.

Nor can Plaintiff show that Roblox had knowledge of its right to compel arbitration, given Plaintiff's refusal to provide the username for his child's account. As Roblox informed Plaintiff at the outset of this case, the company cannot identify accounts through first and last names, which was the only identifying information on the initial complaint. Roblox repeatedly asked Plaintiff for his child's username in September 2023 so it could evaluate whether and when Plaintiff had agreed to the Terms. Plaintiff refused to provide this information and did not disclose the

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

20

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM

username until August 16, 2024. Elliott Decl. ¶ 5. And as Plaintiff has noted, Roblox's Terms have changed over time. *See* ECF No. 36-2. There are also many ways to purchase Robux—including through gift cards, through the Roblox application, through Xbox, etc.—and these processes also have changed over time. Without knowing how or when Plaintiff had purchased Robux, it was impossible for Roblox to know which screens Plaintiff encountered or what language appeared on those screens. Roblox therefore required additional factual information—the username—to determine which version(s) of Roblox's Terms (and Arbitration Agreement) Plaintiff had agreed to. Plaintiff cannot seriously contend that Roblox knew it could compel arbitration when Plaintiff refused to provide the basic information needed to investigate this very question.[12]

### C. The Court Should Stay Plaintiff's Claims.

Under the FAA, "a court must stay its proceedings if it is satisfied that an issue before it is arbitrable[.]" *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Here, there are no issues for the Court to resolve after completion of the arbitration process. The Court should therefore stay Plaintiff's claims pending resolution of the arbitration.

## V. CONCLUSION

For the foregoing reasons, the Court should order Plaintiff to arbitrate his claims and stay this action.

---

[12] Plaintiff has previously relied on the Ninth Circuit's decision in *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023), to argue that Roblox had sufficient knowledge of its right to compel arbitration despite lacking knowledge of the Terms Plaintiff agreed to. Opp. at 5-6. But *Hill* is inapposite. Unlike Roblox, the defendant in *Hill* was not unaware of whether and when the putative class members agreed to arbitrate their claims. To the contrary, it "repeatedly asserted its right to individual arbitration" under a particular version of its agreement with putative class members in the context of answering the complaint and during the class certification process. *Id.* at 470-71. Despite this knowledge, the defendant in *Hill* "embarked on a six-year appellate journey aimed at judicially resolving the *merits*—the legal heart—of the class members' . . . claims" and only moved to compel arbitration after the class was certified. *Id.* at 473.

1    Dated:      March 20, 2025

2                                      COOLEY LLP

3

4                                   By: /s/ *Kyle C. Wong*

5                                         Kyle C. Wong

6                                 Attorney for Defendant
ROBLOX CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES (DOWNTOWN)

22

DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION
CASE NO. 23-CV-01940-TWR-BLM