ANNE ANDREWS (Bar No. 103280)
aandrews@andrewsthornton.com
SEAN T. HIGGINS (Bar No. 266888)
shiggins@andrewsthornton.com
ROBERT S. SIKO (Bar No. 312856)
rsiko@andrewsthornton.com
ZACK BIERSCHEID (Bar No. 351647)
zbierscheid@andrewsthornton.com
**ANDREWS & THORNTON**
4701 Von Karman Ave, Suite 300
Newport Beach, California 92660
Telephone:        (949) 748-1000
Facsimile:        (949) 315-3540

ALEXANDRA WALSH *(Pro Hac Vice)*
awalsh@anapolweiss.com
PATRICK HUYETT (*Pro Hac Vice* forthcoming)
**ANAPOL WEISS**
One Logan Square
130 N. 18th St., Suite 1600
Philadelphia, PA 19103
Telephone:        (202) 780-3014
Facsimile:        (215) 735-2211

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN UHL, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBLOX CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 23-cv-01940-TWR-BLM<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**<br><br>*Declaration Of Robert Siko Filed Concurrently Herewith*<br><br>Date:         May 29, 2025<br>Time:         1:30 pm<br>Courtroom:    14A<br>Judge:        Hon. Todd W. Robinson |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    RELEVANT FACTS ...................................................................................... 3

  A.   MR. UHL'S PERSONAL TRANSACTIONS ......................................... 3

  B.   ROBLOX'S TERMS OF USE ................................................................. 5

III.   STANDARD OF REVIEW .......................................................................... 6

IV.    ARGUMENT ................................................................................................. 7

  A.   ROBLOX WAIVED ANY RIGHT TO MOVE TO COMPEL
       ARBITRATION. ....................................................................................... 7

  B.   PLAINTIFF CANNOT BE COMPELLED TO ARBITRATE HIS CLAIMS.
       ................................................................................................................ 12

    1.  PLAINTIFF DID NOT ASSENT TO THE TERMS THROUGH
        ACTIONS HIS CHILD TOOK. ......................................................... 13

    2.  ROBLOX DID NOT PROVIDE ADEQUATE NOTICE OF THE TERMS.
        ................................................................................................................ 16

      a.   ACCOUNT CREATION ............................................................... 17

      b.   PURCHASES CHECK-OUT ......................................................... 19

      c.   CONTINUED USE OF THE PLATFORM .................................... 21

    3.  THE AUGUST 2023 TERMS DID NOT FORM AN AGREEMENT TO
        ARBITRATE CLAIMS BY NON-USERS LIKE PLAINTIFF. ............... 22

V.  CONCLUSION ................................................................................................ 25

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)......................................8

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017)..............................20

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)..............................................8

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022)...................16

*Cf. Johnson v. Walmart, Inc.*, 57 F.4th 677 (9th Cir. 2023)...................................25

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) ......................20

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008) ............................7

*Cty. of Constra v. Kaiser Foundation Health Plan*, 54 Cal. Rptr. 2d 628 (Cal. Ct. App. 1996)....................................................................................................15

*DIRECTV, Inc. v. Imburgia*, 577 U.S. 47 (2015) ......................................................8

*Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022) ...............................18

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)............................................................8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ..............................8

*Flores v. Evergreen at San Diego, LLC*, 55 Cal. Rptr. 3d 823 (Cal. Ct. App. 2007) ..............................................................................................................................14

*Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667 (9th Cir. 2021) ...................7, 13

*Hansen v. Rock Holdings, Inc.*, 434 F. Supp. 3d 818 (E.D. Cal. 2020) .......13, 15, 16

*Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023) ........................8, 9, 10

*Hoover v. Am. Income Life Ins. Co.*, 142 Cal. Rptr. 3d 312 (Cal. App. Ct. 2012)...11

*In re Henson*, 869 F.3d 1052 (9th Cir. 2017) .........................................................15

*In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584 (5th Cir. 2010)...............10

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023)............................................12

*Juarez v. Wash Depot Holdings, Inc.*, 235 Cal. Rptr. 3d 250 (Cal. Ct. App. 2018) 24

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014).......................12, 25

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)..................................................8

*Lewis v. Fletcher Jones Motor Cars, Inc.*, 140 Cal. Rptr. 3d 206 (Cal. App. Ct. 2012)...............................................................................................................11

*Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016) .....................................7, 10

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) .................................................8

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013)................................16

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935 (9th Cir. 2019) .............................................................................................11

*Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014)...............12, 16

*Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279 (9th Cir. 2017) ...............7

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023)...........................16

*Platt Pac., Inc. v. Andelson*, 862 P.2d 158 (Cal. 1993).......................................12

*Quach v. California Com. Club, Inc.*, 551 P.3d 1123 (2024)..........................8, 9, 11

*Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752 (9th Cir. 2018) .........................15

*Rodriguez v. FDIC*, 589 U.S. 132 (2020)......................................................8

*Rogers v. Roseville*, 290 Cal. Rptr. 3d 760 (Cal. Ct. App. 2022).......................13, 14

*S.S. ex rel. Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019 (S.D. Cal. 2021) ...................................................................................................15

*Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007)................................12

*Schertzer v. Bank of Am., NA*, 109 F.4th 1200 (9th Cir. 2024) ...............................24

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021)........................................21

*Syverson v. Int'l Business Machines Corp.*, 472 F.3d 1072 (9th Cir.2007) .............18

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136 (9th Cir. 1991)................................................................................................12

*Ulmann v. Sunset-McKee Co.*, 221 F.2d 128 (9th Cir. 1955) .................................24

*Union Bank v. Winnebago Indus., Inc.*, 528 F.2d 95 (9th Cir. 1975).......................24

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989) ...............................................................................................8

*Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077 (2024)...................22

i

**Statutes**

9 U.S.C § 2................................................................................................................ 7

9 U.S.C. § 4.............................................................................................................6, 7

Cal. Civil Code § 1654 ............................................................................................24

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 7

Fed. R. Evid. 1002 ...................................................................................................19

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Roblox Corporation ("Roblox") offers a gaming platform for children. More than half of its users are under the age of 13, and Roblox makes it extremely easy for children to sign up for a user account on the platform and to spend their parents' money on Robux, the digital currency used only on the platform. Fourth Am. Compl. ("4AC") ¶¶ 22, 27-31, ECF No. 53.

