# EXHIBIT B

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION,<br><br>Defendant. | CASE NO.: 3:21-cv-03943-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 16, 2022<br>Time: 2:00 PM<br>Judge: Hon. William H. Orrick<br>Courtroom: 2, 17th Floor |

## TABLE OF CONTENTS

I. Factual Background ................................................................................................ 2

II. Argument ............................................................................................................... 3

    A. No refund prohibits this suit from going forward ............................................. 4

        i. This case is not moot ............................................................................... 4

        ii. Doe has standing to seek relief under the UCL ...................................... 6

    B. The Terms of Use themselves do not provide a basis to dismiss this lawsuit ........................................................................................................ 7

        i. Doe did not assent to the Terms of Use .................................................. 7

        ii. As applied to injunctive claims, Roblox's alternative-dispute provisions are unenforceable .................................................... 9

    C. Section 230 of the Communications Decency Act does not protect Roblox .................................................................................................. 10

    D. The complaint adequately alleges a violation of the UCL ............................... 13

    E. The complaint adequately alleges a violation of the CLRA ............................ 15

    F. The complaint adequately alleges that Roblox committed fraud .................... 16

    G. The complaint adequately alleges a claim for conversion .............................. 17

    H. The complaint adequately alleges a claim for unjust enrichment .................. 18

    I. In the alternative, Doe states a claim for breach of the covenant of good faith and fair dealing .......................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................................ 10

*Chafin v. Chafin*,
568 U.S. 165 (2013) .......................................................................................................... 4

**United States Circuit Court of Appeals Cases:**

*Am. Fin. Servs. Ass'n v. FTC*,
767 F.2d 957 (D.C. Cir. 1985) ....................................................................................... 13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ......................................................................................... 18

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ......................................................................................... 8

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ........................................................................................... 4

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ......................................................................................... 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........................................................................................... 6

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) .................................................................................... 11, 12

*Fair Housing Council of San Fernando Valley v. Rommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....................................................................................... 11

*HomeAway, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) .................................................................................... 11, 12

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021)........................................................................................ 12

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) ......................................................................................... 8

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002).......................................................................................... 8, 9

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................................... 14, 15

**United States District Court Cases:**

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2020) ................................................................................ 8

*C.W. v. Epic Games, Inc.*,
No. 19-cv-3629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) .............................. 16

*DIRECTV, Inc. v. Pahnke*,
405 F. Supp. 2d 1182 (E.D. Cal. 2005)............................................................................. 17

*Dioquino v. Sempris, LLC*,
No. CV-11-0556 SJO, 2011 WL 13127143 (C.D. Cal. Dec. 8, 2011) ............................... 5

*In re Anthem Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................................................................. 13

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................. 17

*In re Easysaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. 2010)............................................................................. 19

*In re MacBook Keyboard Litig.*,
No. 5:18-cv-2813-EJD, 2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ............................... 5

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
No. 16-MD-2752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).................... 18, 19

*Keating v. Nordstrom, Inc.*,
No. 3:17-cv-0030-SLG, 2018 WL 576825 (D. Alaska Jan. 26, 2018) ........................... 4, 5

*Luman v. NAC Mktg. Co.*,
No. 2:13-cv-0656-KJM-AC, 2017 WL 3394117 (E.D. Cal. Aug. 8, 2017) ....................... 5

*Luong v. Subaru of Am., Inc.*,
No. 17-cv-3160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018)................................. 5

*Mai v. Supercell OY*,
No. 5:20-cv-5573-EJD, 2021 WL 4267487 (N.D. Cal. Sept. 20, 2021)............................ 7

*Meadows v. Dickey's Barbecue Restaurants, Inc.*,
144 F. Supp. 3d 1069 (N.D. Cal. 2015) ............................................................................ 15

*Parducci v. Overland Sols., Inc.*,
399 F. Supp. 3d 969 (N.D. Cal. 2019) ................................................................................ 4

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................................ 8

*Taylor v. Apple, Inc.*,
  No. 20-cv-3906 (N.D. Cal. Mar. 19, 2021) ............................................................................ 7

*T.K. v. Adobe Sys., Inc.*,
  No. 17-cv-4595, 2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) ........................................... 4

*Sater v. Chrysler Grp. LLC*,
  No. EDCV 14-00700-VAP, 2014 WL 11412674 (C.D. Cal. Oct. 7, 2014) ......................... 5

*Snow v. Eventbrite, Inc.*,
  No. 3:20-cv-3698-WHO, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .................. 7, 8, 9

*Stonebrae, LP v. Toll Bros., Inc.*,
  No. C-08-0221 EMC, 2010 WL 1460208 (N.D. Cal. Apr. 8, 2010) ................................ 19

*Yoon v. Gap, Inc.*,
  No. CV0805712SVWAJWX, 2010 WL 11597565 (C.D. Cal. Oct. 6, 2010) ................... 6

**California Supreme Court Cases:**

*Barquis v. Merchants Collection Ass'n*,
  7 Cal.3d 94 (1972) .............................................................................................................. 13

*Clayworth v. Pfizer, Inc.*,
  49 Cal. 4th 758 (2010) .......................................................................................................... 6

*Discover Bank v. Superior Ct.*,
  36 Cal. 4th 148 (2005) ........................................................................................................ 10

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal. 4th 317 (2000) ........................................................................................................ 19

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................................ 14

*Los Angeles Unified Sch. Dist. v. Great Am. Ins. Co.*,
  49 Cal. 4th 739 (2010) ........................................................................................................ 17

*Perdue v. Crocker Nat'l Bank*,
  38 Cal. 3d 913 (1985) ......................................................................................................... 14

