UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

KATHERINE MURPHY, MONIQUE PAYAN, DAMIEN UHL, and those similarly situated,

Plaintiffs,

v.

ROBLOX CORPORATION, a Delaware corporation,

Defendants.

Case No. 23-CV-1940-TWR

May 29, 2025

Motion Hearing

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Pages 1 through 31

BEFORE THE HONORABLE TODD W. ROBINSON

UNITED STATES DISTRICT JUDGE

Reported by Stephanie Whitehead, RDR, CRR, CRC, CSR, CVR
District Court Clerk's Office
333 West Broadway, Suite 420, San Diego, California 92101
(Reported stenographically; transcribed via computer)

APPEARANCES:

For Plaintiffs: Andrews & Thornton
4701 Von Karman Avenue, Suite 300
Newport Beach, California 92660-2193
BY: ROBERT SIKO, ESQ.

- and -

Anapol Weiss
130 N. 18th Street #1600
Philadelphia, Pennsylvania 19103
BY: D. Patrick Huyett, ESQ.

For Defendants: Cooley, LLP
110 N. Wacker Drive, Suite 4200
Chicago, Illinois 60606
BY: LAURA ELLIOTT, ESQ.

- and -

Cooley, lLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111
BY: KYLE WONG, ESQ.

<u>THURSDAY, MAY 29, 2025; 1:28 P.M.</u>

* * *

*THE CLERK:* Calling 23-cv-1940 Murphy et al., v. Roblox Corporation for a motion hearing.

Counsel.

*MS. ELLIOTT:* Laura Elliott with Cooley, LLP for Roblox, the defendant.

*THE COURT:* Okay. Good afternoon.

*MR. WONG:* Good afternoon. Kyle Wong of Cooley, LLP on behalf of defendant.

*THE COURT:* Okay. Good afternoon to you as well.

*MR. SIKO:* Robert Siko on behalf of the plaintiff.

*MR. ASSOCIATE:* Pat Huyett on behalf of the plaintiff. H-u-y-e-t-t, last name.

*THE COURT:* Okay. Good afternoon to you as well. Please have a seat.

This matter is on calendar for a hearing on the defense motion to compel arbitration. And in that regard I've read all of the pleadings and exhibits that have been submitted by the parties, and do I have some specific questions. And then after my questions are answered, I'll allow the parties to add any additional information or supplement your arguments in any way that

you see fit.

In regards to resolving the pending motion -- and this question is for the defense -- do you agree that at this juncture in resolving the motion I must draw all inferences in favor of the plaintiff at this point?

*MS. ELLIOTT:* Yes, your Honor. With regard to inferences, we agree that inferences must be drawn in favor of the plaintiff. I would say, though, also you must consider only the evidence that's actually in the record. So that excludes evidence -- or argument that was made in plaintiff's papers but not actually introduced into evidence.

*THE COURT:* Okay. So in regards to the 130-odd transactions that predate June of 2022, the filing of the suit, isn't your argument predicated on drawing the inference that at least one of those transactions was conducted by the plaintiff?

*MS. ELLIOTT:* Yes, your Honor. Although I would say it's not an inference because we specifically asked plaintiff to identify any transactions at all in that 130-transaction record that he disputes personally making, and he identified only those after June 14, 2022, with one exception; there's one in January that he also disputed. But other than those, he did not actually dispute any of the other transactions. So I would not

argue that it's an inference that you need to draw. The only reasonable conclusion based on that admission is that he did, in fact, make the purchases on and prior to June 14, 2022.

*THE COURT:* But isn't saying it's a reasonable conclusion the same way of saying you should draw this reasonable inference and you should draw this inference in our favor? What is there affirmatively in the record -- and you do have the burden of proof by preponderance of the evidence. What is there in the record that the plaintiff actually conducted any of those transactions?

*MS. ELLIOTT:* Your Honor, I would say that there are a couple of things. First, there is the e-mail chain preceding the declarations that plaintiff submitted. He submitted two declarations, and we asked twice for him to identify all transactions post-date -- or all transactions that he did not personally make. And then he identified only those postdating June 14, 2022, as transactions that he did not personally make. So based on that, it's necessarily the case that he did make the transactions June 14, 2022, and prior.