Roblox derives most of its revenue from sales of Robux. *Id.* ¶ 62. Its business has skyrocketed in part because Roblox markets and advertises the platform as a safe place where children can "create adventures, play games, role play, and learn with their friends in a family-friendly, immersive, 3D environment." *Id.* ¶ 41. But as Plaintiff Damien Uhl ("Plaintiff" or "Mr. Uhl") learned, nothing could be further from the truth. Around June 2022, Mr. Uhl discovered that an adult woman had been attempting to groom his daughter on the platform. *Id.* ¶ 82. This experience is not unique to Plaintiff's child. As a recent, lengthy Bloomberg Businessweek investigatory article explained, Roblox has a "Pedophile Problem." Olivia Carville, *Roblox's Pedophile Problem*, Bloomberg Businessweek (July 23, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/. The article describes in detail the pervasive grooming that occurs on the platform, which since 2018 has resulted in the arrests "of at least two dozen people accused of abducting or abusing victims they'd met or groomed using Roblox." *Id.*

This case centers on Roblox's extensive misrepresentations about the safety of its platform for children, which induced Plaintiff and the putative class into purchasing Robux for their children and other minors. The initial complaint was filed in August 2023 in state court in San Diego. It was followed by a First Amended Complaint joining Mr. Uhl as a Plaintiff and incorporating his allegations on October 2, 2023. The operative complaint was filed on August 14, 2024. Since the initiation of this case, the parties have been actively engaged in litigation, including briefing

and argument on Plaintiff's motion to remand as well as briefing and argument on Defendant's motion to dismiss.

After a year of litigation, Roblox first moved to compel arbitration of Plaintiff's claims in September 2024. After seeing the rebuttals of fact raised in Plaintiff's opposition to that motion, Roblox withdrew the motion to conduct discovery related to arbitration. The parties stipulated to a schedule related to the renewed Motion to Compel Arbitration, and the renewed motion was filed by Roblox on March 20, 2025 (hereinafter referred to as the "Motion").

According to Roblox, Plaintiff received clear notice of and repeatedly agreed to Roblox's Terms of Use. Roblox supports this view primarily with a declaration submitted by Ronita Jit, a litigation paralegal at Roblox. *See* Declaration of Ronita Jit ("Jit Decl."). Through Ms. Jit, Roblox argues that Plaintiff made numerous purchases of Robux and created his child's Roblox account through which he was provided notice of and assented to at least one of three versions of Roblox's Terms of Use ("Terms"). Jit Decl., Exs. 2-4. However, Ms. Jit's statements show only that *someone* made these Robux purchases and created this Roblox account. Plaintiff's declarations in support of this opposition establish that these actions were not taken by him. While Plaintiff admits to previously making purchases of Robux—indeed, that is the injury crux of this action—Defendant submits precisely zero evidence of the formation of a contract *binding Mr. Uhl* to the terms that would allow Roblox to force this action into arbitration. And for good reason: Mr. Uhl has been resolute that he has never agreed to Roblox's terms, nor was he ever conspicuously presented with the Terms at issue. Roblox's evidence thus not only is inadequate but is affirmatively disproven by Plaintiff's declarations.

The Court should deny Roblox's motion because it has failed to show that arbitration may be compelled here. *First*, Roblox has waived any right to compel arbitration because it has long been aware of its supposed right to compel arbitration yet has actively litigated this case for nearly 18 months now. *Second*, Roblox has

fallen far short of satisfying its burden of proving that Plaintiff assented to the Terms under which Roblox moves to compel arbitration—i.e., Roblox has failed to show the existence of a contract compelling *Plaintiff* (and not his child) to arbitrate his claims. In fact, not only has Roblox failed to meet its burden on this issue, but Plaintiff has put forward undisputed evidence showing that he did not assent to the Terms. For these reasons, the Court should deny Roblox's motion.

## II.    RELEVANT FACTS

### A.    Mr. Uhl's Personal Transactions

Roblox repeatedly misstates the facts as they relate to Plaintiff's interaction with the company, the Services, or any agreement to arbitrate Plaintiff's claims now before the Court. First, Defendant cites the Plaintiff's 4AC to assert that Mr. Uhl "'read[] the 2017 version[] of Roblox's Terms of Use,' which included an arbitration agreement, *before* permitting his child to use Roblox." Mot. p. 2 (emphasis added). In fact, Plaintiff's 4AC allegations are to the contrary: "Plaintiff Damien Uhl . . . was introduced to Roblox by his 12-year-old daughter" and "Mr. Uhl allowed all three of his children to *continue* playing the game . . . after reading the 2017 version[] of Roblox's Terms of Use and Parent's Guide…" 4AC ¶ 78 (emphasis added). These allegations contradict Defendant's assertion that "Uhl admits he read the 2017 version of the Terms before permitting his child to create a Roblox account."

Roblox further mistakenly asserts, without support, that Mr. Uhl "repeatedly purchased Robux starting in 2018" and "admits *he* made all pre-June 14, 2022 Robux purchases, with a single exception on January 18, 2022." Mot. p. 3 (emphasis in original). As support for this assertion, Defendant cites to a supplemental declaration provided by Plaintiff to Roblox's counsel, but Mr. Uhl's declaration contains no statement that he ever *personally* purchased Robux through any of the Roblox platform's purchase interfaces, either on the website or through the mobile app. Instead, Mr. Uhl admits only that he would occasionally purchase physical, retail gift cards for his children as gifts for birthdays and holidays. Robertson Decl., Ex. A

("Uhl Decl.") ¶ 19; Robertson Decl., Ex. B ("Suppl. Uhl Decl.") ¶ 4. Further, Mr. Uhl explains that his child was allowed to make purchases herself using various payment methods saved on devices used to play on the Roblox platform. Uhl Decl. ¶ 16. Mr. Uhl specifically denies having knowledge of these transactions, much less having personally made those transactions for Robux. Uhl Decl. ¶¶ 20-21, 23; Suppl. Uhl Decl. ¶¶ 3-4, 6-9.