*Small v. Fritz Cos.*,
  30 Cal. 4th 167 (2003) ........................................................................................................ 16

**California Court of Appeals Cases:**

*Hoffman v. 162 N. Wolfe LLC*,
  228 Cal. App. 4th 1178 (6th Dist. 2014) ............................................................................ 17

*Lyles v. Sangadeo-Patel*,
  225 Cal. App. 4th 759 (2d Dist. 2014)......................................................................... 18

*Morgan v. AT & T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2d Dist. 2009)....................................................................... 14

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
  245 Cal. App. 4th 821 (4th Dist. 2016)........................................................................ 16

*West v. JP Morgan Chase Bank, N.A.*,
  214 Cal. App. 4th 780 (4th Dist. 2013)........................................................................ 13

*Wolf v. Superior Court*,
  114 Cal. App. 4th 1343 (2d Dist. 2004)........................................................................ 15

**Statutes:**

47 U.S.C. § 230.................................................................................................................. 10, 11

Cal. Bus. & Prof. Code § 17204 ............................................................................................. 6

Cal. Civil Code § 1770........................................................................................................... 15

**Miscellaneous Authority:**

Brandon Ihle, *The Infancy Doctrine: An Epic Departure*,
  52 TEXAS TECH L. REV. 339 (2020).............................................................................. 9

Roblox Terms of Use,
  https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use. ........ 6

During the coronavirus pandemic, millions of children turned to digital worlds to replace the face-to-face interactions they were deprived of by stay-at-home orders, school closures, and other similar restrictions. One of the most popular digital worlds is the Roblox metaverse, in which users create avatars which can be customized as they navigate this virtual universe and its plethora of user-generated games.

But the Roblox metaverse also exposes children to scams and other predatory behavior, some of which are perpetrated by Roblox itself. The coin of the Roblox realm is Robux, a virtual currency that is essential to acquiring the items necessary to customize one's avatar. Robux are purchased with real dollars. Thus, Roblox has every incentive to ensure that users purchase as many Robux as possible. Some of the steps Roblox takes to inflate the demand for Robux, while problematic, are not necessarily broadly actionable. For instance, Roblox takes a cut of every transaction that takes place on its platform, removing Robux from circulation in order to increase demand. More nefariously, though, Roblox will arbitrarily "moderate"—or delete—content that users already have purchased. Roblox does this regardless of whether the user has violated any Roblox rules and even if the content itself is not objectionable. Roblox does this because it knows that its young user base will want to repurchase deleted items, and will purchase more Robux to do so. Roblox disguises this conduct as mere "content moderation." In fact, Roblox is arbitrarily and randomly deleting purchased items in order to enrich itself.

Plaintiff Doe was 10 years old when she first began participating in the Roblox metaverse. Like all young users, she purchased Robux in order to acquire virtual items to outfit her avatar. After she had made these purchases, Roblox, without reason or warning, deleted certain items that Doe had purchased. She now brings this class action to put a stop to Roblox's exploitation of its vulnerable, young user base.

Roblox's motion to dismiss focuses largely on the notion that Doe agreed to its deceptive conduct in the Roblox Terms of Use. But Roblox has not shown that Doe assented to the Terms of Use, much less that Doe, who again was 10 when she created her account, should have understood that she was entering into a contract with Roblox when she created her Roblox account. Nor has

Roblox shown that the Terms of Use authorize its conduct. Rather, consistent with the Terms of Use, Doe reasonably expected that items she purchased would remain available for her use.

Roblox also raised a handful of other arguments, but none are persuasive. The motion to dismiss should be denied.

## I.    Factual Background

Defendant Roblox Corporation developed and operates an eponymous gaming platform designed to bring users together in a virtual universe, sometimes called a "metaverse." (Dkt. 22, First Amended Complaint ["FAC"], ¶ 1.) The Roblox metaverse is particularly popular among children, and its popularity ballooned during the COVID-19 pandemic, when many children were at home for extended periods of time. (*Id.* ¶¶ 2-4.) Roblox is aware of the vulnerable age of its userbase. (*Id.* ¶ 21.)

Within the Roblox metaverse, users create avatars which they can personalize with clothing, gear, or animations. (*Id.* ¶ 24.) These items are acquired using an in-game currency called "Robux." (*Id.* ¶¶ 25-26.) Robux, in turn, must be purchased using real dollars. (*Id.* ¶ 25.) In addition to profiting off the initial sale of Robux, Roblox takes a cut of every transaction that occurs on the Roblox platform. In some transactions, users purchase items directly from Roblox itself. (*Id.* ¶ 26.) And although certain sellers are able to convert their Robux back into real-world cash, Roblox also charges a commission on user-to-user sales, and a fee for uploading items to the Roblox platform for sale. (*Id.* ¶¶ 27-28.) The result, and indeed the point, of all of these exactions is to maintain a high demand for Robux, so that Roblox continues to profit. (*Id.* ¶ 29.)