*THE COURT:* How do I do that in terms of incorporating into the record the e-mail chain? Is there any evidence that the contents of the e-mail chain was

communicated to Mr. -- is it "Yule" or --

*MS. ELLIOTT:* "Uhl," I think.

*THE COURT:* "Uhl"? And therefore, his declaration -- the two declarations. There's one dated January the 8th, I believe, of 2025, and then a supplemental one, which is February the 5th, if I recall correctly. I understand when you put the two together you have the argument that you're advancing, but how do I put those two together when the e-mail chain -- there's no evidence in the declaration that this declaration is being prepared in response to the e-mails sent and dated this particular day? I don't know what was communicated to Mr. Uhl.

*MS. ELLIOTT:* Well, your Honor, we -- so you're right that he prepared two declarations. The first declaration was prepared answering some of the questions that we propounded. In response to that, the parties met and conferred, and we identified places where that declaration failed to answer the questions that we had posed, and we propounded another set of questions. We said here are the questions that we previously asked. Please answer these questions.

And in response we received a declaration that did expressly address those questions. Particularly, we reiterated the question that we did not have a list of

all transactions that plaintiff personally disputed. And then, in response to that e-mail, we received a supplemental declaration with the third paragraph that expressly says "Here is the list of the transactions that I personally dispute making."

So with that record, I don't think there's any question as to whether the questions were actually conveyed to Mr. Uhl. And, in fact, that's what plaintiff's counsel indicated they would do, they would prepare a declaration answering our questions in connection with their client.

*THE COURT:* Did you have a concern that the declarations were very carefully worded and did not specifically address your requests for information?

*MS. ELLIOTT:* To some extent, your Honor. I think the declarations are evasive. I think there are places where the plaintiff failed to express his involvement with regard to transactions. I will say with regard to that question, he answered the question directly. We requested the full list of transactions he disputed making, and he responded by actually providing that information. But in many instances, his description of his involvement and making purchases is vague, I think probably intentionally.

*THE COURT:* But the response of I don't

remember, I don't recall, or I don't have any knowledge of falls short of saying definitively either I dispute that or I admit that those are my transactions. Wouldn't you agree?

*MS. ELLIOTT:* I would agree. Where he says I don't recall making these particular transactions, that is aimed at the transactions postdating the June 14th time frame. So he doesn't recall making those particular transactions. I would say that's insufficient in terms of evidence to be introduced on a summary judgment motion standard. So "I don't recall" is not evidence that he didn't make them.

In other places, he says, "I have no knowledge of" or "I have no information" on the purchases made on June 2022 on the Roblox platform or not, but it falls short in saying, as he certainly could have done in any of his declarations, he never made any of these transactions; I just authorized my child to do that. He had every opportunity to say that in either of the two supplemental -- or the two declarations submitted after our last motion to compel or our deposition that he submitted in opposition to our motion to compel.

If certainly did not make any of the transactions in connection with his daughter's accounts, he simply could have said that, and he chose not to -- I

think intentionally -- because that seems highly unlikely that the plaintiff had no involvement in making any of the purchases made by his daughter, who was six years old at the time the purchases began.

*THE COURT:* The manner in which the questions were answered, I think you said that they -- or I don't want to put words in your mouth, but they were ambiguous, to a certain extent. Why did the defendant not take advantage of the ability under the FAA to seek court-ordered discovery and to depose Mr. Uhl?

*MS. ELLIOTT:* We actually discussed having a deposition or further discovery with plaintiff's counsel, and they declined to provide that information. They instead agreed to provide just declarations. We agreed to that, subject to them answering our questions in a clear manner.

And with regard to this particular issue, we believed we had a clear answer to our question, which was very plainly stated to them and then responded to. So we did not believe there was any question as to the information we received with regard to Mr. Uhl's assent and involvement in the purchases made prior to June 14, 2022.

*THE COURT:* Okay. And why was it that defendant waited until after I issued a ruling on the defense

motion to dismiss that was rather a comprehensive motion in order to seek enforcement of the arbitration provision?