Roblox will undoubtedly argue that Mr. Uhl has admitted to personally making purchases by not specifically denying purchases in response to limited discovery requests made of him. In turn, Roblox cites this "admission" as evidence that Mr. Uhl, in fact, personally purchased Robux through the website on April 14, 2022 and through the Roblox mobile app on June 14, 2022 (Mot. 4) to enforce the Roblox Terms of Use last updated on April 6, 2022 and attached to Ms. Jit's declaration as Exhibit 4. Mot. 6. This is a clear attempt to distort the record by using a series of questions from Roblox's counsel—which were focused on Mr. Uhl's decision to revoke his child's permission to play Roblox—in order to disguise a question intended to extract an out-of-context admission. *See* Declaration of Robert Siko ("Siko Decl."), Ex. A. Further, given the context of the series of questions, the absence of Mr. Uhl's specific denial should not be construed as an admission to having personally made a transaction but rather as an admission that the transactions prior to June 14, 2022 listed by Roblox in Exhibit 1 were *authorized* by Mr. Uhl. As seen in the email exchange attached as Exhibit A to the Siko Declaration, it was Roblox, through its counsel, that raised the distinction between charges Plaintiff personally made and those he authorized (or revoked) permission for his child to make. Roblox now seeks to weaponize the distinction that its counsel called into question to allege that each of the "authorized" transactions were in fact made by Mr. Uhl himself—this is not true.

In fact, the evidence bears only the conclusion that Mr. Uhl has personally purchased Robux through physical retail gift cards, while he authorized his child to

purchase Robux through the Roblox website or mobile app. Roblox, however, submits exactly zero evidence of Mr. Uhl's assent to the Terms sought to be enforced by the Motion through Mr. Uhl's purchase of retail gift cards. Mr. Uhl declared that he has never personally redeemed any gift card codes through the Roblox platform. Suppl. Uhl Decl. ¶ 4. Mr. Uhl declared that he has never been presented with the Terms, either by his child or by Roblox. Uhl Decl. ¶ 3. In fact, Mr. Uhl has never been under the impression that he was personally bound to the Terms. *Id.* ¶ 4.

### B. Roblox's Terms of Use

Roblox attaches three versions of the Terms to its motion. Jit Decl., Exs. 2-4. In each version, Roblox makes clear in the opening paragraphs that the agreement is between a "User" and Roblox to govern use of the "Services." *See* Jit Decl., Exs. 2-3 ("we set out below the terms and conditions ('Terms') that you, a user, and Roblox Corporation must follow"); Jit Decl. Ex. 4 ("In order to maximize the experience of all users of the Services ('Users'), Roblox has established terms and conditions (collectively, the 'Roblox Terms') that apply to use of the Services by Users."); ("After all, these Roblox Terms are a legally binding agreement between Users and Roblox."); ("The User Terms apply to all Users of the Services").

Each of these versions distinguishes "Guardians" (defined by Roblox as "The parent or legal guardian of a Minor User") from Users—a clear indication that Roblox views Guardians and Users differently under the Terms. Jit Decl. Ex. 5. Indeed, Roblox further distinguishes a User by requiring a User to create an account. Jit Decl., Exs. 2-3 ("To access some of the Service features on the Platform, you will need to create an account ('Account')"); Jit Decl., Ex. 4 ("To access some elements of the Services, Users need to create a Roblox account ('Account')").

The arbitration provision within each of these versions of the Terms makes no exception to who is a party to the agreement; the arbitration agreements contained within the Terms are clearly only between Users and Roblox. Jit Decl. Exs. 2-3 ("You and we agree to arbitrate all disputes"); Jit Decl. Ex. 4 ("Roblox and any User who

5

is a United States resident agree that any Dispute . . . will be subject only to binding arbitration"). Roblox unequivocally structured each of these versions of the Terms to bind only Users and Roblox Corporation. Roblox goes so far as to delineate between a minor User and their Guardian, while still only binding Users (or a Guardian for their minor child's claims) to the arbitration provision. Indeed, Roblox does not bind Guardians to arbitration for their own claims.

Roblox defines the terms used within their agreements in the Roblox Dictionary. Jit Decl. Ex. 5. Many of the definitions are relatively straightforward. For example, "User" is defined as "Everyone who uses the Services." *Id.* The definition for "Services" reads "Collectively, all of the various features and services, like websites, applications, forums, and the Platform, which Roblox makes available to Users to allow Users to play, create and connect"—notably, this definition does not include a reference to "Robux." *Id.* "Robux" is separately defined as "the official currency of the Platform which is used by Users to acquire things, like Virtual Items and access to Experiences, on the Platform." *Id.* Finally, the definition of "Account" clearly delineates Users from non-Users: "The Roblox Account, which Users must create in order to access some elements of the Services." *Id.*

The agreements submitted by Roblox do not support its argument that Mr. Uhl is a party to any version of the Terms or to any arbitration provision contained within them. Mr. Uhl does not use the Roblox Platform, has never created his own account, and is merely a Guardian of a Minor User. None of these essential facts are disputed by Roblox, nor could they be.

## III.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides the procedure for addressing Roblox's motion to compel arbitration. Under the FAA, the Court may grant Roblox's motion only if it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Both Roblox's motion and Plaintiff's opposition are reviewed under the summary

judgment standard because Plaintiff's opposition is effectively a cross-motion for summary judgment on whether the parties made an agreement to arbitrate Plaintiff's claims. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1118 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration."); *see also Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) ("In applying [9 U.S.C. § 4], district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure."). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But if a material fact dispute is raised concerning the making of an arbitration agreement, "the court shall proceed summarily to the trial" on that issue, and the party opposing arbitration "may demand a jury trial." 9 U.S.C. § 4.

Here, Roblox's motion should be denied. As the party seeking to compel arbitration, Roblox bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence," *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017), and it has failed to show there is no disputed issue of material fact on this question. Further, the undisputed facts in Plaintiff's declarations establish that Plaintiff never assented to the arbitration agreement. Alternatively, if the Court finds a disputed issue of material fact on whether this agreement exists, Plaintiff requests a jury trial on this issue.

## IV. ARGUMENT

### A. Roblox waived any right to move to compel arbitration.

The right to arbitrate, like many contractual rights, can be waived. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). As a threshold matter, generally applicable state contract law applies when determining defenses to the enforceability of arbitration agreements. *See* 9 U.S.C § 2. Federal courts cannot make arbitration-specific rules, like those concerning waiver, based on a policy favoring arbitration, because arbitration agreements must be treated the same as all other contracts.

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The FAA's provisions thus retain state contract law as "an external body of law" governing both "§ 2's enforceability mandate" and the procedural mechanisms set forth in Sections 3 and 4 that implement it. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). "As [the Supreme] Court has put it, there is 'no federal general common law.'" *Rodriguez v. FDIC*, 589 U.S. 132, 136 (2020) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Rather, state common law generally provides "rules readymade for such tasks" as enforcing contracts. *Id*. at 134.