But Roblox also exploits its users in more nefarious ways. Everything about the Roblox platform is designed to encourage users to purchase items to customize their avatar. (*Id.* ¶ 35.) Links to "customize" an avatar and "shop" for new items are prominently featured on the Roblox landing page after sign-in. (*Id.*) Roblox also recommends that users purchase certain items based on past purchases. (*Id.* ¶ 46.) While users expect that purchased items will remain available for their use in perpetuity absent misuse (*id.* ¶ 37), this is not necessarily the case. To the contrary, Roblox will arbitrarily "moderate," or delete, items post-purchase, even though the items have presumably been "pre-approved" (i.e. Roblox conveys that products can be vetted by Roblox

Case 3:23-cv-03920-TWR-AGW Document 84-33 Filed 04/20/22 Page 9 of 124   Page
Case 3:21-cv-03943-WHD Document 41-33 Filed 04/20/22 Page 9 of 124
10 of 27

before they are allowed to be uploaded, thus relaying to consumers that they will remain in their inventory) and do not violate any Roblox policies. (*Id.* ¶¶ 37, 38, 40.) Roblox understands that when it deletes items, users will respond by buying more Robux to repurchase the deleted item, or a similar one, thus inflating the demand for Robux, and further enriching Roblox. (*Id.* ¶ 39.) In fact, Roblox goes out of its way to ensure that this scheme is effective. For instance, Roblox targets for "moderation" many of the most popular items available for purchase on the platform. (*Id.* ¶ 44.) Roblox also refuses to take steps to prevent supposed repeat offenders from continuing to offer items that will be deleted, or from preventing items identical to those that were already deleted from reappearing on the platform. (*Id.* ¶¶ 41-43.) That is because true content moderation is not Roblox's goal. (*See id.* ¶ 47 (detailing complaint from former Roblox employee that employees were given quotas "on the amount of content … moderated each day").) Instead, its goal is to exploit its young user base to make more money.

Plaintiff is one of these young users. (*Id.* ¶ 50.) She created her Roblox account when she was just 10 years of age. (*Id.* ¶ 51.) Although Roblox was aware of her age, it did not seek confirmation that she had parental permission before creating her account. (*Id.* ¶ 51.) Nor, like all Roblox users, did Roblox take any steps to ensure that Plaintiff had read, much less understood, the Roblox Terms of Use. (*Id.* ¶ 23.) Plaintiff subsequently purchased hundreds of Robux using funds that were within her complete control. (*Id.* ¶ 52.) She used those Robux to acquire items for her avatar, items she believed would remain available to her in the Roblox metaverse unless she personally misused them. (*Id.* ¶¶ 53-54.) But Roblox deleted several items that Plaintiff purchased, none of which contained trademarked or offensive content. (*Id.* ¶ 55.) And just as Roblox hoped, Plaintiff was forced to purchase additional Robux in order to replace the items she lost. (*Id.* ¶ 56.)

In light of Roblox's content "moderation" scheme, Plaintiff brought this lawsuit, alleging that Roblox's conduct is fraudulent, unjustly enriches Roblox, or, in the alternative, violates the covenant of good faith and fair dealing.

**II.    Argument**

On a motion to dismiss, the Court accepts all well-pleaded factual allegations as true, and gives the plaintiff the benefit of all reasonable inferences that can be drawn from the complaint.

*See Parducci v. Overland Sols., Inc.*, 399 F. Supp. 3d 969, 975 (N.D. Cal. 2019). To survive such a motion, these well-pleaded facts and inferences must add up to a claim that is plausible on its face. *Id.* at 974-75. The plausibility standard does not require that it be probable that the defendant is liable for the misconduct alleged, but there must be "more than a sheer possibility" that the defendant has acted unlawfully. *Id.* at 975. For claims sounding in fraud, the plaintiff must set forth "the circumstances of fraud" with particularity, but other facts, including the defendant's state of mind, may be alleged generally. *Id.*

### A.     No refund prohibits this suit from going forward.

Roblox principally contends that either this case is moot or that Plaintiff Doe lacks standing under the UCL because Doe received a complete refund after this lawsuit was filed. In fact, Doe has not received any refunds. (FAC ¶ 57.) But even if she had, Roblox's arguments still fail.

### i.     This case is not moot.

Start with mootness. "The doctrine of mootness … requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). "An action 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). "The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide." *Id.*

Roblox cannot meet its "heavy burden" here. In her complaint, Doe seeks not only restitution and money damages, but also injunctive relief, as well as attorneys' fees, and litigation costs. Roblox's supposed refund would address only Doe's claim for monetary damages. Thus, Doe's claim is not moot. *See T.K. v. Adobe Sys., Inc.*, No. 17-cv-4595, 2018 WL 1812200, at *11-12 (N.D. Cal. Apr. 17, 2018) ("Adobe's refund of T.K.'s payments made under the renewal agreement does not offer T.K. complete relief, at least because Adobe has not paid the requested interest, attorney's fees, or costs."); *Keating v. Nordstrom, Inc.*, No. 3:17-cv-0030-SLG, 2018 WL 576825, at *5 (D. Alaska Jan. 26, 2018) ("Nordstrom has reimbursed Ms. Keating for two overcharges after she filed her complaint. But the FAC requests injunctive relief, punitive

damages, statutory penalties, and attorneys' fees and costs, none of which Nordstrom has offered to provide; therefore, Ms. Keating has not received complete relief."); *Luman v. NAC Mktg. Co.*, No. 2:13-cv-0656-KJM-AC, 2017 WL 3394117, at *3 (E.D. Cal. Aug. 8, 2017) ("[Defendant] has not agreed to the injunctive relief Amkraut requests, paid his attorneys' fees, or reimbursed his litigation related costs. Accordingly, defendant has not afforded plaintiff 'complete relief,' and plaintiff's claims are therefore not moot."); *Dioquino v. Sempris, LLC*, No. CV-11-0556 SJO, 2011 WL 13127143, at *4 (C.D. Cal. Dec. 8, 2011) ("Because Defendant failed to satisfy her entire demand through its refund of the membership fees charged to Plaintiff, her claims are not barred as moot.").