*MS. ELLIOTT:* So at the outset of the case, what we had was the complaint. And what the complaint says is that plaintiff and his wife made purchases of Robux on behalf of their daughter at some points in time, and that's it. Based on that information, Roblox doesn't have enough to know the manner in which plaintiff made those purchases, his involvement in making those purchases. Roblox can't verify any of that without the user name for plaintiff's daughter's account.

And so shortly after the complaint was filed, just about a month after, we requested the user name so we could determine whether these purchases were made in a manner that would have resulted in assent to Roblox's terms, and plaintiff declined to provide that information. We asked a couple of times. They declined to provide it. They insisted that they would only provide it in the context of further merits discovery, and so we moved to dismiss while also reserving the right to move to compel arbitration, should discovery reveal the facts --

*THE COURT:* Wait. But why did you do that in reverse? Why didn't you move to compel arbitration and

seek discovery under the FAA?

*MS. ELLIOTT:* We believed that we would eventually get the information we needed, but we were waiting for them to provide what we needed in order to go forward with our motion to compel arbitration. So we were under the assumption that there was likely a chance that plaintiff had agreed to compel -- or had agreed to Roblox's terms and that we could compel arbitration, but we just didn't have the facts necessary to do that yet.

And it's a very fact-insensitive inquiry. There are actually quite a few ways to purchase Robux. There's quite a lot of involvement that has to be done to determine, for example, if they purchased gift cards at a particular time, what information does that gift card have on it, and which ways did they redeem it, if they purchased through a website, or an app, if they entered in credit card information through an XBox.

There's a lot of different ways to purchase Robux, and it would have been a very fact-intensive inquiry to sort it out. So we needed all of this information. And I mean, as you can see from discovery that's been conducted so far, even with this information there's still ways that we have to dispute whether plaintiff was personally involved in making the purchases. We need all that information to effectively

move to compel.

*THE COURT:* So one view of the litigation strategy could be that your client decided to take a shot at the motion to dismiss, and then when that was not entirely successful, then you sought to compel arbitration. And even when you did, you did not avail yourself of the ability to conduct full discovery in order to substantiate that motion.

*MS. ELLIOTT:* I think that would have made a lot more sense had we lost the motion to dismiss. But we prevailed on it, and they filed an amended complaint. So it really has nothing to do with the motion to dismiss. And courts have found, as well, that a single motion to dismiss even if on the merits is insufficient to create a waiver, which is I think what you're getting at.

There is plenty of case law suggesting that a single motion to dismiss with nothing more is not sufficient to create a waiver but, rather, it needs to be paired with prolonged litigation and a course of activity that indicates a strategy of wanting to litigate the issues.

And in this case, there is no such prolonged litigation. We have not engaged in discovery. We've not attempted to take advantage of the methods available through litigation that are not available through

arbitration. It was a very short period of litigation once we actually got to this court. And then once we got the information necessary for us to compel arbitration, we moved within eight days.

*THE COURT:* Okay. And in footnote 1 of your reply you request court-ordered discovery. At this point, to the extent I were to conclude that you've made an insufficient showing to support your motion to compel arbitration, isn't it too late to make that request at this juncture?

*MS. ELLIOTT:* I don't think so. So, first of all, we don't think it's necessary because we think we have what we need through the declarations. We've now had three separate declarations from Mr. Uhl, all of which could have put forth the arguments that plaintiff's counsel made in their papers and failed to do so. So we don't actually think it's necessary to go any further. We think the declarations he's submitted already are sufficient and show that he did, in fact, make purchases associated with his daughter's account.

But setting that aside, I don't think it's too late to order that discovery. If, for some reason, your Honor believes that additional discovery would be necessary or useful to determine what involvement Mr. Uhl actually had with purchases made on his child's account,

then we think that that discovery can be conducted now to answer this question.

*THE COURT:* Okay. Thank you.

The declarations of Mr. Uhl are not particularly straightforward and clear. To that extent, you relied upon the ambiguity in those to make the argument and advance the argument that the defendant has failed to carry their burden. Why should the Court not intervene at this juncture and order the deposition of Mr. Uhl?

*MR. SIKO:* Your Honor, you made the point earlier in your questioning that you have to rely on the record as it exists and not draw inferences. At this stage, the record is clear that Mr. Uhl admitted to purchasing Roblox gift cards. That was repeatedly referenced in both the first declaration and the supplemental declaration.