Indeed, the Supreme Court has consistently recognized that state contract law supplies the neutral, generally applicable rules governing the formation and revocation of contracts, as well as defenses to their validity and enforcement, that courts must apply under Sections 2, 3, and 4 of the FAA. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 (1989); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995). "If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the [FAA]'s terms are fulfilled." *Arthur Andersen*, 556 U.S. at 631. Accordingly, generally applicable California contract law governs whether Roblox waived its right to seek to enforce an arbitration agreement.

The test for waiver under California law (and federal law) consists of only two elements: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right. *Quach v. California Com. Club, Inc.*, 551 P.3d 1123, 1137 (2024); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). As to the first element, Roblox wrongly claims it could not have had the requisite knowledge of an existing right to compel arbitration because Plaintiff had not provided his child's username, despite having "repeatedly asked Plaintiff for his child's username in September 2023 so it could evaluate whether and when Plaintiff

had agreed to the Terms." Mot. 20. This is a red herring. Roblox has known since the Complaint was first filed the earliest dates of Plaintiff's child's use of the Roblox platform. Roblox also has knowledge of each iteration of its Terms and the screens which would have been displayed before *any* user in that timeframe. At all relevant times, Roblox has incorporated an arbitration agreement into its Terms. Jit Decl., Exs. 2-4. At all relevant times, Roblox conditioned use of the Roblox platform on assent to its Terms. *Id.* Roblox has known of its purported right to compel arbitration from the moment this action was filed, but it has sat on its right and thereby waived it. *See Quach*, 551 P.3d at 1139 (finding knowledge of right to arbitrate where defendant required all subjects to sign form agreements containing an arbitration provision).

Roblox conflates a present ability to enforce an arbitration agreement with the knowledge of its right to seek to compel arbitration. However, the former is not required to find waiver. *See Hill*, 59 F.4th at 469 ("[W]e have never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement."). In *Hill*, the court found waiver in a class action where the identities of putative class members were not even yet known, but the defendant had knowledge of an existing arbitration agreement that the unknown class members may be subject to. *Id*. Here, Roblox had far more factual information at its disposal than the defendant in *Hill*. Roblox had ample knowledge of the timeframes of Mr. Uhl's child's use of the platform—because they were alleged in the Complaint—and knowledge of the mechanisms through which Users would be bound by the agreements utilized in the relevant timeframe.

Roblox's knowledge of a right to compel arbitration goes further than that. Plaintiff specifically alleged in the 4AC filed in August 2024 that he read the 2017 version of the Terms. 4AC ¶ 78. Roblox knew of this allegation prior to filing its initial motion to compel arbitration in that same month, yet it did not move to compel arbitration at that time based on the 2017 Terms and instead chose to withdraw its

pending motion. Roblox cannot reasonably argue, after another 7 months of delay, that it was previously unaware of any right to move to compel arbitration based on the 2017 Terms. Worse still, Roblox's argument in the present motion is based on the premise that *any purchaser of Robux* is presented with and must agree to the Terms of Use in order to make the purchase. Therefore, Roblox was aware of its purported right to arbitrate in *October 2023* when the FAC alleged that Mr. Uhl made purchases of Robux for his child. This motion is untimely as Roblox has waived its rights.

As to the second element, Roblox has taken intentional actions inconsistent with the existing right to arbitrate by removing this case to federal court, filing two motions to dismiss seeking resolution on the merits, entering stipulated agreements to structure the litigation, and delaying this motion to compel arbitration for over a year while actively litigating the merits of the claims before the Court. Underscoring Roblox's intentional decision to forgo arbitration while seeking judicial resolution on the merits is the attempt by Roblox to reserve a right to arbitrate in its first motion to dismiss Plaintiffs' claims. (ECF-35, at 2 n.1). A reservation of a right to arbitrate is not an assertion of that right and is insufficient to defeat a claim of waiver. *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016); *see also Hill* 59 F.4th at 471 ("A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."); *In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court.") Yet again, Roblox had an opportunity to seek to compel arbitration of Plaintiff's claims on the same grounds it now moves for in August when it first sought to compel arbitration.

To defend against Plaintiff's waiver claims, Roblox misstates the relevant inquiry for finding actions inconsistent with the right to arbitrate, pointing to a bevy of nonbinding federal authority decided before *Morgan v. Sundance* and the

California Supreme Court decision in *Quach* held that only the generally applicable law of waiver is required to uphold the defense and rejected a heightened standard for showing waiver of a right to arbitrate. Further, Section 2 of the FAA requires adherence to California law; under California law, removal of an action to federal court, coupled with several months of litigation, as is the case here, is a *presumptive* waiver of the right to arbitrate. *See Hoover v. Am. Income Life Ins. Co.*, 142 Cal. Rptr. 3d 312, 321 (Cal. App. Ct. 2012). Further, California courts have held a party waived its right to arbitrate due to undue delay in asserting the right in as little as four months, and here, Roblox has delayed three times that length. *See Lewis v. Fletcher Jones Motor Cars, Inc.*, 140 Cal. Rptr. 3d 206, 215 (Cal. App. Ct. 2012), *overruled on other grounds by Quach v. California Com. Club*, 551 P.3d 1123 (Cal. 2024). Beyond meeting the elements for a presumptive waiver of the right to arbitrate, Roblox has substantially invoked the machinery of litigation by bringing two dispositive motions to dismiss that seek resolution on the merits of Plaintiff's claims. *Id*. at 218 ("[Defendant] fails to recognize it engaged in actual litigation of the merits by filing its demurrers challenging [plaintiff's] claims.") Ninth Circuit law is in accord with California state law. A party generally "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (9th Cir. 2019).

In addition, the nonperformance of a required act may also be deemed waiver, and in this context, waiver is more like forfeiture. *Lewis*, 444 140 Cal. Rptr. 3d at 213. In the Terms, the arbitration agreement includes a required condition precedent to the right to arbitrate. The Terms state in no uncertain terms: "Therefore, we each agree that—before either of us may commence an arbitration or assert any claim in court, except as set forth in Section 11.a.vi, below—we will engage in the following MIDR process." Roblox has failed to meet a condition precedent to the right to

11

arbitrate by attempting to compel arbitration without first attempting to resolve Plaintiff's claims through the MIDR process. This is both an independent reason to find that Roblox has *forfeited* the right to arbitrate Plaintiff's claims and evidence of intentional acts inconsistent with the right to do so amounting to waiver. *Platt Pac., Inc. v. Andelson*, 862 P.2d 158, 167 (Cal. 1993).