Roblox separately contends that because it has established a refund program that any claim for injunctive relief must fail. But Roblox has not met its "heavy burden" to show that the injunctive claim cannot go forward. Most importantly, the injunction Doe seeks would require up-front disclosures in the Roblox avatar shop that the items available for purchase have not undergone any content review and may therefore be removed from a user's inventory at the whim of Roblox. (*See, e.g.*, FAC ¶¶ 85, 95-96.) An after-the-fact refund program does not alleviate the deceptive nature of Roblox's conduct. *Cf. In re MacBook Keyboard Litig.*, No. 5:18-cv-2813-EJD, 2019 WL 6465285, at *8-9 (N.D. Cal. Dec. 2, 2019) (finding that refund program that failed to correct defect in computer keyboards did not moot claims for equitable relief). Moreover, Roblox has not submitted any evidence that the refund program is effective at remedying the injuries suffered by users like Doe, and she alleges that it is not. *See Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) ("Whether and when the recall(s) were effective will bear on both liability and damages."); *see also Luong v. Subaru of Am., Inc.*, No. 17-cv-3160-YGR, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018). In fact, Doe alleges that the refund program established by Roblox is insufficient. For instance, *she* has not received a refund. (FAC ¶ 57.) And the program itself remains opaque. The scope and availability of this new Refund Policy proffered by Roblox is currently unclear. As an illustration, this new Refund Policy is not included in Roblox's current Terms of Use. (Dkt. 25-2, Terms of Use § 5(A)(3).) (In fact, the Terms were updated as recently as January 2022, and still omit this

information. *See* Current Terms § 4(c), https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use.) This failure to update the Terms or make the information easily discoverable continues Roblox's pattern of veiling its policies from users and underscores how the Refund Policy does not address Plaintiffs' claims for injunctive relief. Thus, this case is not moot.[1]

### ii. Doe has standing to seek relief under the UCL.

Neither does the refund program purportedly instituted by Roblox deprive Doe of standing under the UCL, which requires a plaintiff to have "lost money or property." Cal. Bus. & Prof. Code § 17204. The California Supreme Court's decision in *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010), is instructive. There, the plaintiffs (who were pharmacies) alleged that the defendant drug manufacturers overcharged them in violation of the UCL. The manufacturers responded that the pharmacies had not lost money or property because they were able to pass the overcharges on to customers. The California Supreme Court rejected that argument. Whether a plaintiff has lost money or property, it held, is to be measured at the moment of the allegedly unlawful transaction. *Id.* at 788-89. While later events might bear on the pharmacies' entitlement to restitution, that question was distinct from the question of standing. *Id.*

Roblox's argument suffers from the same flaw that the drug manufacturers' argument did in *Clayworth*: it conflates standing with Doe's ultimate entitlement to restitution. Doe alleges that she purchased Robux which she then exchanged for virtual goods that the defendant made unavailable without reason, explanation, or warning, as part of an unfair and deceptive scheme. Doe alleges that she would not have purchased the items had she known about Roblox's content-deletion scheme. (FAC ¶ 73.) Thus, at the moment of this fraudulently induced purchase, Doe has "lost money or property." If Roblox cured that problem later (and, as explained, it has not), its actions bear on Doe's entitlement to restitution, but not on her standing to sue. *See Yoon v. Gap, Inc.*, No. CV0805712SVWAJWX, 2010 WL 11597565, at *3 (C.D. Cal. Oct. 6, 2010).

---

[1] To the extent Roblox argues that Doe cannot seek injunctive relief now that she is on notice of Roblox's deceptive practices (*see* Mot. at 23), that is incorrect. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Roblox also argues that because the most immediate injury to Doe is the loss of her Robux, she has not lost money. (Mot. at 16.) This is disingenuous. Robux cost money. (FAC ¶ 25.) The point of Roblox's content-deletion scheme is to deplete a user's supply of Robux so that they are forced to purchase more Robux using real currency. (*Id.* ¶¶ 35-41.)

Roblox's reliance on *Mai v. Supercell OY*, No. 5:20-cv-5573-EJD, 2021 WL 4267487 (N.D. Cal. Sept. 20, 2021), goes nowhere. At issue there was a claim that so-called "loot boxes" within video games, at which players redeemed in-game tokens for a chance to obtain something that enhanced game play, were actually randomized games of chance, and therefore illegal gambling games. *Id.* at *1. The court concluded that the purchase of these in-game tokens did not cause a loss of money or property because the player got what they paid for, namely, the ability to purchase loot boxes within the game's universe. *See id.* at *3; Order on Motion to Dismiss, *Taylor v. Apple, Inc.*, No. 20-cv-3906, Dkt. 46, at 8 (N.D. Cal. Mar. 19, 2021) (relied upon by *Mai*: "All C.T. purchased from Apple was virtual currency. He obtained exactly what he paid for—virtual currency that he was free to use as he wished in the game."). The allegations here are materially distinguishable. Doe alleges that she purchased Roblox's in-game currency and then was unlawfully deprived of its benefits. (FAC ¶¶ 52-56.) Not only is this a different factual scenario than the one presented in *Mai*, but it has real-world economic consequences. (*See id.* ¶ 52.)

**B.      The Terms of Use themselves do not provide a basis to dismiss this lawsuit.**

Roblox next contends that this case must be dismissed or significantly narrowed in light of the Roblox Terms of Use. Specifically, Roblox contends that (1) the case must be dismissed as unripe because Doe failed to comply with a contractual condition precedent, (2) any claims for damages or class relief must be stricken, and (3) through the Terms of Use Doe agreed to Roblox's conduct, so she cannot now sue about it. None of these arguments, which are addressed in turn below, carry the day.