As to the ambiguity, I do agree that the supplemental declaration is inartfully worded and could have provided a fuller response. That is regrettable.

And if we were to do it today, I would have edited that, discussed it further with the client to make a fulsome explanation of exactly which charges we're disputing. I believe the reason that was not done in this format is that we were looking at the same time we were drafting the supplemental declaration at the initial

one. And the initial declaration is crystal clear that he did not make purchases on the Web platform or through the app store; it was his child that did that.

So reading them together as a supplement to the initial one, and not as an amended declaration, those two are actually quite clear. What he does admit to is buying gift cards. Defendant had notice of that before filing their renewed motion. They have not put at issue any of the conspicuousness of the terms and whether a purchaser of gift cards are bound to the terms. So it's not before the Court on their motion.

In terms of the discovery process and what could have been done better, if we could go back, I agree. Formal discovery either through FAA or post a Rule 26(f) conference is the preferred format. We suggested holding a Rule 26(f) conference. I was told no, thank you, you're not entitled to it and, instead, we should have a limited Rule 26(f) conference, to which I replied there's no such thing. We need to open discovery if you want to take my client's' deposition.

I take the Court's point that there could have been arbitration-specific discovery under the FAA. Defendant's failure to do that is an affirmative step showing that they'd like to litigate the case on its merits and actually goes towards the waiver argument.

*THE COURT:* But didn't the parties engage in a good-faith, arm's length negotiation to conduct limited discovery, and certain questions were propounded to the plaintiff, based on what I understand to be a good-faith, "let's keep the Court out of this. Let's resolve this informally," which seems to have not really borne fruit at this juncture?

*MR. SIKO:* I agree, your Honor. And as I said, I believe the supplemental declaration is inartfully worded. Given the context of the initial declaration, however, if you read that with our opposition, you'll see that what counsel has argued in that brief is fully consistent with that interpretation which I've given you today. I wish that I could edit that -- I think it's paragraph 3 -- to say, you know, one to everything with the exception of the gift card transactions, and that would be the change that I would make.

But I -- you know, we'll make the point that while it may not have been as fulsome of a response that I would like to give and endeavor to give, even in formal discovery settings, it is consistent and it has not misled when you read the words of the initial declaration.

*THE COURT:* But even looking at the spreadsheet, there's a significant amount of information that has not

been provided to be making the decision I must give in the pending motion. There are many transactions on the spreadsheet which reflect credit card usage that post-date the filing of the initial complaint in June of 2022 -- not the filing of it, but when he became aware of the alleged problems on the -- on the platform.

And the response is "I don't recall having those credit cards." There's simply -- I don't know. You know, I am bound to draw all inferences in favor of your client at this juncture, but to not recall having credit cards and making credit card purchases seems to be quite possibly evasive in terms of not addressing specifically the matter that needed to be addressed given the parties' informal discovery agreement.

*MR. SIKO:* Your Honor, I understand, and I agree with that. I believe that those seemingly evasive responses regarding credit cards ending in number so-and-so, those were in response to specific inquiries from defendant. And to provide, really, the true context of the supplemental declaration, that follow-up information, there was a discussion that potentially -- obviously, it didn't bear fruit. But defendant had discussed the concept that by not disputing certain credit card transactions with his bank or credit card servicer, he would have been legally deemed to have

allowed them or granted permission. And that's what those specific denials were targeted towards. That context is not in the e-mail chain, unfortunately; it was over a Zoom call.

*THE COURT:* Okay. Again, this is the first time I'm hearing that aspect of it.

*MR. SIKO:* I understand.

*THE COURT:* So I did go through in great detail the information that had been provided to me, and it was somewhat difficult to discern some of the transactions. And, you know, the remaining concern is the agency theory that's being advanced, and his daughter was making these purchases. And there's really no information that has been provided to me regarding any type of agreement he had with his daughter. I mean, there is some reference to "She was supposed to check in with me before making certain purchases," but there's about 130 that are at issue here. And a generalized discussion was not particularly helpful in that regard.

*MR. SIKO:* Your Honor, if I may address the legal aspects of that argument.