**B.      Plaintiff cannot be compelled to arbitrate his claims.**

Even if Roblox did not waive any right to move to compel arbitration, Plaintiff cannot be compelled to arbitrate his claims because he did not assent to the Terms under which Roblox moves to compel arbitration.

Because arbitration is a matter of contract, "a party cannot be required to submit any dispute which he has not agreed to so submit." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (citations and quotation marks omitted). As a result, only the Court—and not the arbitrator—can decide "the threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (emphasis in original). This determination encompasses "not only challenges to the arbitration clause itself, but also challenges to the making of the contract containing the arbitration clause." *Sanford*, 483 F.3d at 962. In deciding whether an agreement exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). "And while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citations and quotation marks omitted).

Here, Roblox's motion should be denied because it cannot meet its burden of proving that Plaintiff assented to the Terms. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ("It is undisputed that under California law, mutual assent is a required element of contract formation.").

**1. Plaintiff did not assent to the Terms through actions his child took.**

Roblox argues that Plaintiff is bound by the Terms because he assented to those terms through purchases of Robux or other actions. But that argument is based on a false premise: that Plaintiff made those purchases or took those actions himself. Roblox's evidence does not come close to proving as much, and in fact, Mr. Uhl's Declarations show that he did not take those actions and is thus not a party to the Terms. Because a person who is not a party to an arbitration agreement is generally "not bound by it," Roblox must prove that an exception to this rule applies. *Rogers v. Roseville*, 290 Cal. Rptr. 3d 760, 766 (Cal. Ct. App. 2022) (citations and quotation marks omitted). Roblox cannot prove that any of the limited exceptions to this rule apply here. *Hansen v. Rock Holdings, Inc.*, 434 F. Supp. 3d 818, 827 (E.D. Cal. 2020) (outlining the "three relevant ways" under California law in which "a non-signatory can be bound by an agreement to arbitration"), *vacated and remanded on other grounds sub nom. Hansen v. LMB Mortgage Servs.*, 1 F.4th 667 (9th Cir. 2021).

Roblox contends that Plaintiff assented to the Terms through various purchases of Robux that he personally made through the Apple AppStore via a mobile app and with a credit card associated with his personal email address. Mot. 2-3. But the evidence Roblox cites for these assertions does not establish that Mr. Uhl made these purchases. Rather, it shows at most only that *someone* made these purchases for his child's Roblox account. And in Mr. Uhl's declaration, he confirms that he did not personally make these purchases, but rather he authorized or otherwise gave permission for the purchases to be made. *See* Uhl Decl. ¶¶ 20-21, 23; Suppl. Uhl Decl. ¶¶ 3-4, 6-9. For this reason, Mr. Uhl is not a signatory to the Terms in existence when these purchases were purportedly made.

Roblox cannot rely on agency principles to prove that Mr. Uhl is nevertheless bound by the Terms. In California, an agency relationship is either "actual or ostensible." Cal. Civ. Code § 2298. Roblox cannot satisfy its burden of showing

13

agency. *See Rogers*, 290 Cal. Rptr. 3d at 766 ("The burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the persons dealing with the agent.").

Robox cannot prove an actual agency relationship between Mr. Uhl and his child for these Robux purchases. "Actual agency arises when the principal's conduct causes *the agent* reasonably to believe that the principal consents to the agent's act on behalf of the principal." *Id.* (emphasis added). Even with Mr. Uhl's permission, his child was not acting at his direction, or more importantly, for Mr. Uhl's benefit. Rather, his child was acting on their own accord as a user of the Roblox platform to benefit their own enjoyment of the game. Roblox puts forth no evidence showing the Mr. Uhl acted in any way to cause his child to reasonably believe that they were purchasing Robux on behalf of Mr. Uhl, nor can they.

Roblox also cannot prove ostensible agency between Mr. Uhl and his child for these purchases. "Ostensible agency arises when the principal's conduct causes the *third party* [here, Roblox] reasonably to believe that the agent has the authority to act on the principal's behalf." *Rogers*, 290 Cal. Rptr. 3d at 766 (emphasis added). To establish ostensible agency, Roblox must prove that Mr. Uhl engaged in conduct that justified Roblox's belief that he authorized his child to make these purchases and agree to the terms on his behalf. *See Flores v. Evergreen at San Diego, LLC*, 55 Cal. Rptr. 3d 823, 827 (Cal. Ct. App. 2007) (explaining that ostensible agency requires "some intentional conduct or neglect on the part of the alleged principal creating a belief in the mind of third persons that an agency exists, and a reasonable reliance thereon by such persons" (citation omitted)). Roblox has offered no evidence showing that Mr. Uhl—as opposed to his child—engaged in any conduct that caused Roblox to reasonably believe he authorized his child to make the purchases at issue on his behalf. *See id.* ("[A]n agency cannot be created by conduct of the agent alone; *rather conduct by the principal* is essential to create the agency." (emphasis in original)). And Roblox cannot point to Mr. Uhl's statement in his declaration that his

14

child's account was created with his permission and linked to his email address. Roblox was not aware of these facts until the informal discovery regarding arbitration, so it cannot claim to have reasonably relied on this conduct to justify any belief that Mr. Uhl allowed his child to make the purchases at issue.

Equitable estoppel also does not apply. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *S.S. ex rel. Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1034 (S.D. Cal. 2021) (citation and quotation marks omitted). This "narrowly confined" doctrine can bind a non-signatory plaintiff to an arbitration agreement when that plaintiff's claims assert a violation of the contract or otherwise depend on the contract. *See Hansen*, 434 F. Supp. 3d at 827; *Peloton*, 566 F. Supp. 3d at 1040. Here, Mr. Uhl asserts state statutory claims as well as claims for intentional misrepresentation, negligent misrepresentation, and unjust enrichment. 4AC ¶¶ 97-174. These claims do not in any way rely on the Terms because they do not depend on "any violation of any duty, obligation, term, or condition imposed by [the Terms]." *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (citation and quotation marks omitted); *see also Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018) (rejecting equitable estoppel because the Telephone Consumer Protection Act created and defined the alleged duty, not the contract).