**i.      Doe did not assent to the Terms of Use.**

First, Roblox has not shown that Doe agreed to be bound by the Terms of Use, a burden it must carry by a preponderance of the evidence. *See Snow v. Eventbrite, Inc.*, No. 3:20-cv-3698-WHO, 2020 WL 6135990, at *7 (N.D. Cal. Oct. 19, 2020).

The key question is whether Doe can be deemed to have assented to the Roblox Terms of Use. *See Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 762 (N.D. Cal. 2020). "Contracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014).

Based on the minimal evidence tendered by Roblox, it appears they rely on a method of contract formation more like browsewrap, but generally thought to fall into a third category: so-called "sign-in wrap." "'Sign-in-wrap' agreements are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the user can access the service." *Colgate*, 402 F. Supp. 3d at 763; *see Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) ("A third category of agreement has become known as a 'sign-in wrap,' in which a website notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up.") (quotations omitted). The only evidence that Roblox offers of Doe's purported assent is a sentence in the Brown Declaration that avers that on the Roblox account-registration page, there is text that says "By clicking Sign Up, you are agreeing to the Terms of Use." (Dkt. 25-1, Brown Decl. ¶ 3.) Mr. Brown also vaguely avers that users must "likewise manifest that they agree to the Roblox Terms" to complete transactions within the Roblox platform. (*Id.*) Although not exactly clear, this language appears to describe a sign-in wrap agreement.

Whether a sign-in wrap agreement is sufficient to bind a website user "is a fact-intensive inquiry that 'depends on the design and content of the website and the agreement's webpage.'" *Snow*, 2020 WL 6135990, at *4 (quoting *Nguyen*, 763 F.3d at 1177). Relevant information is anything bearing on whether the user should have understood that they were consenting to a contract. *See id.*; *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) ("Thus, California contract law measures assent by an objective standard that takes into account

both what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted.") (Sotomayor, J.). The problem here is that Roblox, the party with the burden of proof, has not provided any facts to show that a typical user of Roblox should have been on notice that they were agreeing to a Terms of Use that includes an arbitration clause at the time when Doe created her account. *See Snow*, 2020 WL 6135990, at *5-7 (denying motion to compel on the grounds that defendant's evidence about its log-in flow did not specifically address what the plaintiff saw).

And even if Roblox's sign-in screen might alert an adult to the fact that by signing up they are assenting to a contract, Roblox could not make a similar showing regarding children, which is important here because Roblox knows at the point of registration how old the user is. (FAC ¶¶ 21, 51.) A 10-year-old child, like Plaintiff, likely does not appreciate the fact that they have entered into a contract when they register a Roblox account. *See* Brandon Ihle, *The Infancy Doctrine: An Epic Departure*, 52 TEXAS TECH L. REV. 339, 365-66 (2020) ("The statistics show that minors are not cognitively aware of the contract terms and conditions."). In fact, Roblox itself recognizes this fact, because the Terms of Use limit those who can assent to individuals who have reached the age of majority, or who have the consent of their guardian. (Dkt. 25-2, Terms of Use § 1(A).) But unlike other companies that offer services to minors, Roblox does not confirm that an underage registrant has received parental permission. (FAC ¶ 23.) So the Roblox registration process provides no objective indication that underage users understand, or should understand, that they are entering into a contract with Roblox. Thus, Roblox has not shown that Doe assented to the Terms of Use, or that they are binding here. As a result, there is no basis to dismiss this action as unripe, or in favor of arbitration.

> **ii.      As applied to injunctive claims, Roblox's alternative-dispute provisions are unenforceable.**

Even if the Court finds that Doe is bound by the Roblox Terms of Use, Roblox's arguments for dismissal still fail as they relate to Doe's claims for injunctive relief. First, the Terms explicitly state that Roblox's "informal negotations" and arbitration provisions do not apply to claims for injunctive relief, so there is no contractual condition precedent to fulfill with respect

to these claims, and no need to dismiss the action in favor of arbitration. (Dkt. 25-2, Terms of Use § 11(C)(2).)

Moreover, the class-action waiver is unenforceable. Under California law, "when the [class-action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money… such waivers are unconscionable under California law and should not be enforced." *Discover Bank v. Superior Ct.*, 36 Cal. 4th 148, 162–63 (2005). When a class-action waiver is attached to an arbitration clause, of course, the waiver must be enforced as a matter of federal law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). But with respect to injunctive claims against Roblox, because there is no applicable arbitration clause, the Federal Arbitration Act has nothing to say, so the *Discover Bank* rule prevents operation of the class-action waiver.

In sum, this suit must proceed. At a minimum, Doe's injunctive claims remain viable, but because there is no evidence that Doe manifested assent to be bound by the Terms of Use, there is no basis to dismiss this lawsuit in favor of any manner of informal resolution.

**C.    Section 230 of the Communications Decency Act does not protect Roblox.**

Next, Section 230(c) of the Communications Decency Act, 47 U.S.C. § 230 ("CDA") does not bar Plaintiff's claims. Under Section 230(c)(1), "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Roblox improperly construes Plaintiff's claims as "hold[ing] Roblox liable for exercising its editorial and contractual discretion to remove *user-generated* content." (Mot. at 13.) Plaintiff's claims are not, however, based solely on Roblox's "editorial discretion" to remove user-generated content. Rather, this case concerns Roblox's fraudulent content moderation scheme that encompasses conduct beyond and including its moderation policies and results in Roblox benefiting financially from transactions made on its platform. (*See* FAC ¶¶ 35-49.)