*THE COURT:* Sure.

*MR. SIKO:* If you have more questions, I'm happy to save that. But I can address that now if you'd like.

*THE COURT:* Please.

*MR. SIKO:* So on the agency theory, there's a discussion, essentially, before the Court on this motion of what did the plaintiff do versus what did his child do. And when we get to the what did his child do, we'll talk about the legal implications of that agency theory. As I mentioned, the plaintiff purchased gift cards on his own and separately gave permission for his child to use his credit card as payment.

*THE COURT:* How did he purchase gift cards? How does that take place? There's no --

*MR. SIKO:* It's a physical --

*THE COURT:* -- brick and mortar --

*MR. SIKO:* Yes. Correct.

*THE COURT:* So how does that happen?

*MR. SIKO:* You go to the store, take one off the shelf, and how much do you want to load on it. That kind of thing

*THE COURT:* Like a Visa gift card, or is there a Roblox actual card?

*MR. SIKO:* It's a card. A Roblox card. So you inform the cashier how much you'd like to load on it. They do so, and then the serial number is identified with that fund.

*THE COURT:* Understood. Thank you.

*MR. SIKO:* So that is what he says in his

declaration. That's the affirmative actions he took in addition to granting his permission for these certain charges.

So as an initial matter, we haven't really discussed the conspicuousness of the notice, but I believe it comes up when we're talking about the child's actions. I don't believe this notice is conspicuous enough. Courts that have considered this look at typically three things, which is a color, a font size, and a typeface.

The examples that have been given by defendant on the online transactions that plaintiff's child made, they carry one of the three: One is colored; one is bolded and underlined but not colored; in neither case is the font size larger than the surrounding text. So I think out of those kind of two of three things, there's not really a factor test. Of those two of three things that are typically considered, only one exists in the examples given by the defendant.

That said, this exact issue has been litigated in the Doe v. Roblox matter, which is a class action regarding cosmetic items that were deleted. In that case the child and class rep -- or the class rep was a child so the court was specifically looking at whether this notice was conspicuous for a child, as we have here with

plaintiff's child making the transactions. And the court found it was not conspicuous, at least through the eyes of a child.

Beyond that, the *Hansen* case discusses the very limited scenarios in which you can bind a non-signatory. The only one that's seriously addressed by Roblox here is the agency theory. In going through the agency analysis, they largely rely on the *Hoffmann* case which is not particularly on all fours; it has to do with premises liability and invitee allowance for, essentially, a child to have friends over. But the analysis in that case relies on the agent acting not only for but in place of the principal to create that kind of imputation of being able to bind someone to liability.

In that case -- or, rather, that case is not like this case. This is a situation -- or, rather, this is not a situation where plaintiff said to his child, Can you go please purchase Roblox for me -- or Robux for me. This is more like, Here's $10. Go spend it on Robux if you want. So he's giving permission.

And, specifically, the *Hoffmann* case does address this point, which is that permission alone does not create an agency relationship. There has to be something more where the agent is actually acting more or less for the benefit of the principal, not just for the

agent's enjoyment. And that's the source of that argument in our papers.

The other case that defendant cites, *Heidbreder* is actually quite closer to this case. It has to do with a game account that was started, and in the name of a parent, and then the kid was essentially given free rein to run on it. So he purchased things, ran up transactions, and it was found in that instance that the parent was bound because there was no indication whatsoever to the defendant that it was not the parent who was running the account. And, again, in that situation, it was started in the parent's name.

In this case, we have a child's account. I understand it's sealed on the record, but fair to say that the user name includes a feminine name, a birth date that would not be consistent with an adult, and there's no indication other than that that Mr. Uhl had any connection to it other than that his account -- or his e-mail was added to the account.

What does that mean? On the Roblox platform there are two places where you can link an act. The first says "parental recovery e-mail." The second says "parent's e-mail." These are not issues where you're adding an e-mail account that owns the -- or, rather, adding an e-mail address that owns the account or

otherwise controls it. There's no e-mail required to log in; you log in with a user name.

So these are truly optional things for a parent to have more visibility or control -- they can control screen time and that sort of thing -- onto their activities if they are supervising them in that way. But it is not indicated in any way that the parent owns or controls that account.