Roblox may argue that under California law equitable estoppel applies because of the preexisting relationship between Mr. Uhl and his child. But a preexisting relationship alone is not enough. Mr. Uhl's child must have had the authority to bind Mr. Uhl to the arbitration provision in the Terms, which she did not. *See Cty. of Constra v. Kaiser Foundation Health Plan*, 54 Cal. Rptr. 2d 628, 631-32 (Cal. Ct. App. 1996) (outlining limited scenarios where preexisting relationship supports the "implied authority" for signatory to bind nonsignatory to an arbitration agreement).

Lastly, Roblox cannot rely on the third-party beneficiary exception. For this exception to apply, Roblox must prove that *both* "parties to the agreement intended

15

for the [August 2023 Terms]" to benefit Mr. Uhl as a third party. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013). Roblox has no evidence that it intended for the August 2023 Terms to benefit Mr. Uhl, much less that his child intended for him to benefit from these terms. *See, e.g.*, *Hansen*, 434 F.3d at 828 (rejecting defendant's argument that mother intended for son to benefit from contract because she entered his telephone number when submitting the terms of use).

### 2.    Roblox did not provide adequate notice of the Terms.

In any event, Plaintiff could not have assented to the Terms—either himself or through his child—because they did not have adequate notice of these terms.

Internet webpage contracts are categorized as falling somewhere between two ends of a technical spectrum; on one end there are "clickwrap agreements" and on the other end, there are "browsewrap agreements." *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Clickwrap agreements are the most straightforward in applying general contract principles of assent and are routinely enforced by the courts; clickwrap agreements are those that present users with the terms of an agreement and require the user to manifest their assent by checking a box that says "I agree" in order to proceed. *Id.* (citing *Nguyen*, 763 F.3d at 1175). On the other end of the spectrum lie browsewrap agreements, which courts are reluctant to enforce where a website offers terms only through a hyperlink and a user manifests his assent through continued use of the webpage. *Id.* (citing *Nguyen*, 763 F.3d at 1176). In cases where a webpage agreement does not fit neatly into either the clickwrap or browsewrap categories, California courts employ a two-part test which requires (1) reasonably conspicuous notice and (2) an unambiguous manifestation of assent. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023).

Roblox argues that Plaintiff had reasonably conspicuous notice of the Terms to which it claims Plaintiff is bound at the time Plaintiff purchased Robux and through continued use of the platform. Roblox submits no credible evidence to carry its burden in proving the existence of an agreement between *Plaintiff* and Roblox

16

through reasonably conspicuous notice of the Terms or that Plaintiff himself unambiguously manifested his assent to those Terms. Roblox argues that Plaintiff had "notice of the Arbitration Agreement when he read the 2017 Terms before purchasing Robux and was aware that his use of Roblox would bind him to those terms and any updates." Mot. 14-15. Further, Roblox attempts to establish notice of the Terms by assuming Plaintiff's assent to a "sign-in" wrap agreement on its website and mobile app while processing payments for the purchase of Robux.

### a. Account Creation

The first manner in which Roblox argues Plaintiff was given notice of the terms is by the design of the webpage where a user must register for a Roblox account. Mot. 15. Roblox also argues that Plaintiff also "had actual notice of Roblox's 2017 Terms"; however, Plaintiff Uhl was introduced to the platform and read the 2017 Terms *after* his children had already registered their accounts outside of his presence. 4AC ¶ 78. Given that Mr. Uhl was selectively reading portions of the Terms to research the safety of the platform, and *not* to review an agreement he intended to assent to, Roblox cannot claim notice of an agreement allegedly assented to. This is especially true where there is a lack of evidence detailing the date and manner of Mr. Uhl's clear manifestation of the supposed assent. The evidence from Mr. Uhl is that his child (and not him) saw the sign-up flow at account creation. Roblox has not met its burden in putting forth sufficient evidence that an agreement was formed between Plaintiff and Roblox at the time of account creation.

Even if parents had notice of the agreement by and through their children (which Roblox has not alleged), Roblox cannot argue that children signing up for Roblox were provided *adequate or conspicuous notice* to impute assent to the Terms to their parents. Roblox also cannot make a showing of inquiry notice on the parents of Roblox users because the platform does not include age-related protections as a part of its registration process (e.g., you do not need to verify your age or even link an email). Roblox makes no attempt to confirm that an underage registrant has

17

received parental permission or review of a minor's assent to the Terms.

Roblox is also foreclosed from arguing Plaintiff's assent through his child's actions by virtue of the doctrine of offensive non-mutual collateral estoppel. Offensive nonmutual issue preclusion applies where the issue (1) was able to be fully and fairly litigated in the prior action, (2) the issue was *actually* litigated in the prior action, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. *Syverson v. Int'l Business Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir.2007).

In *Doe v. Roblox*, this same Defendant was involved in litigating the issues of notice before the Court today. *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243 (N.D. Cal. 2022). In fact, Roblox had a full and fair opportunity to litigate the issue in briefing a motion to dismiss the *Doe* plaintiff's complaint where the *Doe* plaintiff argued that (a) Roblox had not met its burden of proof in showing "that a typical user should have been on notice that they were agreeing to a Terms of Use" and that (b) Roblox cannot show a child would be on inquiry notice that they are assenting to a contract. Siko Decl., Ex. B. Each of these issues was decided against this same Defendant in the court's order on the motion to dismiss. *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1255-56. The decided issue resulted in a final judgment when the court ordered the approval of the Class Action Settlement, which was approved by the court in accordance with the terms of the Settlement Agreement, which specifically cites the court's order on the motion to dismiss as a reason for the parties' resolution of the claims and defines the court's approval of the settlement agreement as a "final judgment to be entered by the Court." Siko Decl., Ex. C.

Each of the elements required to find a proper application of offensive nonmutual collateral estoppel is met. The identical issue before this Court was previously litigated in *Doe v. Roblox*, Moreover, policy concerns such as other inconsistent rulings or application of the doctrine against the government are not present here. In fact, the opposite is true—applying the doctrine would preserve

consistency among the district courts and conserve judicial resources in analyzing the complexities of the issue. The Court should foreclose Defendant from arguing that it has met its burden in showing Plaintiff had notice of the Terms or that Plaintiff's child was on inquiry notice which could be imputed unto Plaintiff.