The Ninth Circuit has long made clear that Section 230 does not declare "a general immunity from liability deriving from third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). "The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet," *Fair Housing Council of San Fernando Valley v. Rommates.com, LLC*, 521 F.3d 1157, 1164 (9th Cir. 2008). The *Barnes* court stated that to "provid[e] immunity every time [an interactive computer service] uses data initially obtained from third parties would eviscerate [the statute.]" *Barnes*, 570 F.3d at 1100 (quoting *Fair Housing*, 521 F.3d at 1171). As such, Section 230(c) "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F.3d at 1100-01.

Here, Plaintiff does not seek to treat Roblox as a publisher or speaker of another's information. Instead, Plaintiff seeks to hold Roblox accountable for its policies and practices related to its fraudulent content moderation scheme, not the user-generated content itself. (FAC ¶¶ 7-13, 35-49.) What Doe seeks is an order requiring Roblox to disclose that it may remove content on a whim, forcing users to dip into their pockets and purchase more Robux in order to replace that lost content. In other words, whether third-party content is left up or taken down is essentially irrelevant; Roblox could have avoided liability merely by making up-front disclosures about the nature of its practices. Such a claim is not barred by § 230.

Simply because Doe's claims involve third-party content (and Roblox's alleged fraudulent removal of it) does not mean that Doe's claims would treat Roblox as a speaker or implicate CDA immunity. "The CDA does not provide a general immunity against all claims derived from third-party content." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016); *see HomeAway, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (rejecting a "'but-for' test that would provide immunity under the CDA solely because a cause of action would not otherwise have accrued but for the third-party content"). In analogous contexts the Ninth Circuit has reiterated the limits of CDA immunity. For instance, in *Internet Brands*, the plaintiff, a model, alleged that the defendant, a networking website for people in the modeling industry, had a duty to

warn users that its services might be exploited by rapists who might target the models, as had happened to her. 824 F.3d at 848. The Ninth Circuit concluded that the claim was not precluded by the CDA because the plaintiff did not seek to hold the defendant liable for anything posted to the website or for the defendant's failure to remove certain content. *Id.* at 851. Instead, her failure to warn claim "would not … affect how [the defendant] publishes or monitors" third-party content on its website. *Id.* The court acknowledged that the posting of third-party content to the defendant's website could be said to be a "but-for" cause of the plaintiff's injuries but concluded that was insufficient to sweep the claim into the CDA's protective purview, absent some attempt to hold the defendant liable for third-party content hosted by the defendant. *Id.* at 853-54.

The Ninth Circuit built on *Internet Brands* in *HomeAway*. There, two short-term rental platforms challenged a Santa Monica city ordinance that prohibited certain short-term rentals. *HomeAway*, 918 F.3d at 679. The court held that the ordinance wasn't preempted by the CDA because it merely prohibited the platforms processing certain transactions. *Id.* at 682. The court rejected the argument that CDA immunity "attaches any time a legal duty might lead a company to respond with monitoring or other publication activities." *Id.* While the ordinance of course required the platforms to monitor posted rental listings, "it [was] not enough that third-party content [was] involved." *Id.* And while the practical effect of the ordinance was likely that the platforms would essentially be forced to remove third-party listings (a type of publication activity), the duties imposed by the ordinance existed separate and apart from the content posted to the platforms. *Id.* at 683.

Similarly here, while Doe's claim is related to third-party content, Doe does not seek to hold Roblox liable for what the content says or means, or even to force Roblox to take down or leave up particular content. The responsibility not to defraud customers is "fully independent of [Roblox's] role in monitoring or publishing third-party content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021). Doe's claim "rests on nothing more than [Roblox's] own acts." *Id.* at 1094. The CDA does not provide grounds to dismiss this lawsuit.

**D.      The complaint adequately alleges a violation of the UCL.**

Apart from standing under the UCL, Roblox contends that its conduct is neither unfair nor fraudulent. But these other arguments concerning Plaintiff's UCL claim are likewise meritless.

Regarding unfairness, Roblox contends that its conduct is not unfair because it is ostensibly required by law to delete content that infringes on valid copyrights, and because its decision to delete content that violates the Roblox Terms of Use is immunized under federal law. This is a red herring. First, neither potential excuse applies here. (FAC ¶ 55.) The reason that Roblox's scheme is unfair and fraudulent is that Roblox actively reaches beyond these potentially protected bounds to delete content at random in an attempt to induce the further purchase of Robux.

The UCL is framed in "intentionally … broad, sweeping language" precisely to provide courts discretion to deal with new schemes. *Barquis v. Merchants Collection Ass'n*, 7 Cal.3d 94, 112 (1972). California courts have articulated "unfairness" in several ways, including an act or practice that causes a "substantial" consumer injury which "is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided," or a practice that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *West v. JP Morgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 806 (4th Dist. 2013); *see In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 989-90 (N.D. Cal. 2016) (describing various tests). Roblox's content-deletion scheme is patently unfair. Roblox targets young children, who are particularly vulnerable consumers. (FAC ¶ 4 ("At least 70% of Roblox's users are under the age of 18, with more than half of all of its users being under the age of 13.").) Roblox exploits the fact that its platform is a unique place where children interact with each other. Roblox knows that because of its user base's loyalty, users will be willing to pay to repurchase the virtual items Roblox arbitrarily deletes. Roblox's widespread nickel-and-diming of children ultimately adds up to a substantial injury. *See Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985) (explaining that a "substantial injury" under the analogous FTC Act includes "a small harm to a large number of people").