In this case, Mr. Uhl did not have control over the Robux. It went into an account controlled by his daughter. He didn't know the password, even; he had to ask her for it as part of this litigation. So he had no say in how it was spent, on what cosmetics, what experiences. It was essentially a gift to her. He gave her that, you know, ability to use his card.

I believe that addresses the agency argument.

*THE COURT:* Okay. Thank you.

Can a platform such as this ever adequately have a conspicuous enough provision binding someone to arbitration when viewed through the eyes of a 12 year old?

*MS. ELLIOTT:* Yes, your Honor, I'd like to respond to that.

*THE COURT:* Sure.

*MS. ELLIOTT:* So I don't think that's actually

the relevant question here. I mean, I would argue that, yes, they can. But I don't think it's relevant here, and I think this relates as well to the Doe case.

In that case you were talking about a situation where the question at hand was whether the child, who was a minor, was themselves bound by the terms. So were they themselves entering into a contract in interacting with Roblox's sign-up page, which is actually not the page that's at issue here.

In that particular context, and acknowledging that it was on a motion to dismiss, so the court had no evidence that the child had any actual notice of the terms, the Court found that the notice provided by Roblox's sign-up page was insufficiently conspicuous for a child.

In this context, however, what we have is plaintiff, who is an adult who is himself the contracting party because he's acting through his agent. He is bound to the terms. That's a different circumstance from the beginning. And he also had actual notice of the terms. He himself concedes that he, in fact, read the 2017 terms and so had actual notice of them, including the arbitration clause that is in those terms. It was in the 2017 terms, and substantively similar to the clause that was in all versions of the terms. So it's a very

different factual inquiry here.

And to the extent even that the Court got to the question of inquiry notice, at that point you're looking at whether the plaintiff is bound through his agent, not whether the child is bound. And that's a totally different inquiry.

If you read the case law talking about whether notice is conspicuous enough for a child, the questions all relate to the policy concerns with binding a child to notice that is not sufficiently conspicuous. But those concerns aren't present here when you're binding plaintiff who is an adult and, again, with actual notice.

*THE COURT:* Regarding Mr. Uhl's review of the 2017 agreement, I think that's the one that he admitted that he reviewed for --

*MS. ELLIOTT:* Yes.

*THE COURT:* -- basically content appropriateness for his children, isn't the state of the record that he reviewed it for that purpose, and that purpose alone, and that he never was aware of the arbitration provision within that user agreement?

*MS. ELLIOTT:* That is not the state of the record.

*THE COURT:* Okay.

*MS. ELLIOTT:* And I think that this is an

important point, both for this issue and for all of the other issues we're discussing. In order for this information to be in the record, it needs to be submitted in a sworn declaration. That is Ninth Circuit law. And in this case, there is no sworn declaration on this point or on any of the other points that plaintiff has been advancing about the child being inter- -- child making purchases only with authorization and plaintiff not personally making those purchases. Those facts are not in the record, and they therefore cannot create a genuine dispute of fact. So as much as plaintiff wants to argue about it in the papers, that is not, in fact, before the Court, and it cannot be the basis of a decision here.

But even setting that aside, I think that the -- I don't think that that's a question that your Honor has to address at this point because this information is not out there. But even setting that aside, I think the fact that -- whether plaintiff did, in fact, read the arbitration agreement or understand that he was bound by it, or review the full set of the terms, courts have found that that is not the question with regard to whether he assented to the terms. There's no requirement under California law that a contracting party read and fully understand the entirety of the contract in order to

be bound by it. In fact, courts have found the opposite. Where there's no dispute that he was made aware of the terms, then there's no question that he was bound by them, regardless of whether he argues that he didn't read a particular provision.

*THE COURT:* Understood. Thank you.

Okay. That takes care of the specific questions that I had, having read all of the parties' various submissions. It's the defense motion, do you wish to advance any additional arguments or supplement the record in any way?