### b. Purchases Check-Out

Roblox's assertion that Plaintiff was on inquiry notice at the time purchases were made on the account is not supported by the evidence or is otherwise refuted. Again, Roblox offers only testimonial evidence instead of offering original evidence of the transactions. The Court may only accept this testimony as evidence that a transaction existed. *See* Fed. R. Evid. 1002, Advisory Committee Notes. That a transaction existed is not the relevant inquiry to carry Roblox's burden of proving that Plaintiff had notice of the Terms. Instead, to establish constructive or inquiry notice, Roblox must offer evidence of Plaintiff's actual notice or evidence that Plaintiff himself manifested assent to the Terms by clicking the "Pay" button depicted or by double-clicking the side button.

Roblox's argument fails here for the same reasons as its argument for notice of the sign-in flows—Roblox cannot show that Plaintiff himself provided payment information in order to manifest his assent to the Terms because Roblox does not require age-restricted confirmations despite knowledge that many of its users are minors. Instead, Plaintiff offers superior evidence by submitting declarations from Mr. Uhl denying he had knowledge of or personally made any of the transactions identified by Defendant made from the Roblox platform. *See* Uhl Decl. ¶¶ 20-21, 23; Suppl. Uhl Decl. ¶¶ 3-4, 6-9. Indeed, Mr. Uhl only identifies making purchases of gift cards for his child to redeem on the Roblox platform. *Id.* Without more, Roblox fails to carry its burden of showing an existing agreement because Plaintiff could not have assented to Terms he did not have notice of.

Further, the textual notice of the Terms and arbitration agreement on the checkout flow for web payments (image left below) in and of itself is not sufficiently

conspicuous to put Plaintiff on notice of the Terms. The text on the webpage checkout flow that is meant to provide notice is the smallest font found on the entire page. *See Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) (citing *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466-67 (S.D.N.Y. 2017) (hyperlink in smallest font on the screen but colored in light blue on a white background insufficient to provide notice).







Roblox also does not show that the checkout flow as applied to mobile transactions is sufficiently conspicuous. As detailed above, the checkout flow for mobile payments (image right above) cannot satisfy the standard for showing notice is sufficiently conspicuous because it does not demarcate hyperlinks to the agreements in a contrasting color. The hyperlinks are merely underlined and in the

same color as the surrounding text; such a textual representation is insufficient to put an ordinary user on notice of the existence of the hyperlinked agreements. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 453 (2021). Furthermore, the language indicating the existence of the agreements is not located in close proximity to the mechanism with which a user would manifest their assent—the double click of the side button occurs with an entirely different screen that makes no mention of Roblox's Terms or the arbitration agreement. *Id.*

### c. Continued Use of the Platform

Finally, Roblox cannot bind Plaintiff to the Terms by arguing, as it has in the past, that Roblox pushed notifications of updates and modifications to the Terms directly to users on the platform by a pop-up screen while using the services as well as by a direct message to users' inbox on-platform. Roblox did not attempt to send any updates to Plaintiff through the email address associated with his child's account. In fact, Plaintiff states that he was never made aware of any updates to Roblox Terms, through email or otherwise. Uhl Decl. ¶ 3. As discussed above, Plaintiff cannot be bound by the actions of his minor child. Plaintiff would have no reason to seek out updates or changes to an agreement he had no notice of in the first instance. Plaintiff himself was not a User of the Roblox platform, and there can be no expectation that notice provided directly through a platform he did not use is sufficient.

Nor can Roblox argue that Plaintiff is bound simply because he "visit[ed] any of [Roblox's] websites." Mot. 14. Accepting Roblox's argument and applying the Term to mere visitors of any website on the Roblox.com domain would deny any meaningful opportunity to reject the Terms. Roblox's overreaching inclusion of "websites" in its definition of Services eliminates the possibility for any individual to review the Terms before deciding whether to agree to them or reject them. The closest analogy would be a business posting its general services contract inside its lobby, the first line of which is "By entering the lobby and reading the general services contract, you agree to waive any right to a jury trial."

The Terms cannot be applied to mere visitors of the website because it defeats the possibility of rejection of the Terms. See *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1081 (2024) (holding that simply using a website without taking any affirmative steps to confirm knowledge and acceptance of the terms of use, generally does not form an enforceable agreement to arbitrate under California law.) As applied here, Roblox is suggesting that Plaintiff should be retroactively bound to the Terms for having reviewed them solely to ascertain the safety of the platform and subsequently visiting a website on the Roblox.com domain. At no point during any visit to the website was Plaintiff presented with the then-current terms via a pop-up or click-through link. The circular and self-serving definitions of the Roblox Terms cannot be applied to bind mere visitors to the Roblox.com domain when there has been no manifestation of assent to the Terms.

### 3. The August 2023 Terms did not form an agreement to arbitrate claims by non-Users like Plaintiff.

Plaintiff also cannot be required to arbitrate his claims by any version of the Terms  because those Terms formed an agreement to arbitrate only between Roblox and "Users" of the "Services," which do not include Plaintiff. To appreciate whom the Terms bind to arbitration, reference to the definitions incorporated into that document is necessary. The document attached as Exhibit 5 to the Declaration of Ronita Jit contains the "Roblox Dictionary." As discussed in detail above, the Roblox Dictionary defines several terms which are used throughout the Terms but not defined in that document. "Users" are individuals who use the "Services." The definition of Services does not include Robux, and the definition of "Robux" refers to the Services as another category altogether separate and apart from Robux—i.e., Robux are spent on the Services; Robux are not part of the Services. Indeed, Roblox has taken the express position that Robux are not a "service" but instead a digital currency *only*. In its Motion to Dismiss Plaintiff's Fourth Amended Complaint, Roblox argued:

> Plaintiffs incorrectly contend that selling a "digital currency" so users can acquire "cosmetic items and other in platform items and in-platform services" qualifies as a "service" under the CLRA. []. Numerous courts

have held that virtual currencies like Robux do not qualify as a "anything that resembles a 'service', as [the CLRA] defines that term"; instead, "[t]hey are buying a 'good,' albeit an intangible one that is not covered by the statute." [citations].

Roblox Corp. Mot. to Dismiss Plaintiffs' Fourth Amended Complaint (ECF 58).