Roblox's conduct also is fraudulent. "A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2d Dist. 2009) (quotations omitted). The UCL significantly relaxes the common-law standards of fraud: a plaintiff does not need to show that a representation is actually false, that the defendant acted with scienter, or that the plaintiff reasonably relied on the misrepresentation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

Roblox cannot demonstrate that no reasonable consumer would believe that purchased items that do not otherwise violate the law or Roblox's policies would be deleted. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (noting standard on motion to dismiss UCL "fraudulent" claim and that such motions are granted only in "rare situations"). Everything about Roblox is designed to encourage users to buy Robux and acquire virtual items for their avatar. (FAC ¶ 35.) A virtual "shop," where virtual items can be purchased, is prominently linked on the Roblox landing page. (*Id.*) And the items available for purchase are a central part of how children interact in the Roblox universe.

Roblox contends that its Terms of Use permit the challenged content-deletion. (Mot. at 3.) Even assuming that the Terms govern (which they do not, as explained above), it is at a minimum contestable whether the Terms authorize the behavior alleged here. The Roblox Terms suggest that Roblox will remove user-generated content that is "objectionable," (Dkt. 25-2, Terms of Use § 6(B)(9)), though Roblox does not define "objectionable," and in ordinary conversation that term means "offensive." And, indeed, the very next sentence, which discusses user-generated content that is "offensive, indecent, or objectionable," confirms that this is the sense in which Roblox uses that term. (*See id.*) The Roblox Terms also suggest that Roblox may remove content that violates the Terms "or for other reasons," (*id.* § 5.A(3)), but again Roblox does not elaborate on what these other reasons are. Roblox's motion to dismiss now suggests that these phrases grant it unlimited discretion to delete content on its platform. That is hardly a fair reading of the Terms, nor is it one that a reasonable minor consumer would expect. In fact, users expect precisely the opposite—that they will be able to keep and use purchased items in perpetuity. (FAC ¶ 37.) *See, e.g.*, *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985)

(when a contractual term on its face implies unlimited discretion, California law requires that party to exercise that discretion in good faith). That expectation is consistent with the fact that if users attempt to upload an item for their own avatar, it becomes available to them only after undergoing a pre-approval process. (FAC ¶ 37.) *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1356 (2d Dist. 2004) (noting that the parties' subsequent dealings are relevant in ascertaining the meaning of a contractual term). A reasonable consumer of Roblox's services would expect that items which are pre-approved would be available in perpetuity and cannot thereafter be deleted for no reason at all. *Cf. Meadows v. Dickey's Barbecue Rests., Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (observing that interpretation of a contract must "consider the position of [the] parties" because "an inexperienced individual, untrained in the law" may not attach the same meaning to a contractual term that a sophisticated party, like Roblox, does).

But regardless, it is black-letter law that fine-print disclosures do not immunize otherwise deceptive content from liability under a reasonable-consumer standard. *See Williams*, 552 F.3d at 939; *see also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). The mechanics of gameplay, which are engineered by Roblox, encourage users to spend dollars to acquire Robux which are then exchanged for virtual items. Roblox's conduct is deceptive to reasonable consumers precisely because Roblox strongly incents users to purchase items which it knows, but does not disclose, it may arbitrarily delete in the future. That this conduct is arguably disclosed under a strained, contextless reading of the Roblox Terms does not immunize Roblox.

Finally, Roblox's conduct is unlawful because, as explained below, it violates the CLRA.

### E. The complaint adequately alleges a violation of the CLRA.

Roblox next seeks dismissal of Plaintiff's claim under the CLRA. The CLRA prohibits the use of enumerated deceptive acts or practices within a transaction intended to result in the sale of goods or services. Cal. Civil Code § 1770(a). Doe alleges that Roblox violates several subsections of Section 1770. (FAC ¶ 84.) Roblox contends that Doe's claim nevertheless must fail because Roblox's conduct was not deceptive. But as Roblox concedes, claims under the CLRA are analyzed under the same standard of deceptiveness as the UCL. (Mot. at 20.) And as explained above, Roblox's conduct is actionable under the UCL's fraudulent prong.

Roblox also contends that because Robux are not a good or service, Doe cannot pursue a CLRA claim. But the Roblox metaverse, and the products contained within, are entertainment services. *See C.W. v. Epic Games, Inc.*, No. 19-cv-3629-YGR, 2020 WL 5257572, at \*4 (N.D. Cal. Sept. 3, 2020). Accordingly, Roblox's arguments fail.

### F. The complaint adequately alleges that Roblox committed fraud.

Roblox next contends that Doe's claim for common-law fraud fails, but articulates no reasons for that conclusion beyond its contentions regarding Doe's UCL claim. As explained above, the amended complaint alleges fraudulent conduct, accompanied by a nondisclosure of certain material facts, namely that Roblox deletes content without warning and for no reason at all after it had been purchased. Roblox insists that it disclosed this fact (as explained above, it didn't), and that in any event it was under no duty to disclose this fact. This is wrong for two reasons.

First, Roblox's conduct, which created and furthered the reasonable expectation that purchased items that did not violate the law or Roblox's Terms would remain available for use in perpetuity, created a duty on Roblox's part to disclose its arbitrary deletion policies. *See Small v. Fritz Cos.*, 30 Cal. 4th 167, 175 (2003) ("Fraud can be perpetrated by any means of communication intended to reach and influence the recipient."); *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 839 (4th Dist. 2016) ("A cause of action based in fraud may arise from conduct that is designed to mislead, and not only from verbal or written statements."). For example, in *Tenet Healthsystem*, the defendant insurance company requested information from the plaintiff hospital that implied that the services the hospital was providing were covered by a patient's insurance when in fact they were not. 245 Cal. App. 4th at 839. The insurer's conduct was sufficient to constitute a misrepresentation for purposes of a fraud claim. Similarly here, Roblox encourages users to buy and use items, with no indication that this use may be impermanent. Users of course should understand that items that violate the law may be removed, but Doe alleges that Roblox's scheme goes far beyond that, in order to induce its minor user base to spend more money and enrich Roblox in the process.