*MS. ELLIOTT:* Yes, your Honor. I just wanted to respond briefly to plaintiff's argument about *Heidbreder*. And I would say in that case *spelg there were two different methods by which the Court found that there was agency. They both looked at actual authority and also ostensible authority. The arguments you just heard from plaintiff's counsel about the nature of the account and whether it was under the plaintiff's name in that case, those were directed towards the ostensible authority argument. So the question there is whether, given all the circumstances, the company, in receipt of the information from plaintiff, would have understood that plaintiff to be conducting the transaction.

But we're not making an ostensible authority

argument here because in plaintiff's papers, to the extent you consider their argument at all, they straightforwardly said plaintiff authorized his child to make the payments. And so, in that case, you're looking at actual authority. And when you're looking at actual authority, the account name and those sorts of things, that doesn't matter. You already have established the actual authority piece of it.

So the reason that *Heidbreder* is important isn't the question of ostensible authority. It's the question of whether a child who is, themselves, the only person subjectively enjoying the account, can still bind their parent to the terms. And the answer in *Heidbreder* was yes. The child in that case was the sole and exclusive user of the Fortnite account in question. The parent, who was the plaintiff, never used the account, never got any subjective enjoyment from the child's use of the account but was nonetheless bound by the child's acceptance of the terms.

And so that case answers that particular question and the issue that plaintiff raised, which is whether plaintiff can be bound despite the fact that he's not the one who used the Robux or enjoyed the account. And *Heidbreder* says, yes, but it's two separate analyses, and I think plaintiff is mixing the two.

*THE COURT:* Okay. Thank you.

Any final words from the plaintiff?

*MR. SIKO:* Yes. Thank you, your Honor. Just addressing the *Heidbreder* issue right now. In that case the plaintiff also, you know, had given actual authority to enter into transactions, had left a credit card, and things like that. What had turned on the actual authority analysis in that case was, again, what I've already discussed: There is no indication whatsoever to the defendant that it was an account not controlled by the adult. By all appearances, it was controlled by the adult. It had a name attached to it as well. In this case, that's not the situation. It was a child's account linked only to a parent's e-mail. The payment information is completely separate and not part of the account permissions or registration.

The other issue I'd like to address is the 2017 terms. Those terms are specifically not at issue in this motion. Defendant said so in one of their footnotes. We're not moving under the 2017 terms. And as the Court has pointed out, only portions of those terms were ever reviewed. So the concept that -- you know, looking at something which is the basis of the representations that you're relying on in the complaint, what if those terms had completely been changed the next day? Would they

still say that he had knowledge of an arbitration provision that nonetheless survived a complete overhaul? And the changes between 2018 and 2022 were indeed significant so that would be something to address.

The last thing which I'd like to bring to the Court is that even if plaintiff directly assented, even if plaintiff was bound through the actions of his child, the arbitration provision does not touch plaintiff. It does not bind him because he is not a user of the services.

Users are distinguished from guardians, who are the parents or legal guardians of users. And this is not something that would have been difficult to remedy for Roblox. It would have been the addition of just a few words to say user, guardians -- you could even throw in, purchasers of Roblox -- are bound to the terms. It would not -- it would have been quite simple to eliminate all ambiguity.

Here, we're left with the question of whether Mr. Uhl, who has only ever visited the website to look for misrepresentations, can be deemed a user of the platform. I believe the strongly the answer is no. But because there is ambiguity in that decision, state law requires it to be construed against the drafter of the contract. That's Civil Code Section 1654. And here,

Roblox has introduced ambiguity into this contract by not binding all possible holders of claims which, of course, would include people who are induced to buy Robux. And, therefore, they cannot rely on the terms of their own contract to bind Mr. Uhl.

*THE COURT:* Okay. Thank you very much.

I appreciate the parties' written submissions and your comments here in court today. I will take the matter under submission and issue a written order in due course.

So thank you very much. Have a good afternoon.

*MR. SIKO:* Thank you, your Honor.

*MS. ELLIOTT:* Thank you, your Honor.

(Proceedings concluded at 2:05 p.m.)

*C E R T I F I C A T E*

I, Stephanie Whitehead, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter on May 29, 2025; and that the format used complies with the rules and requirements of the United States Judicial Conference.

Dated: August 26, 2025

*s/ STEPHANIE WHITEHEAD*
Stephanie Whitehead, CSR 10093
U.S. Official Court Reporter