Roblox has planted its flag in this very action—Robux is a good, not a service, and a plain language reading of the Terms has no provision which would include the purchasers of Robux as "Users" bound to its arbitration provision. Roblox can also not point to its definition of "User Terms" to bind Plaintiff, as a mere purchaser of Robux, to arbitration. That definition says that the User Terms include rules about using Robux to make purchases but not about the purchase of Robux itself which, again, by Roblox's own contention is *not* a service but a digital good. Even to the extent that the "Services" definition in Roblox's glossary could vary from the view of "services" under the CLRA, the glossary itself rejects such a reading. Robux are *not* included in the definition of "Services" and play a different role on the platform.

The arbitration agreement itself in the Terms, in each of the versions submitted by Roblox, underscores that Plaintiff is not a User and thus not bound by it. The arbitration agreement applies only to "Roblox and any User who is a United States resident." *E.g.*, Jit Decl., Ex. 4, § 16(d)(i). Because Plaintiff does not use or access the Services solely by purchasing Robux, he is not a User and the arbitration agreement is not a contract between him and Roblox to arbitrate his claims for Robux purchases. Plaintiff is only a purchaser of Robux as a parent of a minor User, and the Roblox Dictionary distinguishes between minor Users and parents or guardians of minor Users like Plaintiff. Indeed, as a guardian of a minor User, Plaintiff had no right to opt out of the arbitration agreement because only Users can exercise that right: "User may opt out of the Arbitration Terms within 30 days of using the Services . . . ." *E.g.*, *id.* § 16(xix). Accordingly, the arbitration agreement in the Terms requires only minor Users to arbitrate their claims against Roblox, not their parents who only purchased Robux and did not use or access the Services.

23

Taken together, Roblox's definitions leave no room for ambiguity:

- Users are those who make accounts and use the Services.
- Robux may be used on the platform but are not part of the Services.
- Guardians are parents or legal guardians of Minor Users but not Users themselves.
- Users, but not Guardians, are bound to arbitration under the Terms.

Even if the Terms are ambiguous, it is axiomatic in California that any ambiguity in a contract is strictly interpreted against the drafter—in this case, Roblox. *See* Cal. Civil Code § 1654; *Union Bank v. Winnebago Indus., Inc.*, 528 F.2d 95, 99 (9th Cir. 1975); *Ulmann v. Sunset-McKee Co.*, 221 F.2d 128, 133 (9th Cir. 1955). This rule applies with particular force where the contract at issue is one of adhesion, like the Terms. *See Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1213 (9th Cir. 2024); *Juarez v. Wash Depot Holdings, Inc.*, 235 Cal. Rptr. 3d 250, 254 (Cal. Ct. App. 2018). Roblox's Terms are, at best, unclear as to whether Plaintiff is a "User" and, even if he had assented to the terms, could be bound to arbitration. This ambiguity must be interpreted strictly against Roblox—because it is not clear from the face of the contract (or any extrinsic evidence) that the contract binds Plaintiff to arbitration, Roblox's motion fails.

Roblox cannot rely on an earlier section in the April 2022 Terms to argue that Plaintiff did assent to arbitrate his claims. In that section, the Terms state that Minor Users "require a parent or legal guardian (a 'Guardian') to allow them to use the Services and to agree to these User Terms and the other applicable Roblox Terms" and that "[b]y permitting a Minor User to use the Services, the Guardian of the Minor User becomes subject to these User Terms and any other applicable Roblox Terms and agrees to be responsible for Minor User's activities on the Services." Jit Decl., Ex. 4, § 1(a). Plaintiff cannot be found to have assented to the arbitration agreement based on this language. The salient question is not whether Roblox intended for a parent of a minor User to be bound by the arbitration agreement but whether a "reasonable person" in Plaintiff's position would have understood they were

24

assenting to arbitrate claims they may have against Roblox despite not being Users. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014). The answer is no. A reasonable person in Plaintiff's position would have understood the Terms as not forming an agreement between them and Roblox and would have understood this language on parental consent as meaning only that they were agreeing that the minor User, not the parent or guardian, would be required to arbitrate any claims against Roblox. The burden was on Roblox to draft the Terms such that a reasonable person in Plaintiff's position would comprehend that they were agreeing to arbitrate their claims, and Roblox failed to do so. *See id.* at 566 ("If a party wishes to bind in writing another to an agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that agreement to arbitrate exists and binds the parties thereto." (citation omitted)).

In short, Plaintiff challenges the existence of an agreement to arbitrate the claims of non-Users—a challenge that goes not to the scope of the arbitration clause but to the existence of an agreement at all. *Cf. Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (finding for plaintiff who contested arbitration by challenging "the existence, not the scope, of an arbitration agreement that would encompass this dispute"). Roblox fails to dispute this with evidence.

## V.   CONCLUSION

Roblox has failed to meet its burden that Plaintiff entered into an agreement to arbitrate. Roblox's motion must be supported by competent evidence, but it has provided a bare declaration which states ultimate facts and conclusions not based on personal knowledge. Even if the Court finds that Plaintiff did assent to the Terms, the Terms do not bind non-Users to arbitration. Roblox's motion should be denied.

Dated:      April 10, 2025          ANDREWS & THORNTON

By:  */s/ Robert Siko*
Robert Siko

Attorney for Plaintiff

25

ROBERT S. SIKO
rsiko@andrewsthornton.com
ANNE ANDREWS
aandrews@andrewsthornton.com
SEAN T. HIGGINS
shiggins@andrewsthornton.com
ZACK BIERSCHEID
zbierscheid@andrewsthornton.com

ALEXANDRA WALSH
awalsh@anapolweiss.com
PATRICK HUYETT
phuyett@anapolweiss.com
ANAPOL WEISS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on April 10, 2025, I served a true and accurate copy of the following:

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION; DECLARATION OF ROBERT SIKO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION; EXHIBITS A TO C; AND CERTIFICATE OF SERVICE**; electronically with the Clerk of Court via the CM/ECF system which sent electronic notification of this filing to all registered counsel of record via email.

DATED: Newport Beach, California, April 10, 2025.

/s/ Robert Siko
Anne Andrews, Esq. Sean T.
Higgins, Esq. Robert S. Siko, Esq.
Zachery Bierscheid, Esq.
ANDREWS THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
E: aa@andrewsthornton.com
E: shiggins@andrewsthornton.com
E: rsiko@andrewsthornton.com
E: zbierscheid@andrewsthornton.com

*Attorneys for Plaintiff*

27