Moreover, even if the Court were to conclude that Roblox's conduct is not sufficiently deceptive to constitute a half-truth or misrepresentation, the claim for fraud still must go forward.

A defendant has a duty to disclose information "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015). California law requires the disclosure of material facts within the exclusive knowledge of the defendant so long as there is "some relationship," such as that between buyer and seller, between the parties. *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186–87 (6th Dist. 2014); *see Los Angeles Unified Sch. Dist. v. Great Am. Ins. Co.*, 49 Cal. 4th 739, 750 n.5 (2010) ("Tort law also recognizes that a party having exclusive knowledge of information materially affecting the value of a transaction may have a duty to disclose that information to the other party even in the absence of a fiduciary relationship."). Because there was a relationship between the parties here, and the fact that Roblox's content-deletion scheme means that purchased Robux may ultimately be useless, Roblox had a duty to disclose this patently material fact.

Roblox also contends that Doe fails to allege reasonable reliance on Roblox's half-truths or omissions. This argument is based on Roblox's contention that its Terms of Use adequately disclose its ability and intention to delete content from its platform on a whim. Because, as explained above, that is an unreasonable reading of the Terms, this contention must fail.

### G. The complaint adequately alleges a claim for conversion.

Conversion is established by showing (a) the right to possession of the personal property, (b) conversion by wrongful act or disposition of the property, and (c) damages. *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) ("Conversion is defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his or her rights therein."). Roblox contends only that Doe cannot show any of these elements because they are purportedly negated by the Terms of Use. Because, as discussed above, the Terms do not control, this argument fails.

**H.    The complaint adequately alleges a claim for unjust enrichment.**

Roblox next challenges Doe's claim for unjust enrichment. "The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another." *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (2d Dist. 2014) (quotations omitted). Plaintiff plausibly alleges an unjust enrichment claim. Roblox's post hoc item deletion scheme benefits Roblox because Roblox retains the commissions obtained from the in-game transactions while depriving Plaintiff of the use of the purchased items. (FAC ¶¶ 99-102). As such, Roblox has benefited at Plaintiff's expense.

Roblox contends that Plaintiff's unjust enrichment claim fails principally because such claims are not recognized in California or, alternatively, because such claims are construed as quasi-contract claims, which are not permitted where a valid express contract covering the same matter exists. But as the Ninth Circuit has held, allegations that a defendant has been unjustly enriched state a quasi-contract claim for restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). And, as explained above, there is no enforceable contract covering the same subject matter as Doe's claim for restitution.

Roblox also contests whether Doe may seek restitution, arguing that Doe "received exactly what she bargained for." (Mot. at 22.) But she did not: Doe reasonably believed that once she purchased a virtual item, it would remain available for her use absent some misuse on her part. (FAC ¶ 54.) Had she understood that Roblox might arbitrarily remove content from the platform, she would not have used her dollars to purchase Robux to acquire those items. (*Id.* ¶ 73.) And Roblox's related contention that Doe received a refund is incorrect. (*Id.* ¶ 57.)

**I.    In the alternative, Doe states a claim for breach of the covenant of good faith and fair dealing.**

In the alternative, assuming the Court concludes that an enforceable contract does exist between the parties, Doe plausibly alleges that Roblox breaches the duty of good faith and fair dealing between two parties to a contract. (*Id.* ¶¶ 110-116.) Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing . . . that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *In re*

*Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-2752-LHK, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017) (quotations omitted); *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1174-75 (S.D. Cal. 2010) (denying motion to dismiss breach of implied covenant claim where defendant frustrated the purpose of the contract). Here, as alleged, Roblox engaged in conduct that frustrated and interfered with the rights of Plaintiff and class members, by (1) deleting content that Plaintiff and other Class members purchased from the Avatar Shop without issuing refunds, and (2) failing to adequately perform oversight before content is offered for sale in its marketplace. (*See* FAC ¶¶ 112-114.) In so doing, Plaintiff and class members have been prevented from receiving the benefits of their bargain. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.").

Roblox contends that the contract permits precisely the conduct alleged here. As explained above, that is not so. At best, the Terms give Roblox some discretion to remove content that violates the Terms, by, for instance, being offensive or violating copyright. But the contract does not grant unfettered discretion. Unfettered discretion, which would defeat a claim for breach of the implied covenant, must be explicit and be part of the purpose of the contract. *See Stonebrae, LP v. Toll Bros., Inc.*, No. C-08-0221 EMC, 2010 WL 1460208, at *3-4 (N.D. Cal. Apr. 8, 2010). That is not the case here, and would be inconsistent with Doe's reasonable expectations in any event.

In sum, assuming, for the sake of argument, that an enforceable contract exists here, California law requires Roblox to exercise good faith in its dealings with users like Plaintiff. Roblox does not do so with respect to its content-deletion scheme, and Roblox's actions deprived Doe of the benefit of her bargain. That suffices to state a claim for breach of the implied covenant of good faith and fair dealing.

Date: January 20, 2022

By: */s/* Lily Hough
Rafey Balabanian SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC

150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiff Jane Doe and the Putative Class*